**EXHIBIT A**

```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #20cr623
 UNITED STATES OF AMERICA,          :

                      Plaintiff,    :

   - against -                      :

 WILLIE DENNIS,                     : November 19, 2021
                                      New York, New York
                      Defendant.    :

------------------------------------:
```

```
                     PROCEEDINGS BEFORE
                  THE HONORABLE ONA T. WANG
                 UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

```
For Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                      BY:  SARAH KUSHNER, ESQ.
                      One Saint Andrew's Plaza
                      New York, New York  10007


For Defendant:        FEDERAL DEFENDERS OF NEW YORK INC.
                      BY:  NEIL KELLY, ESQ.
                      52 Duane Street, 10TH Floor
                      New York, New York  10007


ALSO PRESENT:         PRETRIAL SERVICES OFFICER
```

```
Transcription Service: Carole Ludwig, Transcription Services
                        155 East Fourth Street, #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:   Transcription420@aol.com
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

## E X A M I N A T I O N S

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|
| None | | | | | |

## E X H I B I T S

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1

```
 1                                                    3
 2              THE CLERK:  United States versus Willie Dennis,
 3   20cr623.  Counsel, please state your name for the
 4   record starting with the government.
 5              MS. SARAH KUSHNER:  Good afternoon, Your Honor,
 6   Sarah Kushner for the government.
 7              MR. NEIL KELLY:  Good afternoon, Your Honor, Neil
 8   Kelly, Federal Defenders of New York, on behalf of Mr.
 9   Dennis.
10              HONORABLE ONA T. WANG (THE COURT):  All right, good
11   afternoon, this is Judge Wang.  Mr. Dennis, are you able to
12   speak and understand English.
13              THE DEFENDANT:  Yes, I am, Your Honor.
14              THE COURT:  All right.  I understand we may
15   also have a Pretrial officer on the phone?
16              PRETRIAL SERVICES OFFICER:  Yes, Your Honor,
17   this is Courtney Defeo on behalf of Pretrial Services.
18              THE COURT:  Okay.  All right, I'm going to ask
19   that anybody who is not actively speaking keep your
20   phone on mute so we reduce the background noise to a
21   minimum.  All right, we are here for an initial
22   appearance and arraignment. We are in the midst of the
23   Covid-19 pandemic. I am conducting this proceeding
24   pursuant to the authority provided by Section 15002 of
25   the CARES Act and the standing orders issued by our
```

```
                                                      4
1
2   Chief Judge pursuant to that act.  Counsel are
3   appearing by telephone and the defendant is also
4   participating by telephone. I also note that this
5   telephone line is open to the public and the press on
6   a listen only basis.
7            I'm going to go down and each participant in
8   this conference the same two questions and I'm going
9   to start with the government, and the questions are,
10  number one, can you clearly hear everyone and, number
11  two, will you let me know promptly if you cannot, Ms.
12  Kushner?
13           MS. KUSHNER:  Yes and yes, and I apologize for
14  the background noise, I am outside.
15           THE COURT:  Okay.  Mr. Kelly, can you clearly
16  hear everyone and will you let me know promptly if you
17  cannot?
18           MR. KELLY:  Yes, Your Honor.
19           THE COURT:  Okay.  Ms. Defeo, can you clearly
20  hear everyone and will you let me know promptly if you
21  cannot?
22           PRETRIAL SERVICES OFFICER:  Yes, Your Honor.
23           THE COURT:  And, Mr. Dennis, can you clearly
24  hear everyone and will you let me know promptly if you
25  cannot?
```

1                                                      5

2            THE DEFENDANT:  Yes, I will, I can, Your

3    Honor, and I will.

4            THE COURT:  All right.  Where is the defendant

5    currently located and who, if anyone, is physically

6    present with him?

7            FBI SPECIAL AGENT:  Mr. Dennis is current in

8    FBI space at 290 Broadway, New York, New York, with

9    FBI Special Agents Elizabeth Wheeler and Mica Freeman.

10           THE COURT:  Okay.  Has the defendant had an

11   opportunity to consult with counsel in advance of this

12   proceeding and when and how did those consultations

13   take place?

14           MR. KELLY:  Yes, Your Honor, this is Neil

15   Kelly, I have had several telephone conversations with

16   Mr. Dennis throughout the day today, I would say three

17   or four telephone conversations that were facilitated

18   by the special agent calling me from a phone at the

19   FBI offices and then putting Mr. Dennis on the line.

20           THE COURT:  All right. Why, I mean we are

21   moving more toward in person proceedings, is there a

22   reason why we couldn't have had this meeting in person

23   today?

24           MS. KUSHNER:  Your Honor, this is the

25   government, my understanding from the marshals and the

                                                        6

1
2   court is that the Covid protocol for individuals
3   arriving from outside of the United States is that they
4   still must be presented remotely.  Mr. Dennis has been in
5   the Dominican Republic since February of 2020, and while
6   his counsel may know about his vaccination status, I
7   don't, and for all those reasons we were told it would
8   have to be remote.

9           THE COURT:  All right. Okay, I understand, I
10  thought he had been, he was present in New York City for a
11  period of time.

12          All right, we'll next proceed to appointment of
13  counsel. Mr. Dennis, you have the right to an attorney for
14  all court proceedings, including this one, and during all
15  questioning by the attorneys -- by the authorities. You
16  have a right to hire your own attorney, but if you cannot
17  afford one I will appoint one to represent you at the
18  government's expense.

19          THE DEFENDANT:  Okay, Your Honor, I at this
20  point cannot --

21          THE COURT:  Wait, no, no, no, you're not
22  expected to speak right now.

23          THE DEFENDANT:  Oh, I'm sorry.

24          THE COURT:  Okay.  I'm going to, I'm going to
25  review over the phone the financial affidavit that has

7

1

2    been provided by defense counsel Mr. Kelly has

3    provided the Court with a financial affidavit for the

4    defendant for the purposes of the Court appointing him

5    counsel for the defendant. Mr. Kelly, was this

6    affidavit prepared in consultation with Mr. Dennis in

7    advance of this proceeding?

8         MR. KELLY:  Yes, Your Honor, Mr. Dennis did

9    not have it in front of him but we filled it out

10   together over the phone.

11        THE COURT:  All right.  All right, Mr. Dennis,

12   I'm going to summarize what's on the financial

13   affidavit, I'm going to ask you if that, and I'm just

14   going to summarize it not in explicit detail and then

15   I'm going to ask you if it's substantially correct,

16   and then if you do say that I'm going to ask you to

17   swear to it, okay?

18        THE DEFENDANT:  Yes, Your Honor, okay.

19        THE COURT:  All right.  So what this form says

20   is under the income and asset section it indicates

21   that you are not currently employed. Your assets

22   consist of a home that's a multi-unit building in

23   Manhattan, there is an approximate value attached to

24   that home.  That there is a 401(k) with an approximate

25   value attached to that.  And other property in the

8

Dominican Republic which is, of which you own I guess
50 percent and that is subject to divorce proceedings.
And then you have some cash or money in savings and
checking accounts, the total approximate amount after
monthly expenses is about $7,000 or $8,000. Under
obligations, expenses and debts, there's about, just
about $4,000 total in monthly expense and you are in
default and arrears on several other, several other
items that I think substantially outweigh the assets
and the income that you have.

          All right, before I ask you to swear to it I
need to ask you if the information I've just
summarized about your financial conditions is
accurate?

          THE DEFENDANT:  Yes, Your Honor, that
information is accurate.

          THE COURT:  All right, do you have any
additional sources of income that I did not cover in
my summary just now?

          THE DEFENDANT:  No, Your Honor, I do not.

          THE COURT:  All right, I'm now going to place
you under oath to affirm the truth of the information
set forth on your financial affidavit. Do you solemnly
swear or affirm that the information contained in your

9

affidavit that I have just summarized is true and

correct?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  All right, I find that the

defendant qualifies for the appointment of counsel and

appoint Mr. Kelly to represent him.  Just a moment

while I sign the form.

All right, we are next going to go to the

consent to proceed by telephone.  And I am, I have a

form also that was provided by Mr. Kelly.  All right,

I have a form that was provided by Mr. Kelly that

reads as follows. "Defendant, Willie Dennis, hereby

voluntary consents to participate in the following

proceeding via tele or video conferencing," and the

boxes initial appearance and appointment of counsel

and arraignment are checked.  Mr. Kelly has signed it

on his own behalf and has slash-signed with his

initials for you, Mr. Dennis.  I am going to ask you

first, have you had an opportunity to discuss with

your attorney the issue of participating in today's

proceeding by telephone?

THE DEFENDANT:  Yes, Your Honor, I've had an

opportunity to discuss with Mr. Kelly participating by

telephone today.

```
 1                                                    10
 2            THE COURT:  All right, do you agree to
 3   participate in this proceeding by telephone?
 4            THE DEFENDANT:  Yes, Your Honor, I do.
 5            THE COURT:  All right.  Did you give Mr. Kelly
 6   permission to electronically sign your name on your
 7   behalf?
 8            THE DEFENDANT:  Yes, I did, Your Honor.
 9            THE COURT:  All right. Mr. Kelly, do you also
10   consent to this proceeding going forward by telephone?
11            THE DEFENDANT:  Yes, Your Honor.
12            THE COURT:  All right, I find that the
13   defendant has knowingly and voluntarily agreed to
14   participate in this conference by telephone. Just a moment
15   while I sign this form.
16            All right, Ms. Kushner, can I have the date and
17   time of arrest, please
18            MS. KUSHNER:  Yes, Your Honor, the defendant
19   was arrested in the Dominican Republic on November 16th
20   between approximate 2 and 4 p.m., and he arrived in
21   New York last night, yesterday afternoon, November
22   18th, at approximately 4:30 p.m.
23            THE COURT:  All right, thank you.  I am Judge
24   Wang. You are here because you are charged with
25   certain crimes by an indictment. Do you have a copy of
```

```
 1                                                       11
 2  the indictment?
 3           THE DEFENDANT:  Yes, Your Honor, I do.
 4           THE COURT:  All right, the purpose of today's
 5  proceeding is to advise you of certain rights that you
 6  have, inform you of the charges against you, consider
 7  whether counsel should be appointed for you, and
 8  decide under what conditions, if any, you shall be
 9  released pending trial.
10           I am now going to explain certain
11  constitutional rights that you have. You have the
12  right to remain silent. You are not required to make
13  any statements.  Even if you have already made
14  statements to the authorities, you do not need to make
15  any further statements. Any statements that you do
16  make can be used against you.
17           You have the right to be released, either
18  conditionally or unconditionally pending trial, unless
19  I find that there are no conditions that would
20  reasonably assure your presence at future court
21  appearances and the safety of the community.
22           If you are not a United States citizen, you
23  have the right to request that a government attorney or a
24  law enforcement official notify a consular officer from
25  your country of origin that you have been arrested. In
```

12

some cases a treaty or other agreement may require the
United States government to give that notice whether you
request it or not.

You have the right to be represented by an
attorney during all court proceedings including this one,
and during all questioning by the authorities. You have
the right to hire your own attorney. If you cannot afford
an attorney, as you've seen, I have appointed one today to
represent you.  Do you understand your rights as I have
just explained them?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  All right, I have before me an
indictment that contains four counts of cyberstalking.
Counsel, have you seen this indictment?

MR. KELLY:  Yes, Your Honor.

THE COURT:  And have you reviewed it with your
client?

MR. KELLY:  I have, Your Honor.

THE COURT:  And do you waive its public
reading?

MR. KELLY:  Yes, we do.

THE COURT:  All right, just a minute.  All
right, and Mr. Dennis, do you understand the charges
against you?

13

1
2          THE DEFENDANT:  Yes, I do, Your Honor.

3          THE COURT:  And how does the defendant wish to

4   plead at this time?

5          MR. KELLY:  Your Honor, Mr. Dennis enters a

6   plea of not guilty to all charges contained in the

7   indictment.

8          THE COURT:  Okay, a plea of not guilty will be

9   entered and the record shall reflect that the

10  defendant has now been arraigned.

11         I'm also now going to read the Rule 5(F) order

12  to the government. I direct the prosecution to comply

13  with its obligation under *Brady versus Maryland and*

14  *its Progeny* to disclose to the defense all

15  information, whether admissible or not, that is

16  favorable to the defendant, material either to guilt

17  or to punishment, and known to the prosecution.

18  Possible consequences for noncompliance may include

19  dismissal of individual charges or the entire case,

20  exclusion of evidence and professional evidence or

21  court sanctions on the attorneys responsible.  I will

22  be entering a written order more fully describing this

23  obligation and the possible consequences of failing to

24  meet it and I direct the prosecution to review and

25  comply with that order.  Does the prosecution confirm

```
 1                                                       14
 2   that it understands its obligations and will fulfill
 3   them?
 4            MS. KUSHNER:  Yes, Judge.
 5            THE COURT:  All right, I'll hear next from the
 6   government as to bail, detention or release, is there
 7   any agreement?
 8            MS. KUSHNER:  Your Honor, the parties do have
 9   a bail package that has been agreed upon.
10            THE COURT:  All right, why don't you let me
11   know what the proposed package is.
12            MS. KUSHNER:  Your Honor, it would be a bond,
13   $200,000 bond, cosigned by three financially
14   responsible persons, location monitoring as supervised
15   by Pretrial, travel restricted to SDNY and NDNY --
16   sorry, SDNY and EDNY.  Surrender all travel documents,
17   including passports, and make no new applications.
18   Obtain -- refrain from any contact, direct or
19   indirect, with victims. Those victims would include,
20   there's four victims, of course, discussed in the
21   indictment, but there are many other individuals that
22   are part of the scheme and I believe the victims would
23   encompass pretty much every, every person at K&L
24   Gates, certainly every partner at K&L Gates and their
25   families, and to stay away from K&L Gates' offices
```

                                                        15

1

2  anywhere.  There's additional former K&L Gates

3  employees and some other individuals, we put a list

4  together and can provide that list to Pretrial

5  Services so the defendants knows exactly who, in

6  addition to K&L employees, he should not be

7  contacting. And then I believe, I believe that's

8  everything, unless defense counsel may have something

9  else to add.

10          MR. KELLY:  No, Your Honor, that's -- that's

11  correct.

12          THE COURT:  All right, just a moment.  All

13  right, is there anything that Pretrial would like to

14  add?

15          PRETRIAL SERVICES OFFICER:  No, not at this

16  time, Your Honor.

17          MR. KELLY:  Your Honor, this is Neil Kelly

18  again, I apologize, I should have made one point that

19  Ms. Kushner made, I should have elaborated on one

20  point. The no contact order, which we're consenting

21  to, and the list of names that the government will

22  provide and that we'll agree upon, we would just note

23  that Mr. Dennis obviously has an ongoing civil

24  litigation involving his former firm. I understand

25  that that, Mr. Dennis has been prosecuting that civil

1
2  litigation pro se, so obviously we'll agree upon the

3  proper procedures. I, my understanding is that the

4  firm of K&L Gates has, itself, hired outside counsel

5  for that civil litigation and arbitration, so I don't

6  think this will be an issue because any communications

7  relating to the arbitration will involve that other

8  firm.  And there has been no allegation that there has

9  been any improper contact with that firm, to my

10  knowledge. So I just wanted to get on the record that,

11  gain, we're agreeing to the no contact order, and

12  there will necessarily need to be a carve out relating

13  to the civil litigation but, again, I think any

14  contact there will be with another firm and not

15  relevant to the issues that the government has here.

16          THE COURT:  All right.  I have a couple of

17  questions I think about some of the recommendations of

18  Pretrial and I was just going to go through them.

19  That Pretrial's recommendation includes participating

20  in mental health treatment and counseling as directed

21  by Pretrial Services?

22          MS. KUSHNER:  Your Honor, this is Sarah

23  Kushner from the government, I apologize, the parties

24  have agreed to that, as well.  And, in addition, there

25  was one other condition I forgot to mention which is

17

1
2 that we ask that the defendant, who opens and creates

3 new email accounts constantly so that he can contact

4 the victims, not open any new email accounts without,

5 you know, Pretrial's approval and, similarly, not open

6 any new phone lines about Pretrial's approval.

7          MR. KELLY:  Yeah, and just to elaborate on

8 that, Your Honor, this is Neil Kelly, Mr. Dennis would

9 continue with, he's already enrolled in mental health

10 treatment, he would continue that, obviously, under

11 the direction of Pretrial Services and the level of

12 care deemed appropriate by Pretrial Services. So, yes,

13 we do consent to that additional condition and to

14 confirm on the record, we do confirm the condition

15 that the phone number that Mr. Dennis will use going

16 forward will provide that to Pretrial Services so they

17 know what phone number he has, and he will not, we're

18 agreeing that he will not open any new phone numbers

19 or email accounts going forward, as well.

20          THE COURT:  All right. My next one that I did

21 not notice covered in the initial proposed package was

22 that Mr. Dennis would submit to an initial urinalysis,

23 if positive we would add the condition of drug testing

24 and treatment as directed by Pretrial?

25          MR. KELLY:  So this is Neil Kelly. I think as

1                                                           18

2   the Pretrial Services Report reflects, Mr. Dennis was

3   candid with Pretrial Services that he occasionally

4   uses marijuana and that there's a possibility that

5   that might be flagged in a urinalysis in this case, if

6   ordered. I don't think drug treatment is necessary in

7   this case given the record that the Court can see in

8   the Pretrial Services Report.  But if the Court or

9   Pretrial Services thinks it is necessary, we would not

10  object as a condition of release, but based on the

11  record I don't think it's necessary.

12          THE COURT:  Okay, the next, I am going to

13  impose it, I typically impose it because if the

14  urinalysis comes back clean or if, you know, Pretrial

15  determines that there is, you know, no need for

16  further drug testing or treatment it's up to them and,

17  you know, nothing else changes.

18          What about the recommendation to either obtain

19  or maintain or seek verifiable employment?

20          MR. KELLY:  Yeah, so Mr. Dennis is, obviously,

21  he's involved in civil litigation regarding his

22  employment status. I think we can agree that he will

23  seek employment, that will obviously, there are a lot

24  of moving (indiscernible) involved here that we

25  couldn't necessarily all hash out today, but we will

```
 1                                                     19
 2  agree to that condition and we'll will work with
 3  Pretrial Services on securing appropriate employment
 4  going forward.
 5          THE COURT:  All right, let's see.  Okay, what
 6  about the condition that, I'm not sure that I saw, I
 7  heard it, is home detention enforced by location
 8  monitoring, is that correct?  Is that agreed?
 9          MS. KUSHNER:  Yes, Judge.
10          THE COURT:  All right, and then my, another
11  one that often comes up is not to possess a firearm,
12  destructive device or other weapon?
13          MR. KELLY:  Yes, Your Honor, that would,
14  that's not an issue here, so we consent to that.
15          THE COURT:  All right, and what about, what
16  about Mr. Dennis' travel documents?
17          MR. KELLY:  Your Honor, Neil Kelly again, the
18  agents are already in possession of his United States
19  passport, which is his only travel document.
20          THE COURT:  Okay.  All right, and then the last
21  thing that it says on the Pretrial Report is that the
22  defendant is to be detained until all signatures are
23  obtained on the bond, is that right?
24          MR. KELLY:  We, I should say the defense and the
25  government have agreed that that condition can be waived
```

1                                                    20

2  because we consented to location monitoring. It's our

3  understanding that location monitoring is self-

4  installed. So because location monitoring will be

5  installed by Mr. Dennis when he returns home, we've

6  agreed with the government that the condition that

7  signatures be secured first can be waived.

8          THE COURT:  Okay, so then when would those,

9  when would those signatures or that condition be met?

10         MR. KELLY:  I think the standard two weeks

11  would be fine for the defense, if that's okay with the

12  government?

13         MS. KUSHNER:  No objection from the government.

14         THE COURT:  Okay, any -- any issue with that

15  with Pretrial?

16         PRETRIAL SERVICES OFFICER:  No, Your Honor.

17         THE COURT:  Okay. Do we still need to include

18  the language the defendant be permitted to self-

19  install the location monitoring?  I thought that we

20  were now directing defendants to appear at Pretrial

21  Services?

22         PRETRIAL SERVICES OFFICER:  So they are

23  appearing at our office to have the bracelet affixed

24  to their ankle, however, they are still being sent

25  home with the device to plug into the wall, which is

1

2 the self-installation.

3         THE COURT:  All right, so when can, when will

4 Mr. Dennis be fitted with the bracelet?

5         PRETRIAL SERVICES OFFICER:  If he is to be

6 released on his own signature, it would be Monday

7 morning because the location monitoring officer is no

8 longer here in the office today.

9         THE COURT:  All right.

10        PRETRIAL SERVICES OFFICER:  And I do believe

11 since he traveled from the Dominican Republic that he

12 would actually have to submit to two negative Covid

13 tests before entering the building, I believe is still

14 the standing orders.

15        MR. KELLY:  If that's, if that's still the

16 case, Your Honor, we can have, or excuse me, we would

17 request that Mr. Dennis be permitted to travel to one

18 of the New York City testing locations so he can get

19 that clearance so he can then enter the courthouse.

20        MS. KUSHNER:  Your Honor, this is the

21 government, I was under the impression that the

22 location monitoring basically would be able to be

23 installed today, which is why I agreed on the

24 cosigners don't have to sign the bond, but it makes me

25 a little bit nervous that there will be a whole

22

1

2  weekend without any sort of monitoring.  I just wanted

3  to note that but I guess with the Covid complications

4  it doesn't seem like it's something that can happen

5  before Monday.

6          THE COURT:  Right.  I mean I am a little bit

7  confirmed about risk of nonappearance here, given that

8  Mr. Dennis was indicted in 2020 and Mr. Dennis was,

9  until recently, in the Dominican Republic, that's what

10 I understand.

11         MR. KELLY:  Sure, Your Honor, this is Neil

12 Kelly again, just to elaborate on that.  The case I

13 believe was originally charged back in 2020, but it

14 was not unsealed until recently.  Mr. Dennis has been

15 residing in the Dominican Republic because that was,

16 as Your Honor can see from the Pretrial Services

17 Report and the CJA form, he has, his family has

18 traveled to the Dominican Republic frequently over the

19 course of their, the past several years.  He had gone

20 down there before the Covid crisis unfolded, so before

21 this case was charged he had already been down there.

22 it's not like he went there after this case was filed

23 or charged, he went down there with no knowledge that

24 any investigation was still ongoing.  In fact, it's my

25 understanding that this, the underlying conduct here

23

1

2 was originally presented to the Manhattan DA's office

3 and that Mr. Dennis and his counsel had actually met

4 with and spoken with the Manhattan DA's office about

5 the factual matter underlying this case and no charges

6 were brought in state court, and he had participated

7 in that process and had, had worked collaboratively

8 with the state authorities.

9          And so the, just to clarify the timeline, it's

10 not like he went down to the Dominican Republic after

11 this case was charged and remained there, he had no

12 idea this case was pending at all until he was

13 arrested in the Dominican Republic a few days ago.  So

14 what I would say, in terms of any concern about the

15 risk of flight is, one, you know, as the Court saw

16 from the Pretrial Services report and CJA application,

17 you know, Mr. Dennis is not in a financial position to

18 flee and hide from any future Court appearances. He

19 was residing openly under his own name at a, at a

20 residence in the Dominican Republic, that's where he

21 was arrested, it's not like he was hiding or avoiding

22 detection or arrest, he had no idea that there was any

23 case out that would require him to report back to New

24 York.

25          Again, he was arrested in the Dominican

1                                                          24

2  Republic because that's where he was residing under

3  his own name and, similarly, he's been actively

4  participating in two other court proceedings,

5  obviously not criminal, but his civil litigation

6  against his former law firm and his divorce

7  proceedings and related collateral proceedings. He's

8  been actively participating in those as well. And as

9  Your Honor saw from the Pretrial Services Report,

10 significant amounts of money are involved in those

11 proceedings. So, you know, this is not someone who's

12 fleeing his obligations, who's avoiding his

13 obligations, even when he has, you know, civil

14 litigation that if it goes against him would result in

15 several hundred thousand dollars of liabilities, he's

16 been actively participating in those proceedings.

17         Obviously, his passport, as I mentioned, is

18 already in the possession of the agents and just to

19 round out the risk of flight concerns, his connections

20 to the New York area are both extensive and deep.

21 He's spent his entire life in the New York area. He

22 owns property in New York which is the location to

23 which he would return. His two sons live in the New

24 York area.  Obviously, his litigations that he's

25 involved in outside of this case are based in New

1

2  York.  So he has, he has significant interest in

3  participating not only in this proceeding, as he's

4  obligated to, but in many other matters that give him

5  an incentive to remain in New York.  Again, his living

6  arrangement in the Dominican Republic was unrelated to

7  this case, unrelated to any avoidance of obligations

8  that arise out of New York, and to the contrary, he's

9  shown that he's perfectly responsible and will

10  participate in any court proceedings in which he is

11  required to appear for.

12          And I would also note the one prior case that

13  he had, which was ultimately dropped, but before those

14  charges were dropped, he participated in all

15  proceedings relevant to that case, as well, there was

16  no report of any bench warrant or failure to appear in

17  connection with that case.

18          So, to summarize, he does not have the means

19  to flee, he doesn't have the travel documents to flee.

20  He has no incentive to flee. He's shown to be a

21  reliable defendant who will appear in court when

22  necessary. And his ties and connections to the

23  community are deep and extensive.  So I think any

24  concern the Court might have about a risk of flight

25  should be alleviated by what I've just recited.

26

2        And on a fairness point, I would just note

3  that, you know, by the luck of the draw today we

4  didn't get to appear before Your Honor until the

5  Pretrial Services officer was no longer in the

6  building to help install any device. If we had been

7  lucky enough to appear before Your Honor earlier in

8  the afternoon, we could have worked something out with

9  Pretrial so that he had been fitted with a bracelet

10  before that officer left today. So I don't think Mr.

11  Dennis should be penalized just for the luck of the

12  draw of when we ultimately were able to see the Court.

13        So I'm happy to answer any other questions but

14  those are the reasons why I do not think he's a risk

15  of flight that no conditions can reasonably assure his

16  appearance.

17        FBI SPECIAL AGENT:  Also, Your Honor, this is

18  Special Agent Wheeler, since Mr. Dennis can't access

19  his defense counsel right now to add something in, he

20  did have something he wanted to add in, so I don't

21  know how you want to handle that?

22        MR. KELLY:  Can I call the cell phone?

23        THE COURT:  I can put you in a private

24  breakout room and when you're done just dial back into

25  this number and you'll be placed back in the main

27

1   room.

2

3            MR. KELLY:  Okay.

4            THE COURT:  Okay, and nobody can come into the

5   private breakout room, so just a minute.  Hold on.  So

6   wait for two beeps and then you can confirm that

7   you're in your private breakout session, all right,

8   just a minute. It takes me a few seconds to move you.

9   So I'm moving Mr. Dennis and Mr. Kelly, right?

10           MR. KELLY:  Yes.

11           THE COURT:  Okay. During that time, I'm

12  actually going to move Ms. Defeo and myself into a

13  separate room because I just needed to ask a little

14  bit about logistics, okay, hold on.

15                (PAUSE IN PROCEEDING)

16           FBI SPECIAL AGENT:  This is Special Agent

17  Wheeler and Special Agent Freeman here with Willie

18  Dennis.

19           MR. KELLY:  Hi, this is Neil Kelly again.

20           FBI SPECIAL AGENT:  Neil, this is Liz Wheeler

21  from the FBI, are we the only ones on?

22           MS. KUSHNER:  I think we're just waiting for

23  the Judge and Pretrial to rejoin.

24           FBI SPECIAL AGENT:  Okay.

25           MR. KELLY:  Yeah, have everyone, so if Mr.

1                                                          28
2 Dennis has any other questions for me he should hold
3 them.
4          FBI SPECIAL AGENT:  No, he doesn't, we just
5 didn't get any response when we called in so we just
6 wanted to make sure that, you know --
7          MR. KELLY:  Yep, it sounds like this is the
8 main line for everyone, we're just waiting for the
9 Judge.
10             (PAUSE IN PROCEEDING)
11          THE COURT:  All right, this is Judge Wang, I
12 think we are all back in the main conference room
13 which is still being recorded. I just wanted to
14 confirm, Mr. Dennis, are you on the line?
15          THE DEFENDANT:  Yes, I am, Your Honor.
16          THE COURT:  Okay. You may need to talk, I'm
17 going to ask Mr. Kelly, are you back on the line, too?
18          MR. KELLY:  Yes, Your Honor.
19          THE COURT:  Okay, is there, do you need
20 perhaps to talk to the government about how to work
21 this out logistically?  My concern is that I am not
22 inclined to release Mr. Dennis on his own signature
23 for three or more days with no other restrictions,
24 particularly where Pretrial has recommended detention
25 until all conditions are met.  At a minimum, I'd want

                                                           29

either a bracelet or cosigners, okay, but I understand

that neither of those can be accomplished before

Monday at the earliest so, and I know the government

has also expressed some concern about releasing Mr.

Dennis on his own signature without any other,

anything else sort of constraining or requiring him to

appear.

          The additional logistic problem, the

additional logistical problem is Mr. Dennis does need

to get a bracelet fitted, but under the Court's

current international travel and testing protocols, he

would still need two negative tests to get the

bracelet fitted. So I was wondering if you needed some

time to discuss and, if so, I can give you that time

and put you in a private breakout session or,

alternatively, we can hash it out right now in the

main room, how do you want to approach this?

          MR. KELLY:  Sure, why don't I make a proposal

in the main room first and see what the Court and the

government's response is to it, and then if it's, if

it requires more discussion with the government I can

speak with Ms. Kushner at that point.

          THE COURT:  All right, why don't you go ahead.

          MR. KELLY:  Okay. So Mr. Dennis brought to my

30

attention that the government right now is also in
possession of Mr. Dennis' credit cards, debit cards,
wallet, any access he would have to any funds,
whatsoever, are currently in the possession of the
government. And because it is a weekend, you know, Mr.
Dennis would consent to the government holding on to
everything except his key to get into his house and
his driver's license or identification until Monday
morning. I mean he'll need his identification, one, so
he has his identification and, two, so that when he
gets his Covid tests they can confirm it's his
identity.  And so he's willing to consent to the
government holding on to everything it has except the
minimum he needs to enter his home and be released
today until he's fitted with a bracelet on Monday.

         With respect to the actual fitting of the
bracelet, I will obviously defer to Pretrial Services,
but from the bracelets that I've seen affixed to
clients previously, it is a process that involves, you
know, the wearer being, I don't know, you know,
measured, somewhat and then an adhesive device, excuse
me, adhesive tape being placed on them and the device
being placed over the tape on their ankle.  Again, I'd
obviously defer to Pretrial Services and I'm not

1

2  telling anyone how to do their job, but that having

3  seen it done, it does seem like a process that could

4  be accomplished outdoors.

5       And so, one, we will try to get Mr. Dennis to

6  Covid test over the weekend. I know for a fact that

7  there are NYC Health and Hospitals Corporation

8  locations that are open, if not we'll go to a private

9  service to get him two tests over the weekend before

10 Monday so that he can enter the courthouse.  If that

11 is insufficient for some reason, I can represent to

12 the Court that I and/or a member of the staff of the

13 Federal Defenders of New York can accompany Mr. Dennis

14 to the entrance to 500 Pearl Street and stand with him

15 outside if the Pretrial Services officer would prefer

16 to affix the device outside. Again, I don't think

17 that's a lengthy process having seen it, but if there

18 are other logistical concerns I'm not aware of, I'm

19 happy to discuss those, as well.

20      THE COURT:  All right. I'm looking at the

21 courthouse's entry protocol for travelers dated

22 September 24, 2021, it does set out different

23 protocols and requirements for vaccinated and

24 unvaccinated travelers. I am also going to put out

25 there as a question whether there is another place

32

that has a less restrictive protocol that can be used

for Mr. Dennis to get the bracelet affixed or, you

know, bracelet fitted on the 22nd.  The other thing,

you know, whether that's outdoors or whether that's

somewhere else, the Court takes no position.

I'm also wondering whether the counsel for the

government and Mr. Kelly and perhaps Ms. Defeo might,

would want to have a private breakout room to discuss

some potential logistics about that.  I'm, you know, I

don't care or would like need to know Mr. -- or care

or need to know, Mr. Dennis' vaccination status, but

perhaps you may want to discuss that privately.

MR. KELLY:  Sure, Your Honor, if either

Pretrial Services, or the Court or the government have

any concerns with my proposal, I'm happy to discuss it

further in a private room.

THE COURT:  Yes, why don't I put you all in a

private room and then I'll let one of you email me,

email to my chambers when you're ready to come back,

okay?  Then should I bring Mr. Dennis into the private

breakout room, as well?

MR. KELLY:  Sure, if it's not an extra burden.

THE COURT:  Nope, it's not at all and that way

you can ask him your questions as they come up.  Okay,

33

hold on, wait for the beep. Still moving people.

(PAUSE IN PROCEEDING)

MR. KELLY:  Are we on with anyone else, Sarah, Pretrial?

MS. KUSHNER:  I'm on, Sarah's on.

MR. KELLY:  Okay, so we're in the main room, Mr. Dennis, just hold tight.

THE COURT:  Hi, this is the Judge again, I was also off on another call.  Okay, I think, are we ready to proceed?

MS. KUSHNER:  The government and Pretrial are.

THE DEFENDANT:  Mr. Kelly --

MR. KELLY:  Hold on, Mr. Dennis, do you have another question for me or are we ready to proceed?

THE DEFENDANT:  I have one other important point that I wanted to --

MR. KELLY:  Okay, okay, so let's just ask the Judge for two more minutes then.  I'm sorry, Your Honor, could the defense have two more minutes in the breakout room?

THE COURT:  Sure, I'll move you back into the breakout room, hold on a second.

MR. KELLY:  Thank you.

(PAUSE IN PROCEEDING)

```
1                                          34

2            MS. KUSHNER:  Did the defense rejoin, I

3   believe they said that they were actually ready now?

4                 (PAUSE IN PROCEEDING)

5            THE COURT:  Hello, this is Judge Wang again,

6   Mr. Kelly and Mr. Dennis, you're back and ready to be

7   back?

8            MR. KELLY:  This is Mr. Kelly and we're ready

9   to be back.

10            THE DEFENDANT:  And Mr. Dennis is here, as

11   well, Your Honor.

12            THE COURT:  All right, thank you.  What, if

13   anything, were you able to work out on this logistics

14   issue?

15            MS. KUSHNER:  Your Honor, this is the

16   government.  Pretrial and the government both believe,

17   given all the logistics, that the defendant should

18   remain in custody until Monday when he could be fitted

19   hopefully outside with a location monitoring bracelet.

20   Us keeping the documents, you know, we found today is

21   not very reassuring. I don't know what's in his

22   Manhattan home. I know there was at least $2,000 of

23   cash (indiscernible) devices found in his Dominican

24   Republic apartment when he was arrested this week, and

25   I just don't have any insight into what he has access
```

35

to that are not access using credit cards or ATM
machines. I'll also note that while Mr. Kelly, I
believe, proposed that he keeps his license and keys,
my understanding from that what the agents have is
that there is, we don't have his license, we have an
old ID card for a previous law firm that the defendant
worked at, and nothing else with pictures besides
passports. So to give him back an ID we'd be giving
him back a passport and, of course, for all the very
real risk of flight reasons that exist here, the
government would not agree to that, as well. So partly
because of logistics and the timing of it all,
combined with the risk of flight and the fact that the
location monitoring was going to be the sufficient
means to assure his reappearance, the government, and
my understanding is Pretrial still is in agreement
with the government that it would not be appropriate
to release him unless and until he's fitted with the
bracelet or has the two signed, the two cosigners
lined up and ready to go on Monday.

MR. KELLY:  Your Honor, this is, this is Neil
Kelly again. So I'm not trying to retrade anything
here but since the government is now asking for
detention, I'm going to make my sole argument here.

1

2   That location monitoring, itself, is not necessary in

3   this case because Mr. Dennis voluntarily waived

4   extradition proceedings in the Dominican Republic to

5   come back to the United States to face these charges. He

6   was arrested in the Dominican Republic, again, where he

7   was living openly, under his own name, at a specific

8   location that everyone knew where he was, which is where

9   he's been located. He has been participating, as I've

10  mentioned, in multiple civil litigations in New York State

11  and has been participating in them actively, he's not

12  avoiding any obligations here.

13       He, again, when he was arrested, voluntarily

14  signed a document to bring himself back to the United

15  States to face these charges undercutting any suggestion

16  that he's trying to avoid these charges or avoid this

17  case.  Again, he went to the Dominican Republic a year and

18  a half ago before these charges were ever filed, so he was

19  not fleeing them, he was residing there in the open under

20  his own name.

21       With respect to, again, why we're even having

22  this conversation, Mr. Dennis should not be punished

23  because by the luck of the draw we didn't get to speak

24  to Your Honor until after Pretrial Services had left.

25  If we had been presented at 3:00, Mr. Dennis would

37

1

2  have, we had an agreement with the government about

3  conditions, he would have walked across the hallway or

4  outside and gotten fitted with a bracelet and been able to

5  go home. And I just find it profoundly unfair that by the

6  luck of the draw he's now facing the prospect of a weekend

7  in prison.

8          And, on top of that, I would note, as is obvious

9  in the Pretrial Services Report, that Mr. Dennis has

10 previously has a heart attack. The Court knows that

11 cardiac issues are a high risk factor for Covid-19. And

12 while Mr. Dennis might otherwise be in, in, you know,

13 tiptop shape health wise, he has a history of heart

14 conditions. I understand from his cosigners that his

15 family has a history of heart conditions. And to subject

16 him to a weekend in a congregate setting where the highest

17 outbreaks of Covid-19 are happening in this country,

18 solely because of timing issues we weren't able to get in

19 to get him a bracelet in time, in a case where he

20 voluntarily showed up, agreed to be brought back to the

21 United States to be presented and face charges in this

22 case, is just profoundly unfair. And it raise a risk that

23 he'll suffer and adverse health condition while in prison,

24 again, not because he's an actual risk of flight, but just

25 because the logistics didn't work out for us today.

1                                                                    38

2           And I would note that he already took one Covid

3   test to be brought back into the United States, so he's

4   only waiting for one more Covid test to enter the

5   courthouse to get his bracelet again. And so if, if this

6   had been 3:00 and this had been where we ended up, our

7   office could have brought over a rapid test and tested him

8   at 26 Federal Plaza and then walked across the street to

9   get him a bracelet.

10          And so on the government's last concern that

11  they don't know what's in his home in Harlem, he hasn't

12  lived there in almost two years at this point, a little

13  less than two years, he's been living full time in the

14  Dominican Republic, and his home in Harlem is undergoing

15  renovations. So there is nothing in that house of value,

16  of danger to anyone that would allow him to flee, because

17  he hasn't been there in over a year and a half, and

18  he's been having contractors come in and out of the

19  house. That's not something someone would do if they

20  had a stash of cash, undeclared cash in the house that

21  they would then use to flee. And again, the government

22  plays it, he doesn't even have any identification on

23  him, so if he's released to his home he's not going to

24  be given back his phones, he does not have his wallet,

25  he will not have his travel documents.  He does not

1

2  have access to any source of funds if the government

3  holds on to his debit cards and his credit cards. He

4  voluntarily showed up for this case by waiving any

5  extradition rights he had in the Dominican Republic.

6  He has participated and been forthcoming with Pretrial

7  Services about everything they asked him about. He has

8  been, he's done everything possible to show the Court

9  that he's reliable, that he will show up in Court on

10  Monday morning, and that he will be there to get

11  fitted with a bracelet.

12          And so it's just, in this situation when there

13  are no actual concerns of flight, from my point of

14  view, I don't even think location monitoring is

15  necessary in this case. I was agreeing to it as a

16  condition so that Mr. Dennis would not have to spend

17  another night incarcerated, subjecting himself to

18  health risks, I don't even think location monitoring

19  is necessary at all. So with all of those things said

20  I just see no basis for holing him over the weekend

21  when this is someone who is facing a maximum, a

22  maximum, I would add, of five years.  Even if he's

23  convicted on the charge, he has no criminal history,

24  his guidelines will be extremely low, even if he's

25  convicted, that it just seems to me that this is not a

40

1

2  case in any way, shape or form that requires Mr.

3  Dennis to be subject to the health risks of detention

4  over the weekend. So with all of that I would again

5  reiterate our suggestion that he be released with the

6  minimum amount of things that he needs, it sounds like

7  now it's just a key to get into his home.  And then he

8  will report back 9 a.m. Monday morning, we will have

9  his second Covid test in hand at that time, and he

10  will get fitted with a bracelet then. So that is my

11  proposal, Your Honor.

12          THE COURT:  Okay, AUSA Kushner, do you have

13  anything to add on this? I mean, and also I thought I

14  had heard at the beginning that there were, that you

15  had agreed to three cosigners, not two?

16          MR. KELLY:  That's correct, Your Honor, we

17  have agreed to three. I mean I discussed it with Ms.

18  Kushner and she hadn't raised any objection to the

19  fact that, we have two already that I've spoken with,

20  because that was going to be my original proposal, I

21  don't think we will have any difficulty getting a

22  third. But as I discussed, you know, sometimes the

23  paperwork takes a little longer, if it takes us more

24  than however long to get the first two, I will work

25  with Ms. Kushner as I have on many other cases in the

41

1

2  past to get that done, but we already have two lined

3  up, the paperwork is just not ready for them to sign

4  given the hour and the day of the week.  But again, we

5  have two people who I personally have spoken with

6  today who have indicated they would be willing to

7  cosign his bond. And one of them, they spoke to

8  Pretrial Services and Pretrial Services confirmed that

9  as well. So, again, we're doing everything we can on

10  our end to make this go as fast as possible.

11      MS. KUSHNER:  Your Honor, I would just add,

12  this is Sarah Kushner, I would just add that the

13  defendant is a US citizen and, therefore, there

14  actually is no formal extradition proceeding in the

15  Dominican Republic. The Dominican Republic just

16  expelled him.  I don't know what paper he signed today

17  but regardless of whether he signed it or not he would

18  have been lawfully removed and returned to the United

19  States without any formal extradition proceeding. So there

20  was nothing that he had to consent to for him to be

21  brought back here and my understanding is he was brought

22  back here because he was expelled from the country based

23  on our indictment and red notice.

24      And then, secondly, the litigation that's

25  ongoing is against K&L Gates, is litigation, first of all,

                                                    42

1

2   that he instituted, not something that he has to come and

3   defend himself for, and to date my understanding is all of

4   the proceedings which in arbitration in DC have been

5   remote, phone calls. We've actually tried to locate him,

6   we were hoping to use the times that he appeared on court

7   appearances remotely in that case to figure out if there

8   was a way to see where he was with that and we were unable

9   to do so. So the fact that he has ongoing litigation here

10  does not really tie him down physically at all.  And those

11  are just the two things that I wanted to add, otherwise we

12  defer to Pretrial.

13          THE COURT:  All right, well I think the time

14  has come I guess, what is Mr. Dennis' vaccination

15  status, because that could be relevant?

16          MR. KELLY:  He is not vaccinated, Your Honor,

17  because he, again, his cardiac condition, he had

18  concerns about that, and so he is not vaccinated.

19          THE COURT:  All right, and other question is,

20  Mr. Dennis, I understand -- Mr. Dennis, Mr. Kelly, you

21  indicated that you have two cosigners lined up, are

22  either of them willing to take custody of him if he

23  were to be released tonight?

24          MR. KELLY:  They would if they resided in New

25  York City but they don't, Your Honor.

```
 1                                                      43

 2            THE COURT:  All right.

 3            MR. KELLY:  So I can, I mean if, I will say

 4  this, I don't want to keep people any longer on a

 5  Friday night than they are already here, but if it is

 6  a make or break for the Court between whether there is

 7  somewhere else, someone who can be a third party

 8  custodian through the weekend, I would just ask for

 9  five minutes for another breakout with Mr. Dennis to

10  see if he has friends who I might be able to contact

11  to see if he can stay somewhere else for this weekend.

12  I have not done that yet because I thought we had

13  agreement, and the two cosigners are his family

14  members who do not reside in the City of New York.

15  But I would like the opportunity if that's the

16  decision the Court is going to make between whether he

17  goes home or not to have the opportunity to just ask

18  him if he has friends of family in the city who he

19  could stay with this weekend.

20            THE COURT:  Okay, I am not sure that it's make

21  or break anyway, but I will, I would like you to

22  explore that so that I have all of the information

23  available to me and that I have explored everything

24  that I can, okay?

25            MR. KELLY:  Okay, but I would just ask for
```

```
 1                                                      44
 2  five minutes with Mr. Dennis in a breakout room.
 3           THE COURT:  I am going to do that right now,
 4  hold on.
 5           MR. KELLY:  Thank you.
 6               (PAUSE IN PROCEEDING)
 7           MS. KUSHNER:  I think the defense wants to
 8  rejoin the call.
 9           THE COURT:  Okay, we'll bring them right back.
10           MR. KELLY:  Hi, you have Neil Kelly again.
11           THE COURT:  All right, was, is there anything
12  you'd like to add or to discuss?
13           MR. KELLY:  Yes, Your Honor.  So with the
14  assistance of the agents we were able to get the phone
15  numbers of several individuals in the Harlem area who
16  Mr. Dennis believes, with whom Mr. Dennis believes he
17  would be able to stay. Before I contact these
18  individuals, I just want to make sure I understand
19  what the Court is requesting so that I am proposing
20  the right person to the Court, so I was wondering if
21  the Court could maybe give some guidance as to what
22  it's looking for and then I can make sure that
23  whomever I get in contact with is the proper person to
24  recommend that Mr. Dennis be released to if that is
25  what the Court is considering?
```

1                                                          45

2          THE COURT:  Yes, that wasn't exactly what I

3  was considering, I had been hoping, I had been

4  wondering if any of the potential cosigners or if

5  there was somebody who would have been a cosigner,

6  would have been a third cosigner who was in the area

7  and who was willing to take custody of him.

8          MR. KELLY:  That's what I'm saying, Your

9  Honor, I do believe one of the individuals I'm going

10 to reach out to will agree to serve as one of his

11 cosigners. I mean my understanding is that given the

12 time and the process that goes into getting a cosigner

13 prepared, neither the Court's Clerk's Office, nor the

14 government's paralegal would be able to turn that

15 around, you know, in time for him to be signed out

16 this afternoon, or tonight. I was under the impression

17 that Your Honor was considering releasing him to

18 someone as a third party custodian over the weekend

19 and then having, you know, the process proceed then on

20 Monday.

21          So to clarify, I don't think we could have,

22 just logistically, I don't think there is anyone who

23 could be approved as a cosigner and sign now, whether

24 we're in New York or elsewhere, just given where we

25 are timewise.

                                                            46

1

2              THE COURT:  Right.  And then if there were a

3    third party custodian hypothetically, I think I would

4    be concerned about doing that over the government's

5    objection and, of course, there are the logistical

6    issues, as well. Is that something that I should put

7    you all in a breakout room to discuss or is that

8    something that we should not pursue at this time?

9              MR. KELLY:  Well, again, speaking just for the

10   defense again, you know, we, as I hope I've made clear

11   but I'll make explicit, we are willing to consent to

12   merely any condition the Court wants to impose this

13   weekend to allow Mr. Dennis to be released and not

14   have to spend the next three days in detention. And

15   so, you know, if there are logistical concerns, if

16   there are, you know, I want to make sure I propose the

17   right location, I'd have multiple options based on my

18   conversation with Mr. Dennis.  So we are willing to do

19   anything, Your Honor, to get Mr. Dennis out at this

20   point in time so, obviously, anything that Pretrial

21   Services and the government request, but at this point

22   I'm happy to start dialing to find a person who can

23   take third party custody of him over the weekend and

24   ask that person to sign, or approve, or consent to

25   whatever the Court wants just to accommodate this.

1

2  Because I think we ended up here through no fault of

3  anyone's, just logistically.

4          THE COURT:  All right, I'd like to hear from

5  the government on this, on this issue, and perhaps if

6  there, and in particular whether your concerns are

7  risk of nonappearance, or danger to the community, or

8  both.

9          MS. KUSHNER:  Your Honor, they're both, and I

10 think that location monitoring, coupled with the stay

11 away order was sufficient, not being overly

12 restrictive, to assure appearance and safety. The

13 safety, I think, the dangerousness to the community is

14 obvious based on the allegations in the indictment and

15 the details of that set forth in the complaint.  Also

16 knowing that the indictment and the complaint right

17 now are limited to four victims, but there's a much

18 more, much broader situation, and so having him

19 roaming free in the community for a weekend does not

20 give me any assurance that the community will be safe

21 or that he will appear for future court proceedings.

22 So I appreciate Mr. Kelly's frustration that this has

23 somewhat become somewhat of a logistical issue, but I

24 mean at this point, for the safety of the community

25 and the risk of flight concerns, I don't see how he

1

2  can be released tonight without the location

3  monitoring bracelet being put on.

4         I don't know who he would be released to as a

5  third party custodian in the community. You know, it

6  sounds like his two family members who are willing to

7  cosign are not in the city. His immediate family, as

8  you know, as has come out tonight, (indiscernible)

9  divorce proceedings, I don't know that there's any

10 family member here or any other way to provide

11 Pretrial or the government with assurance that

12 whatever third party is thrown our way tonight is an

13 appropriate third party custodian.

14        MR. KELLY:  So, Your Honor, now the

15 conversation has moved to dangerousness, so now I have

16 to make my application on dangerousness. And so,

17 again, as Ms. Kushner said, her primary concern with

18 dangerousness which, again, as the Court knows, the

19 government needs to prove by clear and convincing

20 evidence that Mr. Dennis provides a risk of danger to

21 the community. The allegations are that he used

22 electronic means of communication to send threatening

23 and harassing text messages and emails. The entirety

24 of the complaint, there is only one instance recited

25 of an in person interaction where Mr. Dennis and a

former colleague were both present at a legal
conference, the allegation is that Mr. Dennis
approached this other Person and verbally had a
conversation with him that was loud, and to the other
person disliked, and the other person walked away and
left. There is no allegation of a threat of physical
harm, there is no allegation of actual physical harm,
there is no allegation of an attempt of physical harm
in the one instance noted in the complaint where there
was any in person interaction.

            The rest of the allegations in the complaint
are that there were electronic communications that
were threatening and harassing.  The government has
now taken all of Mr. Dennis' electronic devices, he
will be subject to the stay away order that we
consented to which was satisfactory to the government
previously, to satisfy them that that would obviate
any risk of dangerousness.  He will be subject to that
no matter what happens today, the Court, if it enters
that condition, he is subject to the stay away order.
So the risk of dangerousness is already satisfied, and
the government can't prove that he's a risk of danger
by clear and convincing evidence.

            On top of that, I just want to make clear what

50

1
2  is alleged in the complaint and what is not.  What is
3  alleged in the complaint is over a period of three
4  years Mr. Dennis has sent threatening and harassing
5  emails and text messages.  In the entirety of that
6  three year time there is one face to face interaction
7  in which the government makes an allegation. And as I
8  have just described to the Court, that was
9  happenstance that two people happened to be attending
10 the legal conference at the same time.  There is no
11 allegation of in person stalking, there is no
12 allegation that Mr. Dennis was showing up at people's
13 houses or offices or places of business or anything
14 like that. It's his verbal communication that is the
15 threat here, excuse me, that is the basis of the
16 cyberstalking.
17        I would actually clarify what I'm saying which
18 is that even in the entirety of the complaint, while the
19 number of text messages and communications are one
20 concern, the actual content of the communications, if the
21 Court reads the complaint, there is one communication that
22 the Court, excuse me, that the government characterizes as
23 a threat of harm.  And I would point out that it is
24 notable that that communication is one among many that is
25 just excerpted and not given in context, whereas every

1

2   other communication there is a full paragraph. For that

3   one alleged threat it is excerpted as a few words.

4        The other communications that are mentioned in

5   the complaint are oblique references to other acts of

6   violence committed elsewhere in the country at other

7   periods of time. There is no direct threat that Mr. Dennis

8   or anyone else is going to show up at the office and harm

9   anyone. There is no direct threat to anyone in particular

10   that is recited in the pretty fulsome complaint of

11   communications that alleges that there have been thousands

12   of communications, the government surely would have

13   highlighted any threats if they existed, they don't exist.

14        On top of all of that, I would point out that,

15   again, across three years of this alleged pattern of

16   conduct, there was no escalation, there was no plan, there

17   was no plot, there were no steps taken in furtherance of

18   any scheme to harm anyone. There is no conspiracy alleged

19   where he asked other people to harm anyone.  This is a

20   pure case of electronic communications that the government

21   says make out the claim of cyberstalking and that has been

22   addressed both by the fact that he has no electronic means

23   of communications and by the fact that the Court has or

24   will issue a stay away order.

25        And, again, it is the weekend, none of these

52

people are going to be, I shouldn't say that, as a former
employee of a large law firm maybe some people will be at
the office this weekend, but very few people will be at
the office during Covid, I'm sure they're all working
remotely at a large law firm.  There is, it is
inconceivable that after going through all of this and
being as open and cooperative with the government, with
the Court, with Pretrial Services, that over the weekend
between now and Monday when he can get a bracelet, Mr.
Dennis would wander down without any means of travel or
funds or phone or anything, and randomly bump into someone
affiliated with the law firm. It's just, it's
inconceivable, there is no threat of danger here. And the
idea that now at the last minute this is a concern about
danger when the very danger that is alleged in the
complaint and that was the basis for the government's
concern, we have addressed with the stay away order.

        So, again, the standard is clear and convincing
evidence, the Court cannot, excuse me, the government
cannot satisfy that burden here and, again, we are asking
for a weekend where Mr. Dennis will be released to a third
party custodian, and not to get ahead of myself because I
haven't spoken to this person yet, but one of the
people who Mr. Dennis has tried to put me in touch

53

with and who I would like to speak to, is an

upstanding, well known member of the community who I,

again, do not want to identify before I've spoken to

that person, but is a pillar of the Harlem community

and if Mr. Dennis can stay with that person for two

days until he is able to get fitted with a bracelet on

Monday, I think that would address everyone's concerns

on this call. And again, I'll reiterate that we're

only here because of timing, which is not Mr. Dennis'

fault and I don't think he should be penalized for

that. So that is my application on the dangerousness.

        THE COURT:  All right, anything anybody else

wants to add?

        MS. KUSHNER:  Nothing from the government,

Your Honor.

        THE COURT:  All right, I'm going to take a

short break, I'm going to keep you all in the main

room, please stay on mute.

              (PAUSE IN PROCEEDING)

        THE COURT:  All right, I am ready to proceed,

is the government on the line, still?

        MS. KUSHNER:  Yes, Judge.

        THE COURT:  All right, Ms. Defeo?

        PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

54

THE COURT:  Mr. Kelly and Mr. Dennis, you're all on the line?

MR. KELLY:  This is Mr. Kelly.

THE DEFENDANT:  Mr. Dennis is here, Your Honor.

THE COURT:  All right, thank you.  All right, based on my review of the complaint, the indictment, the Pretrial Services Report, the agreement of counsel to conditions, and based on some of the argument and discussion we have had about whether Mr. Dennis can be released without conditions being, without all the conditions being met, I am accepting the recommendation of the conditions and ordering that he will be detained until either he is able to be fitted with a bracelet for location monitoring or until his cosigners have signed the bond, okay, and these are the conditions and then after that I'll address the reasons for detaining until at least the location monitoring or cosigning is met.

All right, these are the conditions, I want to make sure that I have covered everything.  He will be, Mr. Dennis, you will be released on a $200,000 bond cosigned by three financially responsible persons to home detention supported by location monitoring as

55

1
2  directed by Pretrial Services.  Travel is restricted
3  to the Southern and Eastern Districts of New York.  He
4  will surrender, to the extent he hasn't already, all
5  travel documents and make no new applications.  He is
6  not to possess any firearms, destructive device or
7  other weapon.  Mental health treatment is ordered as
8  directed or he is to continue what is represented to
9  be ongoing mental health treatment as directed by
10  Pretrial Services.  He, Mr. Dennis is not to open any
11  new email or phone accounts without Pretrial approval.
12  I hear the representation that Mr. Dennis is not
13  currently employed, but he is to seek employment.  He
14  is to submit to a urinalysis and, if positive, then I
15  would impose a condition of drug treatment as directed
16  by Pretrial Services.
17          I may have heard, but I'm not sure, whether he
18  is to surrender all of his mobile phones and devices
19  or did I mishear that?
20          MS. KUSHNER:  Your Honor, the government is
21  currently, or law enforcement is currently in
22  possession I believe of the devices that were found
23  today, I don't know if there is any other devices. I'm
24  sorry, we are in possession of the devices, to the
25  extent that there is one phone that he needs to

56

communicate, we would just ask that he, again, provide

Pretrial with the number for that phone and I guess he

would have to get a new phone for now.

MR. KELLY:  Right, Your Honor, to be clear, I

was consenting to the government keeping all of his

electronic devices if he were to be released. If he is

not going to be released, he's entitled to the return

of any devices for which the government does not have

a warrant for. And so he needs, he is entitled to the

return of his property unless it is subject to Court

order. I understand the Court is considering imposing

a condition that he only be able to retain one such

device, in which case I agree with Ms. Kushner that

whatever device he's allowed to retrieve, we will

provide that number to Pretrial Services so they know

which is the number he has. But if the other devices

are not subject to a warrant he is technically

entitled to their return, I was merely consenting to

their collection by the government if that was to be a

condition of his release. But now that he's being

detained, by law he's entitled to the return of his

property.

THE COURT:  When Mr. Dennis is released he is

directed to provide to Pretrial Services the phone

57

1   numbers and email addresses associated with the

2   devices that he is in, that he possesses, okay, or

3   that he is given, all right, or that are returned to

4   him.

5

6          MR. KELLY:  Yes, understood, Your Honor.

7          THE COURT:  Okay.  Okay, and then I'm probably

8   going to need some clarification on the no contact

9   order but let me give it a shot and then I'll let you,

10  I'll let counsel clarify. He is to have no contact

11  with the four victims identified in the indictment and

12  every employee and partner, including former employees

13  and partners from any office at the law firm of K&L

14  Gates.  He is also not to go to any offices of K&L

15  Gates. Is there more to that no contact order than

16  what I've just said?

17         MS. KUSHNER:  Your Honor, I believe there may

18  be a few, very few names of individuals that are not

19  current or former employees.  If they are, the

20  government will provide those names to Pretrial by

21  Monday, otherwise that order is certainly sufficient.

22         THE COURT:   All right, if there are

23  additional names of people who are not encompassed in

24  what I have just said, the government is directed to

25  provide those names to defense counsel and to Pretrial by

58

1
2  Monday.  All right, is there anything else as far as the

3  agreed to conditions?

4          MR. KELLY:  This is Mr. Kelly again.  To clarify

5  again, so Mr. Dennis took one test, Covid test, to be

6  brought into the country. It is my expectation that he

7  will be subject to another Covid test, whether he's sent

8  to Essex, or MDC or Westchester County to be admitted to

9  the facility.  That is then two Covid tests in

10 satisfaction of the Court's, excuse me, the Court's Covid

11 rules, but as we also discussed before, if need be

12 Pretrial is able to fit Mr. Dennis outside, if need be.

13         So I guess that the clarification I'm asking

14 from the Court is it sounds like Mr. Dennis should just be

15 ordered to be produced Monday morning, there is nothing,

16 there is nothing else that needs to be done before he is

17 produced back to the Court on Monday morning to get fitted

18 with a bracelet?

19         THE COURT:  Right, because he could be fitted

20 outside.

21         MR. KELLY:  Correct.  So I just want to be

22 clear, both for an order to be provided to the marshals,

23 that we're not waiting, this is not like a normal

24 situation where we're waiting for all conditions to be

25 satisfied, the Court said either cosigners or location

59

1  monitoring, which would have been the original agreement,

2  so I just want to be clear that I think the Court should

3  just enter an order alongside the detention order

4  directing the marshal service to produce him to 500 Pearl

5  Street on Monday morning.

6

7            THE COURT:  Before I get into the next step of

8  what I was going to do, can you provide an order to that

9  effect that I will sign and have entered and provide?

10           MR. KELLY:  Yes, Your Honor, I'll email that to

11  chambers as soon as we're done.

12           THE COURT:  Okay.  All right, are there other

13  conditions that I did not state?

14           MS. KUSHNER:  Not from the government?

15           MR. KELLY:  Sorry, I was on mute, no, Your

16  Honor.

17           THE COURT:  Okay.  All right, so as I stated

18  at the beginning before I listed the conditions, Mr.

19  Dennis is to be detained until either and the earliest

20  of, whether cosigners have been secured or he is

21  fitted with a location, with the location monitoring

22  bracelet. I will enter an order for him to be produced

23  again on Monday for that to be done.

24           So counsel has made a very vocal argument that

25  Mr. Dennis should not be detained over the weekend

60

based on representations that he does not pose a risk

of nonappearance and also due to concerns about Covid

risk in detention. We touched a little bit on danger

to the community. While I am not basing the

determination to detain him until the location

monitoring or cosigners has been secured, I did want

to address it briefly.

I mean we heard a lot of argument about

physical danger to the community, but it is not only

physical danger to the community that should be

considered and harm to victims of cyberstalking for

repeated and unwanted and harassing communications is

a real harm.  So repeated and continuing

communications over a period of years that are

detailed in the complaint are, are concerning, okay;

however, that is not what I was basing my detention

over the weekend on, all right. The government has

shown by a preponderance of the evidence, a risk of

nonappearance if Mr. Dennis were to be released

without at least a location monitoring or cosigners

having been secured. Mr. Dennis was arrested in the

Dominican Republic on a red card, and although he had

previously resided in the community for decades, his

ties to the community have eroded in recent years, as

1                                                          61

2   detailed in the Pretrial Report, and he has not been

3   present in the Southern District of New York for over

4   20 months.  The Pretrial recommendation request of the

5   government is that Mr. Dennis' appearance be secured

6   by something other than his own signature and I find

7   that that is appropriate under these circumstances.

8            All right, Mr. Dennis, I'm also going to now

9   give you the warnings that you get and that you should

10  get on release. If you fail to appear in Court as

11  required or if you violate any of the conditions of

12  your release, one, a warrant will be issued for your

13  arrest; two, you and anyone who sign the bond will

14  each be responsible for paying its full amount, that

15  is $200,000 and; three, you may be charged with a

16  separate crime of bail jumping which can mean

17  additional jail time and/or a fine. In addition, if

18  you commit a new offense while you are released, in

19  addition to the sentenced prescribed for that offense,

20  you will be sentenced to an additional term of

21  imprisonment of not more than 10 years if the offense

22  is a felony, or not more than 1 year if the offense is

23  a misdemeanor. That term of imprisonment would be

24  executed after any other sentence of imprisonment is

25  completed. While you are awaiting trial I also must

62

1

2   warn you not to have any contact with or engage in any

3   intimidation of potential or designated witnesses or

4   jurors, not to engage in any intimidation of any court

5   officer, and not to engage in any conduct that would

6   obstruct any investigation by law enforcement. And,

7   finally, if you don't agree with my decision, you have

8   a right to appeal it.

9           Just a moment.  All right, has Judge Schofield

10  set a conference date?

11          MS. KUSHNER:  She has not, Your Honor, she

12  said that she would email the parties a proposed date.

13          THE COURT:  All right, do I need to set a

14  control date or anything else?

15          MS. KUSHNER:  I think it would make sense to

16  set a control date and to have time excluded until

17  then.

18          THE COURT:  What should I set for a control

19  date.

20          MS. KUSHNER:  Monday, November 29th, and we'll

21  try and have, so we'll try to have the conference

22  Monday, Tuesday, Wednesday, I just haven't heard from

23  chambers as to when they're available.

24          THE COURT:  All right, so I'll set a control

25  date for November 29th and exclude time until then?

63

```
 1
 2          MR. KELLY:  Yeah, no objection.
 3          THE COURT:  All right.  All right, I grant the
 4  exclusion of time, of speedy trial time to November
 5  29th because I find that the needs of justice outweigh
 6  the best interests of the public and the defendant in
 7  a speedy trial based on the need for the government to
 8  start getting its discovery ready to produce to the
 9  defendant, for the counsel to be talking about a
10  potential pretrial resolution, and for the parties to
11  appear for a conference before the District Judge.
12          All right, anything further?
13          MS. KUSHNER:  Nothing from the government,
14  thank you, Judge.
15          MR. KELLY:  No, Your Honor, I will email
16  chambers with a production order shortly.
17          THE COURT:  All right, thank you very much, we
18  are adjourned.
19              (Whereupon the matter is adjourned.)
20
21
22
23
24
25
```

64

## C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District Court,

Southern District of New York, United States of America versus

Willie Dennis, Docket #20cr623, was prepared using PC-based

transcription software and is a true and accurate record of

the proceedings.


Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:  November 29, 2021