# EXHIBIT H

# LOCATION MONITORING

Reference Guide
March 2020

## Abstract

This guide provides background information, a legal framework, operational information, and policy considerations for location monitoring and its use as a supervision tool in the federal criminal justice system.

Created by: Administrative Office of the U.S. Courts

# Contents

Introduction .................................................................................................................................... 2

History of LM as a Federal Supervision Tool ................................................................................... 2

Authority to Impose LM .................................................................................................................. 2

    Pretrial ......................................................................................................................................... 2

    Post-Conviction .......................................................................................................................... 3

        Probation ................................................................................................................................ 3

        Prerelease Custody ................................................................................................................ 3

        Supervised Release ................................................................................................................ 4

        Intermediate Sanction for Supervision Noncompliance ....................................................... 4

How LM Works ................................................................................................................................ 5

    Available LM Equipment ............................................................................................................ 5

        Radio Frequency (RF) ............................................................................................................. 5

        Global Position System (GPS) ................................................................................................ 5

        Voice Recognition (VR) .......................................................................................................... 6

    Restriction Levels in LM ............................................................................................................. 6

        Curfew .................................................................................................................................... 6

        Home Detention .................................................................................................................... 6

        Home Incarceration ............................................................................................................... 6

        Stand-Alone Monitoring ........................................................................................................ 6

Use of LM in the Field ..................................................................................................................... 7

    Recommendation of LM ............................................................................................................ 7

    Sample Condition Language for Court Orders .......................................................................... 9

        Pretrial Release .................................................................................................................... 10

        Post-Conviction Supervision ................................................................................................ 10

    Installation of LM Equipment .................................................................................................. 10

    Maintaining Contact with Persons on LM ............................................................................... 11

    Monitoring LM and Responding to Alerts ............................................................................... 11

Costs & Payment of Expenses Incurred for LM ............................................................................. 12

# Introduction

Location Monitoring (LM) is a court-imposed condition or sentencing alternative that requires a person under pretrial or post-conviction supervision to be confined to a specific location (often a primary residence) and/or monitored in the community. The court may designate the type of location monitoring technology to be used for monitoring the person under supervision or, absent circuit case law to the contrary, may give the officer the discretion to select the monitoring method.

When a court imposes LM on an individual, United States Probation and Pretrial Services officers ("officers"), with the aid of technology, will monitor the individual's location and patterns of behavior. While LM is not a replacement for supervision nor a guaranteed method to prevent new crimes or noncompliance with conditions of supervision, it is one tool that helps provide accountability for the whereabouts of a person under supervision.

This guide provides historical information on the use of LM as a federal supervision tool, a legal framework for imposing LM, LM operational information, and policy considerations for LM's use as a supervision tool in the federal criminal justice system.[1]

# History of LM as a Federal Supervision Tool

Use of LM as a federal supervision tool dates back decades. In March 1986, in response to deficit reduction legislation, the U.S. Parole Commission in conjunction with the Administrative Office of the U.S. Courts (AO) initiated an experimental curfew parole program. Under the program, officers monitored participants through random telephone calls and weekly in-person contacts. In 1993, the AO awarded its first national contract to provide home confinement monitoring services, known as "electronic monitoring," in federal supervision cases. In 2012, the term "electronic monitoring" was changed to "location monitoring" to better reflect the supervision of a person during a predetermined time period that is monitored and verified, as opposed to the term "electronic monitoring," which has come to describe the supervision of individuals by electronic means.

# Authority to Impose LM

### Pretrial

The court has authority to issue an order of release or detention pending trial to a person charged with an offense.[2] 18 U.S.C. §§ 3141, 3142. If released, the person may be released on personal recognizance, upon execution of an unsecured appearance bond, or on a condition or combination of conditions set forth in 18 U.S.C. § 3142(c). 18 U.S.C. § 3142(a). Under 18

---

[1] This resource guide is for general information purposes only. It does not create any legal rights or set any precedent.

[2] The court is also authorized to issue an order of release or detention of a material witness. 18 U.S.C. § 3144.

U.S.C. § 3142(g), the judicial officer must consider several factors in determining whether there are conditions of release that will reasonably assure the courtroom appearance of the person charged with an offense and the safety of any other person and the community. One condition that may be appropriate is LM. Placement on LM during pretrial release is authorized under 18 U.S.C. §§ 3142(c)(1)(B)(iv), (vii), and (xiv) (restrictions on place of travel, curfew, and any other restriction necessary). Placement on LM is required in any case involving a minor victim under certain sex offenses. 18 U.S.C. § 3142(c).

### Post-Conviction

#### Probation

As an alternative to imprisonment, an individual may be statutorily eligible for probation.[3] A sentence to probation includes mandatory conditions and may include discretionary conditions. See 18 U.S.C. §§ 3563(a)-(b).[4] Placement on LM is an example of a discretionary condition of probation. Under 18 U.S.C. § 3563(b)(19) the court is authorized to impose, as an alternative to incarceration, a discretionary condition requiring that: (1) the probationer remain at their place of residence during non-working hours, and (2) compliance with this condition be monitored by telephonic or electronic signaling devices if the court finds it appropriate. In addition, under 18 U.S.C. § 3563(b)(6), the court may impose a condition that the probationer refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons. Similarly, the court may order that the probationer reside in a specified place. See 18 U.S.C. §§ 3563(13), (14).

#### Prerelease Custody

Under 18 U.S.C. § 3624(c)(2), the Federal Bureau of Prisons (BOP) is authorized to place a prisoner in home confinement for the shorter of the last 10 percent of the term of imprisonment to be served or 6 months. To the extent practicable, prisoners with lower risk levels and lower needs are to be placed on home confinement for the maximum amount of time permitted.

The Elderly and Family Reunification for Certain Nonviolent Offenders Pilot Program also authorizes the Attorney General to release some or all eligible elderly offenders and eligible terminally ill offenders from BOP facilities to home detention, upon written request from either the BOP or an eligible elderly offender or terminally ill offender. 34 U.S.C. § 60541(g)(1)(B).[5]

---

[3] Under 18 U.S.C. § 3561(a), "A defendant who has been found guilty of an offense may be sentenced to a term of probation unless (1) the offense is a Class A or B felony and the defendant is an individual; (2) the offense is an offense for which probation has been expressly precluded; or (3) the defendant is sentenced to a term of imprisonment at the same time for the same or a different offense that is not a petty offense." The statutorily authorized terms of probation are one to five years for a felony; not more than five years for a misdemeanor; and not more than one year for an infraction. 18 U.S.C. § 3561(c).

[4] See also Overview of Probation and Supervised Release Conditions, available at https://www.uscourts.gov/services-forms/overview-probation-supervised-release-conditions; U.S.S.G. § 5B1.3.

[5] The pilot program has been extended through fiscal year 2023. 34 U.S.C. § 60541(g)(3).

Furthermore, under the First Step Act, Pub. L. No. 115-391, 132 Stat. 5149, eligible prisoners who have earned time credit under the BOP's risk and needs assessment system may also be placed in prerelease custody, including release to home confinement. 18 U.S.C. § 3624(g)(2)(A). Unless the Director of the BOP provides otherwise, a prisoner placed on home confinement due to earned time credit will remain in home confinement until at least 85% of their sentence is served. *Id.* at § 3624(g)(2)(A)(iv). If a prisoner placed in prerelease custody on home confinement violates the conditions of home confinement, they may be subject to electronic monitoring. *Id.* at § 3624(g)(2)(A)(i)(I). To the greatest extent practicable, the BOP must enter into agreements with the United States Probation and Pretrial Services to supervise prisoners placed in home confinement under § 3624(g). 18 U.S.C. § 3624(g)(2)(7).

Under 18 U.S.C. § 3624(c)(3) and an interagency agreement between the Bureau of Prison and the AO, the United States probation system may supervise individuals in prerelease custody through a program called Federal Location Monitoring (FLM). Violations by individuals participating in FLM are reported back to the BOP.

### Supervised Release

A term of supervised release after imprisonment may be required by statute or may be imposed at the discretion of the court. 18 U.S.C. § 3583(a). Under 18 U.S.C. § 3583(d), the court is permitted to impose the same discretionary conditions that are authorized under 18 U.S.C. § 3563(b) for probation. Under §§ 3563(b)(6) and (b)(19), the court may impose LM conditions.

An individual whose sentence includes a term of supervised release after imprisonment is released by the BOP to the supervision of a probation officer who supervises the individual released to the degree warranted by the conditions specified by the sentencing court. 18 U.S.C. § 3624(e). Violations by individuals on supervised release are reported to the court.

### Intermediate Sanction for Supervision Noncompliance

If an individual violates a condition of probation, the court may, after a hearing and after considering the applicable factors provided in 18 U.S.C. § 3553(a), continue the individual on probation. 18 U.S.C. § 3565(a)(1). The court may also modify the conditions, including any LM condition. *Id.*

Similarly, as an alternative to incarceration for revocation of a term of supervised release, a court may order the person under supervision to remain at their place of residence during nonworking hours and may order that compliance be monitored by telephone or electronic signaling devices. 18 U.S.C. § 3583(e)(4).

## How LM Works

### Available LM Equipment

The following equipment is currently available for LM use:

#### Radio Frequency (RF)

##### *Landline Unit or Receiver*

This technology involves a receiver that requires an electrical power source as well as a telephone landline to transmit data. Persons under supervision using this technology wear a non-removable transmitter affixed to their ankle, which sends signals back to the receiver when it is in a detectable range of the receiver. The officer is automatically alerted by the receiver when the monitoring equipment is tampered with, or when the person under supervision deviates from an approved schedule or leaves a specific location, typically the residence.

##### *Cellular Unit or Receiver*

This receiver has the same requirements and features as the landline receiver but transmits data via cellular signal; thus, no telephone landline is required.

RF technology remains the most effective monitoring technology to verify the presence of a person under supervision in the residence during specified hours. Under procedural guidance endorsed by the Committee on Criminal Law of the Judicial Conference of the United States (Criminal Law Committee), officers are required to respond to violations; however, locational data is only available for the location where the monitoring unit is placed.

#### Global Position System (GPS)

A GPS tracker is affixed to the ankle of a person under supervision. The tracker receives satellite signals that transmit data to indicate the tracker location and current time. Under procedural guidance endorsed by the Criminal Law Committee, this data is closely monitored by the supervising officer.

GPS equipment may be the preferred supervision tool when enhanced supervision is needed and the whereabouts of the person under supervision must be monitored when leaving the approved residence, or when a third-party risk has been identified.

### Voice Recognition (VR)

Computerized random or scheduled telephone calls are placed and received from a person under supervision's approved location, typically the residence, to verify the person's presence. This technology requires a telephone landline.

Under procedural guidance endorsed by the Criminal Law Committee, a violation does not require an immediate response, but officers are expected to investigate any violations within one business day. For these reasons, VR is best suited to monitor lower risk, non-violent persons under supervision.

## Restriction Levels in LM

The following LM restriction levels are listed from least to most restrictive:

### Curfew

Curfew requires the person under supervision to remain at an approved residence during set time periods of the day (e.g., between 8:00 p.m. and 6:00 a.m.).

### Home Detention

Home detention requires the person under supervision to remain at an approved residence at all times, except for the following scheduled absences that have been preapproved by an officer:
- Employment;
- Education;
- Religious activities;
- Treatment;
- Attorney visits;
- Court appearances;
- Court-ordered obligations; or
- Other activities as approved by the officer.

### Home Incarceration

Home Incarceration requires 24-hours-a-day lockdown, except for medical necessities and court appearances or other activities specifically approved by the court.

### Stand-Alone Monitoring

Stand-alone monitoring does not involve residential curfew restrictions; however, the person under supervision must comply with the location or travel restrictions as imposed by the court. Stand-alone monitoring should be used in conjunction with GPS technology.

## Use of LM in the Field

### Recommendation of LM

When supervision of a person involves LM, procedural guidance endorsed by the Criminal Law Committee provides that the officer recommends the most cost-effective and least restrictive, yet appropriate, LM equipment option available to the person under supervision. The level of restriction and type of equipment chosen should always depend on the risk level of the person under supervision; the higher the risk level, the greater the need for more restrictive LM equipment. The risk and needs of a person on LM should constantly be reevaluated by officers to determine if the court should modify the type of equipment or the level of monitoring. Effective management will avoid the risk of under-supervising higher risk participants and over-supervising lower risk participants.

LM during pretrial release will likely be combined with pretrial services supervision and will usually be ordered for persons with identified issues such as failing to appear, sexual deviance, weapons possession, and violence. A location restriction condition should be recommended or selected if an individual charged with an offense poses such a risk that the individual's presence in the approved home or their location in the community needs to be verified through LM equipment. For all offenses involving a minor child, as listed at 18 U.S.C. § 3142, the Adam Walsh Act requires that the court impose LM and may impose a condition requiring the defendant to comply with a specified curfew (18 U.S.C. § 3142(c)(1)(B)(vii)). The imposition of this condition may be satisfied by using RF or GPS equipment, but not by VR equipment because VR is considered a low-risk alternative that does not provide continuous monitoring and should not be used for high-risk populations.

Individuals with lower risk levels and lower needs who are enrolled in the FLM program during prerelease custody are, to the extent practicable, to be placed on home confinement for the maximum amount of time permitted under 18 U.S.C. § 3624(c)(2). The use of RF equipment is recommended for FLM participants; however, as with any LM participant, the type of LM equipment may be modified given the risk level, personal needs, and circumstances of the individual on LM.

During post-conviction supervision, LM equipment allows an officer to know when a person under supervision is in or out of approved locations, enabling the officer to schedule contact visits. Use of LM equipment also allows officers to detect noncompliance, such as going into prohibited areas (e.g., parks, childcare, or near third parties protected by a court order). As with any individual subject to an LM condition, the type of LM equipment used will be based on the individual's risk level.

The use of LM technology can be recommended as a sanction or action when addressing violations, but it should be recommended only to address specific risks associated with a violation. Again, the type of LM equipment used will be based on the individual's risk level.

In general, use of RF equipment or VR equipment is best suited for individuals with lower risk and need levels, while GPS equipment is the preferred supervision tool for higher risk individuals in need of enhanced supervision.

*LM summary chart*:

| Type of LM Equipment | Operational Mechanics | Potential Limitation(s) | When Best to Impose* |
|---|---|---|---|
| **RF - landline** | A non-removable transmitter is affixed to the ankle of a person under supervision and sends a signal back to the receiver when it is in a detectable range of the receiver.<br><br>The officer is automatically notified when equipment is tampered with or the individual deviates from an approved schedule or location. | Location data is only available for the location where the receiver is placed and does not report where or how far the person under supervision has gone if the person leaves the receiver's range. | Monitoring lower risk individuals.<br><br>May also be used for individuals sentenced under the Adam Walsh Act and on a curfew.<br><br>Recommended for individuals enrolled in the FLM program during prerelease custody. |
| **RF - cellular** | Same as RF-landline except that it transmits data via cellular signal and not a telephone landline. | Location data is only available for the location where the receiver is placed and does not report where or how far the person under supervision has gone if the person leaves the receiver's range. | Monitoring lower risk individuals.<br><br>May also be used for individuals sentenced under the Adam Walsh Act and on a curfew.<br><br>Recommended for individuals enrolled in the FLM program during prerelease custody. |

| | | | |
|---|---|---|---|
| **GPS** | A GPS tracker is affixed to the ankle of a person under supervision and the tracker receives satellite signals that transmit data to indicate the tracker location and current time. | This system involves close monitoring of the data by the supervising officer and can be time consuming for the officer. | When enhanced supervision is needed and the whereabouts of the person under supervision must be monitored when the person leaves the approved residence, or when a third-party risk has been identified. <br><br> May also be used for individuals sentenced under the Adam Walsh Act and on a curfew, but GPS should not be the default technology for these cases and an individualized assessment should be done. |
| **VR** | Automated telephone calls are placed and received from a location approved for the person under supervision to verify the person's presence at the dialed location. | Requires a telephone landline. <br><br> Officers are expected to investigate any violations within one business day, but a violation does not require an immediate response. | Best suited for monitoring lower risk, non-violent persons, because VR technology does not provide continuous monitoring. |
| *The most cost-effective and least invasive, yet appropriate, LM equipment option available to the person under supervision should always be recommended, and the risk and needs of a person on LM should constantly be reevaluated by officers to determine if the court should modify the type of equipment and the level of monitoring. | | | |

### Sample Condition Language for Court Orders

The following language may provide guidance when imposing a LM condition. While this section includes sample language that is intended to be clear and legally sound, there may be cases where the court or the parties determine that different language is necessary to account for the individual circumstances in that case. There may also be case law in individual circuits requiring variations from the sample language. For instance, circuits vary in the level of specificity required in conditions to prevent over-delegation of authority to officers. Each district should fashion LM condition language in a way that comports with circuit case law requirements.

To help maintain manageable LM caseload sizes, the AO provides caseload size guidelines for courts to consider. The AO, however, also recognizes that each office will ultimately have to make its own decision as to what caseload size is appropriate based on the circumstances of the office and nature of the case.

### Pretrial Release

Sample language for imposition of a condition of LM is available in AO Form 199B ("Additional Conditions of Release").

### Post-Conviction Supervision

The following is sample language the court may use when imposing a condition of LM on a person under post-conviction supervision[6]:

> You will be monitored by the form of location monitoring technology indicated below for a period of ___ months, and you must follow the rules and regulations of the location monitoring program.  [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., week, month)] or [___% of the costs of the program.]]
> ___ Radio Frequency (RF) Monitoring;
> ___ GPS Monitoring (including hybrid GPS);
> ___ Voice Recognition; or
> ___ The location monitoring technology chosen at the officer's discretion.
>
> This form of location monitoring technology will be used to monitor the following restriction on your movement in the community:
> ___ You are restricted to your residence every day from _____ to _____ **(curfew)**.
> ___ You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the officer **(home detention)**.
> ___ You are restricted to your residence at all times, except for medical necessities and court appearances or other activities specifically approved by the court **(home incarceration)**.
> ___ You must comply with the following condition: _____.

### Installation of LM Equipment

Under procedural guidance endorsed by the Criminal Law Committee, once the LM equipment to be used is determined, officers are required to install the equipment at the participant's residence to ensure proper installation and verify equipment placement. For persons who receive LM as a condition of pretrial release, the installation must be completed on the same day as the court orders bail or the same day the individual is released from custody, unless the court approves a delay. For persons who receive LM in the post-conviction phase of their federal case, officers should install the LM equipment as soon as possible but not later than 10 business

---

[6] The sample language, which was endorsed by the Criminal Law Committee, is also available on the United States Courts website. *See* Overview of Probation and Supervised Release Conditions document, *available at* https://www.uscourts.gov/services-forms/overview-probation-supervised-release-conditions.

days from the court's order. LM equipment for higher risk post-conviction participants, including persons convicted of, or who have a history of, sex offenses and any participant with a history of violence, should be installed immediately or as soon practicable. Participants in the FLM programs should have their LM equipment installed immediately upon release from prison or a halfway house.

During any instance of delay due to long-distance travel or after-hours safety concerns, the supervising officer may install the transmitter on the participant in the office, and the participant may be authorized to complete the receiver installation at their residence. Under procedural guidance endorsed by the Criminal Law Committee, the officer is required to conduct a home visit to verify proper installation within 48 hours or the next business day. For lower risk cases, officers have up to 10 days to conduct the home visit.

### Maintaining Contact with Persons on LM

Under procedural guidance endorsed by the Criminal Law Committee, the supervising officer is required to conduct a personal community contact with the person on LM every 30 calendar days. This personal contact is necessary to inspect the monitoring equipment and obtain substantive information from individuals in the community who can best provide insight into the participant's activities, behavior, and overall compliance with the program regulations and conditions of supervision. For lower risk monitoring cases, in which the participant poses no threat of harm to the community, the 30-day personal community contact may be waived for up to six months with management permission, and if the participant is in full compliance.

### Monitoring LM and Responding to Alerts

To ensure compliance with the LM program restrictions, LM tests for the participant's presence at specific locations during prescribed hours. LM equipment is required to track and report key events to the probation or pretrial services officer. Alert notifications on key monitoring events are reported to the officer based on procedural guidance that has been endorsed by the Criminal Law Committee. The procedural guidance establishes time frames by which officers receive alerts and defines those alerts that require immediate responses.

Under procedural guidance endorsed by the Criminal Law Committee, all officers are required to receive and respond to LM alerts 24 hours a day, 7 days a week. Individual case oversight varies based on the type of equipment used for LM.

In addition, officers are required, under procedural guidance endorsed by the Criminal Law Committee, to review monitoring reports and GPS mapping daily (7 days a week) for all persons with a history of sex offenses or persons who have been charged with a sex offense in the location monitoring program. The remaining cases require a daily report review each business day. The monitoring reports and GPS mapping review can often reveal patterns of behavior, equipment issues, or problems with adherence to program rules.

The following chart reflects an officer's required tasks based on each type of LM equipment.

| Officer's Required Task | GPS | RF | VR |
|---|---|---|---|
| Daily review of GPS maps/movement | X | N/A | N/A |
| Chronological notation of GPS map review | X | N/A | N/A |
| *Zone Management | X | N/A | N/A |
| **Investigate drift points | X | N/A | N/A |
| Immediate in-person inspection of GPS tracker upon complete power loss | X | N/A | N/A |
| Monitor GPS tracker charging behaviors | X | N/A | N/A |
| Monitor of beacon/receiver placement in the residence | X | X | N/A |
| In-person equipment inspection at every personal contact | X | X | N/A |
| Daily review of monitoring reports | X | X | X |
| Weekly chronological notation of daily report review | X | X | N/A |

*If GPS is used, the officer must create and monitor inclusion and exclusion zones based on the case specifics and risk factors. Inclusion zones are geographical areas in which a participant's presence is required during prescribed times (e.g., residence, treatment, district, state). Exclusion zones are geographical areas from which a participant is excluded (e.g., schools, parks, and a victim's residence). If the GPS tracking device leaves an inclusion zone without permission or enters an exclusion zone, an immediate alert is generated and requires an immediate officer response and investigation.

**GPS drift points or false GPS points can be the result of the following: thickness of the ionosphere, satellite orbit, humidity, or multi-path distortion (GPS bouncing off buildings). The GPS tracker will send an alert to an officer indicating that the participant may have left the approved residence for a short period of time. The officer must investigate the alert for noncompliance and analyze the GPS points for the number of GPS satellites creating the point, point speed, and the pattern of movement.

## Costs & Payment of Expenses Incurred for LM

At the pretrial stage, the cost to supervise persons on LM is substantially lower than the cost of detention; thus, use of LM over detention provides a significant opportunity to ensure cost-effective service to the public. By imposing release with an LM condition, where appropriate, judicial officers are able to promote the responsible use of public funding to protect the rights of individuals and to reasonably ensure the appearance of a person charged with an offense and the safety of the community as required.

The cost of supervising a person on LM during post-conviction is also lower than the cost of incarceration.

*Payment of LM expenses summary chart*:

| Phase in Federal Matter | LM Purpose(s) | Who pays for LM |
|---|---|---|
| Pretrial | <ul><li>Increase certainty of appearance of person on LM.</li><li>Reduce ability to commit new crimes.</li><li>Mitigate any identified risk.</li></ul> | <ul><li>Combination of the Judiciary and pretrial participants on LM who make co-payments.</li></ul> |
| Post-Conviction | <ul><li>Limit opportunity to engage in unlawful conduct.</li><li>Aid in successful completion of the term of supervision.</li></ul> | <ul><li>Persons on probation and supervised release only pay a co-payment if ordered by the court. Any expenses not covered by a co-payment, if applicable, are paid for by the Judiciary.</li><li>Prerelease custody/FLM participants are required to pay the full cost of LM & the BOP reimburses the district for all co-payment expenses not collected. In accordance with the interagency agreement, the United States probation system is reimbursed by the BOP for the supervision assistance of persons enrolled in the FLM program.</li></ul> |