

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 12, 2022

**BY ECF**
The Honorable Lorna G. Schofield
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *United States v. Dennis*, 20 Cr. 623 (LGS)

Dear Judge Schofield:

The Government respectfully submits this letter in opposition to defendant Willie Dennis's request for a modification to the current conditions of his pretrial release. Pretrial Services joins in the Government's opposition. The defendant's request should be denied because, as Judge Ona T. Wang previously found, the conditions initially imposed are the least restrictive conditions that will reasonably assure the defendant's appearance in this case and the safety of others and of the community.

   I.   **Background**

The defendant is a former partner at a prominent law firm (the "Law Firm"). The defendant joined the Law Firm in or about 2005, as an equity partner, and worked at the Law Firm's New York office until he was terminated on or about May 13, 2019. He was terminated for erratic and threatening behavior, as well as his years-long poor performance as a partner. For those same reasons, in or about January 2019—prior to the defendant's formal termination—the Law Firm locked the defendant out of his firm email account and the physical premises of the Law Firm.

For years, starting in at least in or about 2018, and continuing up through at least in or about March 2021, the defendant engaged in a pervasive campaign of harassment, intimidation, and threats directed at his former colleagues, including black male and female partners at the Law Firm. The defendant sent thousands of harassing communications to and called and left numerous voicemails for the victims. Those communications were sent at all hours of the day, often in rapid succession. The harassing communications sent by the defendant, who is black, ranged from accusing the Law Firm of discriminating against him based on his race to threatening physical harm to certain victims and their families. The defendant's conduct was unrelenting. The Complaint, attached hereto as Exhibit A, discusses a very small portion of the endless text messages, emails, and calls that several victims received from the defendant. The defendant's

conduct caused those victims substantial emotional distress and caused them to fear for their and their families' physical safety. One victim was so frightened that the victim relocated from New York to another state as a result of the defendant's conduct. Another victim changed the location of the victim's parking garage and upgraded the victim's home security system out of fear for what the defendant might do. And the Law Firm hired private security for more than one victim in order to protect the victims from the defendant. Moreover, although not alleged in the charging instruments because such conduct is not relevant to the legal elements of the cyberstalking charges, the evidence in this case does show that the defendant physically stalked and harassed certain victims in person during the relevant time period. The defendant also threatened to visit the homes of certain victims and their families.

On or about October 28, 2020, the defendant was charged by Complaint with four counts of cyberstalking, in violation of 18 U.S.C. §§ 2261A and 2, and an arrest warrant was issued. On or about November 19, 2020, a grand jury returned a four-count Indictment against the defendant on the same charges.

On or about November 16, 2021, pursuant to the arrest warrant in this case, the defendant— a U.S. citizen—was arrested in and expelled from the Dominican Republic, where he had been residing since in or about February 2020. On or about November 19, 2021, the defendant was interviewed by Pretrial Services. He did not mention that he had or has ever had any of the medical issues of which he now complains. That same day, Judge Wang presided over an hours-long bail hearing. (*See* Dkt. No. 18-1.) At the end of the lengthy, comprehensive hearing, Judge Wang set the following bail conditions but ordered the defendant temporarily detained until a location monitoring bracelet was placed on the defendant or until the bond was signed by the requisite cosigners: $200,000 bond cosigned by three financially responsible persons; home detention, supported by location monitoring as directed by Pretrial Services; travel restricted to the Southern and Eastern Districts of New York; surrender of all travel documents and make no new applications; prohibited from possessing any firearms, destructive device, or other weapon; mental health treatment as directed by Pretrial Services; not to open any new email or phone accounts without Pretrial Services' approval; seek employment; submit to a urinalysis; provide Pretrial Services with the phone numbers and email addresses of devices he possesses; and no contact with any current or former employees and partners of the Law Firm, including no contact with the four victims identified in the Indictment; prohibited from going to any offices of the Law Firm. (*Id.* at 55-58.) In temporarily detaining the defendant and imposing location monitoring as a condition of the defendant's bail, Judge Wang emphasized "not only [the] physical danger to the community" posed by the defendant but also the "real harm" the defendant is capable of imposing "to victims of cyberstalking for repeated and unwanted and harassing communications." (*Id.* at 60.) Judge Wang stated that the "repeated and continuing communications over a period of years," as detailed in the Complaint in this case, "are concerning." (*Id.*) Furthermore, Judge Wang found that the Government "has shown by a preponderance of the evidence" that there is a "risk of nonappearance" if the defendant were to be released "without at least a location monitoring or cosigners having been secured." The Court noted that the defendant was "arrested in the Dominican Republic on a red card," and had "not been present in the Southern District of New York for over 20 months." (*Id.* at 60-61.)

On or about November 22, 2021, the defendant was fitted with a location monitoring bracelet. The bracelet weighs 6.1 ounces. *See* https://bi.com/gps/.

On or about December 2, 2021, Pretrial Services conducted a home visit of the defendant's townhouse in New York, where he was staying. The defendant informed his Pretrial Services Officer that the defendant had fallen through the open floor on the main level of his residence and hurt his knee. The defendant did not complain about the location monitoring bracelet.

On or about December 3, 2021, the defendant requested a modification of the conditions of his pretrial release, which both the Government and Pretrial Services consented to. Specifically, the defendant requested that the Court allow the defendant to reside primarily at his parents' home in the Central District of Florida. (Dkt. No. 15.) The Court granted that request on or about December 6, 2021. (Dkt. No. 16.) The defendant's bail conditions otherwise remained the same.

On or about December 10, 2021, the defendant relocated to Florida. On or about December 14, 2021, the defendant, for the first time, claimed to his Pretrial Services Officer in Florida that he was experiencing pain, allegedly from the location monitoring bracelet. The Pretrial Services Officer offered to switch the bracelet from the right ankle to the left ankle, but the defendant declined. That day, according to the defendant's instant motion, he went to the emergency room where he was treated for lower back pain. (Dkt. No. 18 at 3-4.) On or about December 17, 2021, according to the defendant's instant motion, he sought treatment for pain in his inner thigh. (*Id.* at 4.) The defendant was apparently referred to another medical provider, who, without any history of treating the defendant, issued letters stating, without any explanation, that the location monitoring bracelet had something to do with the pain that the defendant was experiencing. (Dkt. No. 18, Ex. D.) Specifically, in a letter dated December 22, 2021, that medical provider asserted that the defendant had "right inner thigh pain which is most likely from acute inflammation *due to weight* bearing in right ankle from the GPS that is attached to right ankle." (*Id.*) (emphasis added). On or about January 7, 2022, that same medical provider stated in a letter that the defendant was "having extreme pain in right groin in area," and that the GPS bracelet "makes the symptoms worse." (*Id.*, Ex. F.) The medical provider further stated, for the first time, that the defendant was also experiencing "severe pain along with a fracture of left bigger toe which makes it impossible for him to have the GPS attached to left ankle." (*Id.*)

The defendant now moves to have his location monitoring bracelet completely removed, claiming that he is suffering from "significant physical pain and injury" as a result of the bracelet. (Dkt. No. 18.) The Government and Pretrial Services oppose the defendant's motion.

**II. Argument**

As Judge Wang previously found, the conditions currently in place are the least restrictive conditions that will reasonably assure the defendant's appearance and the safety of others and of the community in this case. Nothing has changed since November that warrants modification of the defendant's location monitoring, the key condition that accomplishes the two goals of minimizing the defendant's risk of flight and of protecting others and the community. Accordingly, the Court should deny the defendant's request.

The nature and circumstances of the offense weigh in favor of location monitoring. The defendant is accused of cyberstalking multiple individuals, including by sending them harassing and threatening written and voice communications. In connection with his cyberstalking campaign, the defendant has also physically harassed and stalked certain victims. Victims have had to make serious changes to their and their families' daily routines based on the defendant's conduct over the past several years. They are terrified of what may happen if the defendant's bracelet were to be removed because there would be no accountability on the defendant's part as to his whereabouts. As noted below, the voice recognition technology that the defendant proposes as a substitute for his bracelet—even if it were appropriate and sufficient, which it is not—is simply not available to Pretrial Services. To ensure that the victims remain safe, and that the community remains safe, location monitoring is imperative. That is especially true given that some of the victims reside in Florida, and are thus readily accessible to the defendant.

The defendant's history and characteristics also weigh in favor of continued location monitoring. The defendant has ties to the Dominican Republic, where he resided from at least in or about February 2020, up through the time of his apprehension and arrest in this case. It took law enforcement 20 months to arrest the defendant and to have him expelled from the Dominican Republic.[1] Given his ties to that country, location monitoring is the least restrictive condition possible to ensure the defendant's appearance in this case.

The nature and seriousness of the danger to any person or to the community that the defendant, unmonitored, would impose also demands that location monitoring be kept in place. Absent location monitoring, there is nothing to help ensure that the victims and community are protected from the defendant or that the defendant is otherwise in compliance with his no contact order. Location monitoring is a minimally intrusive but important bail condition that ensures the safety of others and of the community while the defendant is out on pretrial release.

\* \* \*

Nothing in the defendant's letter changes the analysis. The defendant claims that the additional, unequal weight of the GPS bracelet is causing him pain and exacerbating a preexisting issue with his toe, and causing him a hernia. That is hard to believe given that the bracelet weighs a total of *6.1 ounces*. The medical records attached to the defendant's motion simply assert, without any justification, that this extremely light location monitoring bracelet may have something to do with the pain that the defendant is purportedly suffering. The defendant, however, did not inform Pretrial Services or the Court about any of these purported medical issues at the time of his arrest or at his presentment and initial bail hearing. The defendant claims that this is because he had been managing his toe pain. The defendant, however, was asked to provide his medical *history* to Pretrial Services and never mentioned that issue. Indeed, it appears that the defendant only mentioned his toe problem to Pretrial Services and to the medical provider

---

[1] Contrary to the defendant's insinuation that his arrest strategically occurred on the "eve of the parties in his civil matter exchanging substantive discovery with each other" (Dkt. No. 18 at 2), the timing of his arrest had nothing whatsoever to do with any civil litigation, and was the direct result of the time and resources necessary for law enforcement to locate the defendant in the Dominican Republic and seek his expulsion from that country.

discussed above *after* Pretrial Services offered to switch the defendant's bracelet from the right to the left ankle.

In any event, the defendant's complaints about the GPS bracelet are not reasons to change Judge Wang's well-reasoned decision that GPS location monitoring is appropriate and necessary in this case. As noted above, the bracelet itself weighs approximately *6.1 ounces*, *see* https://bi.com/gps/, and its technology is designed to comply with national and international standards and guidelines regarding exposure of human beings to radio frequency electromagnetic energy prescribed by the FCC. The discomfort that the bracelet is purportedly causing the defendant simply does not outweigh the need for location monitoring in this case in order to address the very real flight and safety concerns posed by the defendant's release. There is no alternate means by which Pretrial Services can effectively monitor the defendant. Voice recognition is not available to Pretrial Services and a simple curfew is insufficient in light of all of the factors that the Court must consider in fashioning the "least restrictive" bail conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142.

### III. Conclusion

For the foregoing reasons, the defendant's request for a modification of the most significant condition of his pretrial release should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Sarah L. Kushner
Assistant United States Attorney
(212) 637-2676

cc:   Neil Kelly, Esq. (by ECF)
      Josh Rothman, Pretrial Services Officer (by Email)