**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

January 10, 2022

<u>Via ECF</u>

The Honorable Lorna G. Schofield
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** <u>United States v. Willie Dennis</u>
   **20 Cr. 623 (LGS)**

Dear Judge Schofield,

  I write on behalf of Willie Dennis to respectfully request that the Court narrowly modify the conditions of Mr. Dennis's pretrial release in this matter. Specifically, given the nonexistent risk of flight or danger to the community that Mr. Dennis presents; the onerous conditions of Mr. Dennis's pretrial release; his full compliance to date with the terms of his pretrial release; and the significant physical pain and injury that Mr. Dennis has experienced as a result of his location monitoring equipment, we respectfully request that Mr. Dennis no longer be subject to home detention enforced by location monitoring, but rather to a curfew enforced by voice recognition technology. The Government and Pretrial Services oppose this request.

  To the extent the Court does not grant this application on the basis of the parties' submissions, we respectfully request that the Court conduct a hearing at its earliest convenience to consider this request. Due to Mr. Dennis's residence in Florida, the widespread COVID outbreak, and Mr. Dennis's physical condition, the defense consents to a telephonic hearing. The parties are available Friday, January 14, 2022 from 1:00 to 4:00 p.m. for a telephone conference, and can make themselves available next week as well, depending on the Court's availability.

**I. Background**

  A. *Background*

  Willie Dennis was born and raised in New York, and grew up in a close-knit family with strong religious and family values. Mr. Dennis was the first African American student to attend St. Edwards the Confessor School in Syosset, New York, and attended Choate Rosemary Hall in Wallingford, Connecticut on a scholarship. Mr. Dennis then attended Columbia College, from

<u>United States v. Dennis</u>
20 Cr. 623 (LGS)

which he graduated in 1984, worked for the Federal Reserve Bank of New York, and then attended Columbia Law School, from which he received his juris doctorate degree.

Following his graduation from Columbia Law School, Mr. Dennis practiced corporate law at premier law firms in New York City for three decades, becoming a partner at a top 50 law firm as recognized by nationwide industry publications. Mr. Dennis was fortunate to be mentored by trailblazing Black attorneys, and, over his career, he has advised and counseled numerous Fortune 500 companies, including Microsoft, Goldman Sachs, DuPont, MetLife, CBRE, American Express, Tyco, Toys-R- Us, and Darden Restaurants. In recognition of his achievements, Mr. Dennis has received numerous industry awards and been named as one of the nation's best lawyers by Black Enterprise magazine and one of the top African American lawyers by Savoy magazine.

Beyond his work for clients, Mr. Dennis has dedicated himself to actively promoting gender and racial equality, within the legal industry and beyond. For example, Mr. Dennis has long been involved with diversity and inclusion initiatives with the Minority Corporate Counsel Association, the National Bar Association, and Corporate Counsel Women of Color. Mr. Dennis has also served on the Board of Directors for the Upper Manhattan Empowerment Zone, working closely with business leaders and national, state, and local elected officials to promote the economic development and advancement of historically Black communities. Mr. Dennis has served on the Board of Directors for Junior Achievement of New York, and has been an active supporter and counselor for several local and national political campaigns.

Mr. Dennis's employment with his last law firm ended acrimoniously (he vigorously disputes the narrative his firm has publicly disseminated), and Mr. Dennis has been pursuing civil legal remedies against the firm for several years. Although the alleged conduct in this matter occurred primarily in 2018 to 2020 according to the Government, Mr. Dennis was not arrested until November 2021, on the eve of the parties in his civil matter exchanging substantive discovery with each other.

Mr. Dennis has no criminal history, having never been convicted of a criminal offense.

B.    *Mr. Dennis's Initial Appearance and Bail Determination*

At the Friday, November 19, 2021 bail hearing, in an effort to ensure that Mr. Dennis was released from custody as quickly as possible and was not detained any longer than necessary, the defense originally agreed to a bail package with the Government that included, among other conditions, home detention to be enforced by location monitoring. *See* Ex. A, Tr. 14:5–15:9, 16:16–19:19, *United States v. Dennis*, No. 20 Cr. 623 (S.D.N.Y. Nov. 19, 2021).

Despite the agreed upon bail package, by the time the parties appeared before Magistrate's Court, Pretrial Services personnel were no longer available to install Mr. Dennis's location monitoring equipment. *Id.* 21:20–22:5. At that point, the Government objected to Mr. Dennis being released on his own signature, and Magistrate Judge Wang (over the defense's objections both to the location monitoring condition and to Mr. Dennis's detention until location monitoring equipment could be affixed), ordered that Mr. Dennis be detained until the next court

<u>United States v. Dennis</u>
20 Cr. 623 (LGS)

day (Monday, November 22, 2021) at which personnel would be available to affix the ankle bracelet. *Id.* 28:19–29:8, 35:22–40:11, 48:14–53:12, 54:7–55:16.

In ordering Mr. Dennis's detention and location monitoring over the defense's objections, Magistrate Judge Wang found that Mr. Dennis presented a risk of flight because he had been living in the Dominican Republic at the time of his arrest. *Id.* 59:17–61:7. Magistrate Judge Wang ordered that Mr. Dennis be released on the conditions the parties had otherwise agreed to,[1] after either location monitoring equipment was installed or his co-signers had been sworn to the bond. *Id.* 54:7–58:1; *see* Dkt. No. 5.

After delays due to the intervening weekend, Mr. Dennis was released from MDC Brooklyn on the evening of November 22, 2021. Despite the undersigned's office reaching out to the Government, Marshals Service, and Bureau of Prisons repeatedly throughout the day, Mr. Dennis was released by MDC Brooklyn without any advanced notice to counsel. Because Mr. Dennis was released from custody late in the day on November 22, he was not fitted with location monitoring equipment at this time.

Despite not being subject to location monitoring or GPS tracking, however, Mr. Dennis fully complied with the conditions of his pretrial release. During this time, while not being subject to any location monitoring and before his co-signers had signed his release bond, Mr. Dennis did not attempt to flee and he did not attempt to contact or approach any of the alleged victims in this case. Rather, he reported immediately to counsel's office and voluntarily returned to Pretrial Services first thing the next morning to receive his location monitoring equipment and be processed by the Marshals Service.

C. *Mr. Dennis's Compliance with his Release Conditions and Physical Ailments Since His Release*

Since his release on November 22, 2021, Mr. Dennis has continued to be fully compliant with the terms of his release. On December 6, 2021, the Court approved Mr. Dennis's consent application to be permitted to reside with his elderly parents in Florida, given the uninhabitable state of his home in New York. *See* Dkt. No. 16.

Since mid-December, Mr. Dennis has been experiencing increasing pain in his back, right inner thigh, and right leg, which have forced him to seek medical attention on multiple occasions. On December 14, 2021, Mr. Dennis went to the emergency room of Central Florida

---

[1] Specifically, a $200,000 personal recognizance bond, co-signed by three financially responsible persons; travel restricted to the Southern and Eastern Districts of New York; surrender of travel documents; agreement to not possess any firearms; mental health services as directed by Pretrial Services; agreement to seek employment; urinalysis and substance abuse treatment as directed by Pretrial Services; agreement to not open any new email accounts or phone accounts without permission from Pretrial Services; agreement to provide Pretrial Services with the phone numbers and email accounts/passwords that would be used going forward; agreement not to contact four alleged victims, any current or former employees of K&L Gates, or several additional persons identified by the Government.

United States v. Dennis
20 Cr. 623 (LGS)

Regional Hospital, where he was treated for lower back pain. *See* Ex. B. He returned on December 17, 2021 when he experienced pain in his inner thigh as well. *See* Ex C. The emergency room physician referred Mr. Dennis to another medical provider for evaluation and treatment that the ER could not provide, and informed Mr. Dennis that she believed his pain was being caused by the unequal weight Mr. Dennis was carrying on his right leg from his location monitoring equipment.

On December 22, 2021, Mr. Dennis's clinical provider concluded that the inner thigh pain he was experiencing was likely caused by the additional weight Mr. Dennis was bearing on his right leg. *See* Ex. D. The clinical provider recommended that the location monitoring equipment be removed to reduce this strain. *Id.* After a return visit on January 5, 2022, the clinical provider confirmed her diagnosis. *See* Ex. E. On January 7, 2022, the clinical provider diagnosed Mr. Dennis with a right inguinal hernia and referred him for a surgical consultation (scheduled for January 11, 2022). *See* Ex. F.

In the summer of 2021, Mr. Dennis suffered an interphalangeal dislocation of his first toe (Ex. G at 13–14), for which his primary care physician and orthopedic surgeon in the Dominican Republic (where he was living) both recommended surgery. Because he lacks medical insurance, Mr. Dennis had not pursued this expensive treatment, but was treating this ailment with physical therapy. This had reduced the pain to the point that Mr. Dennis did not mention it at the time of his Pretrial Services interview in November. However, due to this injury, Mr. Dennis puts more weight on his right leg, and Mr. Dennis's clinical provider believes the location monitoring equipment is exacerbating this issue by adding additional weight to his right leg. *See* Ex. E.

Mr. Dennis and counsel have inquired of Pretrial Services whether it is possible for the current home detention condition to be enforced by an alternative ankle bracelet or technological means other than an ankle bracelet, but have been informed that this is not possible. Counsel has also asked the Government if it would consent to alternative conditions of release (in addition to those already imposed) that could substitute for the home detention and location monitoring conditions. The Government has not consented to alternative conditions.

## II.     Argument

Under the Bail Reform Act, the district court "shall order the release of the person" upon personal recognizance or the execution of an unsecured appearance bond, unless the court determines that such release "will not reasonably assure" the appearance of the defendant or the safety of the community. 18 U.S.C. § 3142(b). In the latter case, the court may impose conditions on pretrial release, but such conditions must be the "least restrictive" conditions necessary to "reasonably" address any risk of flight or danger to the community. *Id.* § 3142(c)(1)(B).

The Bail Reform Act further provides that, where a district court has imposed conditions of release, it "may at any time amend the order to impose additional or different conditions of release." *Id.* § 3142 (c)(3). When considering an application to modify a defendant's bail conditions, the Court is guided by the factors in 18 U.S.C. § 3142(g) regarding whether conditions exist that will reasonably assure the appearance of the accused and the safety of the community. Specifically, the Court is to consider:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . . *Id.*

The Court's determination as to whether any condition or combination of conditions of release will reasonably assure the safety of the community must be supported by clear and convincing evidence, and its determination as to whether any conditions will reasonably assure the appearance of the defendant must be supported by a preponderance of the evidence. *See* 18 U.S.C. §§ 3142(e), (f); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

Under the present circumstances, the home detention and location monitoring conditions in the Magistrate Court's release order far exceed the "least restrictive" set of conditions necessary to assure Mr. Dennis's appearance in court or to prevent any danger to the community. Modification is particularly appropriate where, as here, new facts emerge (including a record of Mr. Dennis's full compliance with the terms of his pretrial release, his failure to flee or contact any alleged victims during the time that he was free in the community and not subject to any location monitoring (or moral suasion from co-signers to any bond), and the physical pain and discomfort his location monitoring equipment is causing him).

The record as it presently stands warrants the Court's granting of the limited relief sought by Mr. Dennis—modification of the home detention and location monitoring condition to a curfew enforced by voice recognition technology. However, to the extent the Court is not prepared to grant Mr. Dennis's application on this record alone, Mr. Dennis respectfully submits that the present onerous conditions should not be maintained without conducting a bail modification hearing at which the Government must establish that no other set of conditions will ameliorate the purported risk of flight or danger to the community that Mr. Dennis presents.

A.   *Risk of Flight*

Mr. Dennis presents no risk of flight. This has been proven beyond all doubt by his conduct since his release on November 22, 2021. Specifically, during the period of time after Mr. Dennis had been released from custody, but before his co-signers had been sworn to the bond and before Mr. Dennis was fitted with location monitoring equipment, Mr. Dennis did nothing that evidenced any intent to flee. If Mr. Dennis were going to flee, it would have been at this time—before any third parties would have been subject to the negative consequences of his

United States v. Dennis
20 Cr. 623 (LGS)

flight, while Pretrial Services was unaware of his location, and while he was not carrying any mobile electronic device that could be tracked or traced.

But Mr. Dennis did not flee during this time. He reported directly to the undersigned's office. The next day, he reported immediately to Pretrial Services to receive his location monitoring equipment (and was even excused during his wait for his equipment because Pretrial Services personnel were delayed).

Since his release, Mr. Dennis has complied with all of the conditions of his pretrial release—including, most importantly, the no-contact order issued by Magistrate's Court. Mr. Dennis's full compliance (even when not subject to location monitoring or the full extent of the bond conditions) completely refutes the government's original portrait of Mr. Dennis as a risk of flight or a danger to the community. His compliance demonstrates, to the contrary, his respect for the Court and his willingness to conform to the Court's orders.

Mr. Dennis is a United States citizen who has surrendered his passport to the Government and Pretrial Services. Although he was living in the Dominican Republic at the time of his arrest, this fact alone cannot justify the imposition of the onerous home detention and location monitoring condition in this case. Mr. Dennis lived, worked, and raised a family in New York for more than 50 years. He has a deep network of friends and colleagues in the New York legal and political community who remain supportive of him. At the time of his arrest, Mr. Dennis—who was in the midst of a contentious divorce, had lost his employment in New York, and was attempting to avoid the widespread outbreak of COVID-19 in the United States—was under no obligation to live in the United States and (to his knowledge) was facing no criminal charges in the United States. Once the charges again him were unsealed, Mr. Dennis did not challenge his removal to the United States.

In addition, three of Mr. Dennis's close family members have now co-signed his significant bond of $200,000. The willingness of Mr. Dennis's family members to sign on his behalf and vouch for his compliance with the conditions of his release is strong support for granting Mr. Dennis's present application. Mr. Dennis is not going to flee and risk the consequences of what might happen to his family—those who have stood by and supported him through the toughest moments of his life—if he were to fail to appear at a future court appearance. Nor would Mr. Dennis subject his elderly parents, who are in declining health and with whom he now resides in Florida, to abandonment or the fear, stress, and complications that would result if Mr. Dennis were to flee from their home.

Moreover, Mr. Dennis—who has been out of work for several years—has no liquid assets that would allow him to flee, even if he wanted to (which he does not).

In sum, the significant conditions of release to which Mr. Dennis is already subject are more than sufficient to reasonably assure that Mr. Dennis appears at all future court appearances, without the need for home detention and 24/7 location monitoring.

This conclusion is buttressed by all of the 3142(g) factors:

United States v. Dennis
20 Cr. 623 (LGS)

- The charged offenses involve alleged communications Mr. Dennis sent to his former colleagues during the deterioration of Mr. Dennis's relationship with his former law firm. While not minimizing the seriousness of this alleged conduct, it bears emphasizing that the Government does not allege that Mr. Dennis attempted or conspired to physically harm any alleged victim, or planned or took any steps in furtherance of a plan to harm any alleged victims. Mr. Dennis is not charged with committing or attempting to commit any acts of violence. And he has not contacted any alleged victim since the no-contact order was issued in this case. *See* 18 U.S.C. § 3142(g)(1).

- While the Government has proffered that the record reflects a number of communications that constitute the charged offenses of cyberstalking, the "weight of the evidence" against the defendant is generally considered the least important factor for the Court's bail consideration. *See United States v. Jones*, 566 F.Supp.2d 288, 292 (S.D.N.Y.2008). Moreover, at this early stage in the discovery process, Mr. Dennis has not yet been provided *Brady* or *Giglio* material or the communications of the alleged victims, which the defense anticipates will reflect that the alleged victims did not experience substantial emotional distress. *See* 18 U.S.C. § 3142(g)(2).

- Mr. Dennis's personal history and characteristics weigh heavily against the need for location monitoring in this case. Mr. Dennis has no criminal convictions. As described above, for decades Mr. Dennis has had a sterling reputation as an attorney and advisor. He has been recognized as leading attorney in the field (and one of the too few Black corporate attorneys to represent Fortune 500 companies) and has been an active board member and supporter of numerous development, diversity, and inclusion organizations and initiatives. *See id.* § 3142(g)(3)(A).

- With respect to his physical condition, as reflected above and in the attached documentation, Mr. Dennis has been experiencing significant pain and discomfort, which his medical providers ascribe to the unequal distribution of weight he is carrying on his legs and the exacerbating effects it is having on a previous injury. This unequal weight distribution might have also contributed to a hernia. Due to these ailments, he is not physically able to flee.

- Mr. Dennis's family ties are extremely strong—he is living with his elderly parents in Florida and helping to care for them during the COVID-19 pandemic when they have been forced to avoid crowded locations and other people as much as possible. Moreover, his bond has been co-signed by three close family members who would be devastated financially if he were to flee. *Id.*

- Mr. Dennis is in no financial position to flee, he has no history of drug or alcohol abuse, he has no criminal history, and he has never missed a scheduled court proceeding (civil or criminal). *Id.*

- At the time of his arrest, Mr. Dennis was not on probation, parole, or release in any other matter. *Id.* § 3142(g)(3)(B).

- As discussed in more detail below, Mr. Dennis also presents no danger to any other person or the community that would be increased by the removal of his home detention and location monitoring conditions. *Id.* § 3142(g)(4)

United States v. Dennis
20 Cr. 623 (LGS)

Given these facts, the Government cannot establish by the preponderance of the evidence that Mr. Dennis presents a flight risk such that home detention and the location monitoring condition of his pretrial release are necessary. *See* 18 U.S.C. § 3142(f)(2)(A).

C.    *Danger to the Community*

For similar reasons, the Government cannot establish by clear and convincing evidence that there is a basis for continuing the home detention and location monitoring conditions of Mr. Dennis's pretrial release based upon a risk that Mr. Dennis presents a danger to the community.

Although the Government only mentioned it briefly at Mr. Dennis's bail argument, and Magistrate Judge Wang did not base her decision to impose location monitoring on the purported danger to the community, it is worth emphasizing that the "danger" Mr. Dennis is alleged to have presented in the first instance is not of violence. Mr. Dennis has no criminal history and no history of violence. In this case, Mr. Dennis is not charged with conspiring or attempting to harm any alleged victim; he is not charged with planning or taking any steps in furtherance of a plan to harm any alleged victims. And Mr. Dennis is not charged with committing or attempting to commit any acts of violence against anyone. He is accused of sending harassing communications, but this alleged conduct has already been squarely addressed by the no-contact order and electronic communication monitoring conditions to which Mr. Dennis consents.

This distinction is crucial for purposes of Mr. Dennis's bail conditions. For example, in *United States v. Demmler*, 523 F. Supp.2d 677 (S.D. Ohio 2007), the court held that specific threats against court personnel were not enough to bar the defendant's release on bail. In *Demmler*, the defendant was indicted for obstruction of justice and witness tampering, and was heard on tape making specific threats to harm officers of the court. Nonetheless, the court held that the defendant did not pose a danger necessitating detention because, *inter alia*, the defendant did not have a violent criminal history. *Id.* at 681. More important, the court cited the lack of any evidence that the defendant had taken any steps towards acting on those threats or that they reflected anything more than mere words. *Id.* As the court recognized, even in cases where a defendant has been accused of "engaging in threatening behavior," the threshold for detention "is not easily satisfied." *Id.* at 683 (citing *United States v. Brannon*, 208 F.3d 227 (10th Cir. 2000) (unpublished) (affirming pretrial release of defendant accused of using mail to threaten federal judge and intimidate a judicial officer because "the government could point to no incidents of actual violent behavior except for a few minor domestic incidents five years earlier")).[2]

Again, perhaps most importantly, Mr. Dennis has already proven that he presents no "danger" to the community during the period of his pretrial release—including during a period of time when he was not subject to location monitoring, was present in the same city as the alleged victims and their office, and before the co-signers had signed his bond. *Cf. Brannon*, 208 F.3d

---

2    Even in cases where defendants have been charged with making threats to alleged victims, defendants in this District have been released without location monitoring conditions. *E.g.*, *United States v. Rodriguez*, 21 MAG 11534 (S.D.N.Y.) (defendant charged with cyberstalking and threatening interstate communications).

United States v. Dennis
20 Cr. 623 (LGS)

227 (affirming district court's release order that "considered Mr. Brannon's appropriate conduct during a short release to attend his mother's funeral").

Since his arrest, Mr. Dennis has been fully compliant with the other terms of his pretrial release, including that he not contact specifically identified alleged victims or any current or former employee of his law firm. Moreover, since his relocation to Florida, Mr. Dennis has been further removed (by thousands of miles) from the alleged victims in this case. While the Government has proffered to the defense that one of the alleged victims has moved to somewhere in the state of Florida, Mr. Dennis has no knowledge of which person this is or his/her current location within the 65,757.7 square miles of Florida.

In any event, the conditions of his current pretrial release, as well as the prospect that Mr. Dennis may face incarceration or the imposition of extreme financial losses on himself and his co-signers were he found to be in violation of a bail condition, provide sufficient assurances that Mr. Dennis would not engage in any behavior that could be characterized as presenting a danger to the community. Even if the Government could establish a risk of danger to the community, it would still bear the burden of proving that Mr. Dennis constitutes such a danger that the conditions of Mr. Dennis's pretrial release in their current form constitute the least restrictive means of preventing such harm. In fact, as modified, the existing conditions would more than adequately address any risk of danger concerns by continuing to specifically prohibit Mr. Dennis from contacting in any way any of the alleged victims, any current or former employee of his former firm, and other specified persons, and prevent him from opening any new email or phone accounts. He has proven he will comply with these conditions during the seven weeks of his pretrial release to date.

For these reasons, the Court should reject any attempt by the Government to rely upon a risk of danger theory to oppose the proposed modification of Mr. Dennis's pretrial release conditions.

E.  *The Continued Requirement of Location Monitoring Equipment Will Cause Additional Physical Injury to Mr. Dennis*

One of the specific factors the Court is to consider in making its bail modification determinations is the "physical condition" of the defendant. *See* 18 U.S.C. 3142(g)(3)(A). As described above and in the attached medical records, Mr. Dennis has been experiencing significant pain and discomfort as a result of his location monitoring equipment, including lower back and leg pain, inner thigh pain (which might require hernia surgery), and exacerbation of a previously dislocated toe. As a result, he has needed to seek medical attention multiple times over the past few weeks and his medical providers have recommended the removal of his location monitoring equipment to avoid further deterioration of his physical state.

These concerns are not conjecture. Mr. Dennis's medical providers have stated that the location monitoring equipment is exacerbating Mr. Dennis's physical ailments. The symptoms about which Mr. Dennis complains are also similar to those that have been reported by others involved in the criminal justice and immigration systems who have been mandated to wear ankle monitors from BI Incorporated, the company that manufactured the device Mr. Dennis has been

United States v. Dennis
20 Cr. 623 (LGS)

assigned. *See, e.g.*, Immigration Defense Project, Cardozo School of Law, "Immigration Cyber Prisons: Ending the Use of Electronic Ankle Shackles," at 3, 12–16 (July 2021), https://static1.squarespace.com/static/5a33042eb078691c386e7bce/t/60ec661ec578326ec3032d52/1626105377079/Immigration+Cyber+Prisons+report.pdf (noting that 90% of survey participants in immigration proceedings who were ordered to wear ankle monitors experienced harm to their physical health, reflecting "a wide range of symptoms including aches, pains, and cramps; numbness due to impaired circulation; discomfort related to excessive heat; and sustained swelling/inflammation"). The Cardozo Law Immigration Defense Project also reported that "[o]ne in five surveyed individuals experienced electric shocks from the ankle shackle, a type of injury that has been documented in previous studies on ankle shackles," and at least one respondent who reported that the device "felt like it 'crushes the bones in the front of his foot.'" *Id.* at 13; *see also* A.F. Cahn, "Ankle Monitors Can Hold Captives in Invisible Jails of Debt, Pain and Bugged Conversations," NBCNews Opinion (Nov. 6, 2019), https://www.nbcnews.com/think/opinion/ankle-monitors-can-hold-captives-invisible-jails-debt-pain-bugged-ncna1076806 (reporting that ankle monitoring devices "have caused an array of medical complications, including everything from cuts and bruises and impaired circulation to electric shocks, hair loss, headaches and difficulty breathing").

While Mr. Dennis has sought medical attention at emergency rooms and low-cost clinics because he does not have medical insurance (and has incurred non-reimbursable medical expenses in the process), he is willing to undergo a medical examination from a doctor appointed by the Court to confirm his providers' diagnoses.

Nor are Mr. Dennis's ailments being exaggerated in an effort to justify removal of the home detention condition. Before making the current application, Mr. Dennis sought to have the home detention condition enforced by other technological means. Specifically, the website for the Administrative Office of the United States Courts states that location monitoring can be enforced using "voice recognition" technology, in which "[c]omputerized random or scheduled telephone calls are placed and received from a person under supervision's approved location, typically the residence, to verify the person's presence." U.S. Courts, "How Location Monitoring Works," *available at* https://www.uscourts.gov/services-forms/probation-and-pretrial-services/supervision/how-location-monitoring-works#voice (last visited Jan. 8, 2022); *see also* Ex. I at 6. Pretrial Services has stated, however, that it no longer uses this technology.

To the extent the Court believes some sort of location monitoring is necessary here, it should modify Mr. Dennis's pretrial release conditions to require a curfew, to be enforced by voice recognition technology that is used by at least some other jurisdictions. Such conditions, in addition to those to which Mr. Dennis is already subject, would more than address any and all concerns raised by the Government and Pretrial Services. These conditions would also allow Mr. Dennis to more adequately care for his elderly parents (e.g., by being able to run errands for them without requiring advance permission for every trip to the store from an overburdened Pretrial Services staff), address his medical issues, and effectively defend himself against the criminal charges he is facing (e.g., by permitting him to print, scan, and copy documents to send to counsel at a local FedEx or UPS store, since his parents' home lacks a printer or scanner).[3]

---

[3] At a minimum, the Court should order that Mr. Dennis's location monitoring equipment may

10

United States v. Dennis
20 Cr. 623 (LGS)

      However, if such technology is unavailable, we respectfully submit that the record above supports the Court eliminating the location monitoring condition of Mr. Dennis's pretrial release.

*     *     *

      For the foregoing reasons, we respectfully request that that Court modify the home detention and location monitoring conditions of Mr. Dennis's pretrial release. In the alternative, the Court should convene a hearing at its earliest convenience to consider this request.

      We thank the Court for its consideration of this request.

                                  Respectfully submitted,

                                  /s/ Neil Kelly

                                  Neil P. Kelly
                                  Assistant Federal Defender
                                  (212) 417-8744

cc:    AUSA Sarah Kushner
        Pretrial Services Officer Joshua Rothman

Application DENIED. Defendant seeks a modification of his conditions of pretrial release based on two sets of purported new facts: (1) Defendant has complied with his release conditions and (2) Defendant has experienced "significant physical pain and injury" as a result of his location monitoring equipment. Since Defendant initially submitted his letter, he has provided an additional record that states his current medical provider, a physician, explained to him "that the bracelet on his right ankle is unlikely to be the cause of the right inguinal hernia." His prior provider, a physician assistant-certified, reached a conflicting conclusion. The Court accords the physician's evaluation more weight because it is more recent and it is from a physician rather than a physician assistant. Based on the physician's evaluation, this Court has no basis to find that Defendant is experiencing physical pain and injury as a result of his location monitoring equipment at this time. That leaves Defendant's other "new" evidence, that the conditions of his bail have been effective. This evidence is new in that it could not have been presented when those conditions were imposed but the evidence is not unexpected -- when the conditions were set, they were set with the expectation that Defendant would comply. Nothing in Defendant's letters changes the analysis of the factors enumerated in 18 U.S.C. § 3142(g), which guide review of an application to modify a defendant's bail conditions. So there is no basis for a modification or hearing.

Dated: January 26, 2022
New York, New York

                                LORNA G. SCHOFIELD
                                UNITED STATES DISTRICT JUDGE

---

      be removed by Pretrial Services when necessary for a pre-approved medical procedure or appointment. For example, Mr. Dennis has been informed that to undergo an MRI or imaging for his hernia, he will likely need to remove his location monitoring equipment. Accordingly, the Court should order that Pretrial Services may remove his equipment before this procedure and reaffix it following the medical appointment.

11