**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

April 25, 2022

<u>Via ECF</u>

The Honorable Lorna G. Schofield
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   **United States v. Willie Dennis**
      **20 Cr. 623 (LGS)**

Dear Judge Schofield,

By **May 4, 2022**, the Government shall file a response to this application noting Pretrial Services' position.

Dated: April 26, 2022
New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

We write on behalf of Willie Dennis to respectfully renew our request that the Court modify the conditions of Mr. Dennis's pretrial release to lift the home detention and location monitoring conditions. As confirmed by his supervising Pretrial Services Officer, over the more than five months since his arrest, Mr. Dennis has been fully compliant with the terms of his pretrial supervision. Mr. Dennis's demonstrated record of compliance—including periods of time when he was not subject to location monitoring equipment and times when he has traveled unsupervised through international airports—has proven that he presents no risk of flight. Nor does Mr. Dennis seek to modify the no-contact and electronic communication monitoring conditions that were part of his release order, with which he has been fully compliant and which directly address the purported risk of danger in this case based on the government's allegations.

For the reasons described in our previous submissions and below, the home detention and location monitoring conditions far exceed the least restrictive conditions needed to reasonably assure Mr. Dennis's future appearance and mitigate any alleged danger to the community. We respectfully submit that these conditions should be modified.

While Pretrial Services in the Middle District of Florida has confirmed that Mr. Dennis has been fully compliant with the terms of his pretrial release since his relocation to Florida in December 2021, because Mr. Dennis's underlying case is in the Southern District of New York, Pretrial Services in Florida takes no position on the present application. Mr. Dennis's Pretrial Services Officer in the Southern District of New York has been out of the office for the past week, so has not yet taken a position in response to counsel's inquiries. The government opposes this application.

United States v. Dennis
20 Cr. 623 (LGS)

**I.      Background**

The Court is familiar with Mr. Dennis's admirable personal history and exceptional characteristics from our prior submissions, which we incorporate herein by reference. *See* Dkt. 18 at 1–2. To briefly summarize his biography, Mr. Dennis is a widely-accomplished 60-year old corporate attorney who reached the heights of the legal profession as an equity partner at a top 50 law firm in New York. Over the course of his distinguished career, Mr. Dennis represented dozens of Fortune 500 companies in high-profile transactions, was awarded numerous industry awards, and received recognition in national publications. Mr. Dennis secured such achievements as a Black man in a profession that has a long reflected a lack of diversity and perpetuated a history of discrimination. Mr. Dennis has been a community leader on diversity and empowerment initiatives both inside and outside the legal profession. As relevant to this application, he also has no criminal history, no current liquid assets, no passport or travel documents (which are in the possession of Pretrial Services), and is currently residing with his elderly and infirm parents whom he cares for daily.

Despite Mr. Dennis's impressive background and the fact that he has not been charged with any offense that carries a presumption in favor of detention, after his arrest, Mr. Dennis was ordered to be subject to home detention and location monitoring on that grounds that he presented a risk of flight because he had been living in the Dominican Republic at the time of his arrest. *See* Dkt. 18-1 at 59:17–61:7. Mr. Dennis was also ordered to comply with several other conditions of pretrial release, none of which he objected to or has sought relief from, including: a $200,000 personal recognizance bond, co-signed by three financially responsible persons; travel restricted to the Southern and Eastern Districts of New York (later modified to include the Middle District of Florida and District of New Jersey); surrender of all travel documents; no possession of any firearms; mental health services as directed by Pretrial Services; direction to seek employment; urinalysis and substance abuse treatment as directed by Pretrial Services; direction to not open any new email accounts or phone accounts without permission from Pretrial Services; providing Pretrial Services with the phone numbers and email accounts/passwords that he would use; and no contact with four alleged victims, any current or former employees of his former law firm, or several additional persons identified by the government. *See* Dkt. No. 5.

For more than five months, since his release on November 21, 2021—including an interregnum during which he was not yet fitted with any location monitoring equipment, had no co-signers on his bond, and had not executed his own bond—Mr. Dennis has been fully compliant with the terms of his pretrial release. Since early December 2021, with the Court's permission, Mr. Dennis has resided, and been supervised by Pretrial Services, in the Middle District of Florida. Mr. Dennis's supervising Pretrial Officer in Florida recently confirmed that "Mr. Dennis has had no compliance issues while on bond, and has complied with all location monitoring program, mental health treatment, and substance abuse testing requirements since he's been supervised here in the Middle District of Florida." Ex. A. In recognition of this history of compliance, since early March, Mr. Dennis has been given permission by Pretrial Services in Florida to travel three days a week to a local fitness center to exercise. This is in addition to Mr. Dennis's permitted leave for shopping and personal care, religious services, therapy, and medical appointments—all of which he has dutifully coordinated with his Pretrial Services officer.

United States v. Dennis
20 Cr. 623 (LGS)

Mr. Dennis has also fully complied with the "no-contact" order, even after receiving the discovery that has been produced in this case that discloses the complaining and other witnesses. Mr. Dennis's full compliance remains confirmable by Pretrial Services, which has access to his electronic communications and which has not raised any issue with respect to any purported violation of his release conditions.

Since the defense's original submission, the health of Mr. Dennis's elderly parents (with whom he is residing) has declined and Mr. Dennis's caregiving obligations have increased. Mr. Dennis's father is 87 years old, suffers from dementia, and requires constant monitoring. Mr. Dennis's mother, aged 81, suffers from a number of cardiac conditions that have required hospital visits during Mr. Dennis's time in Florida. Due to Mr. Dennis's home detention condition and the need for pre-approval for any travel outside the home, however, his ability to care for his parents—including to visit his mother or pick up her medications when she was unexpectedly hospitalized—has been significantly curtailed.

## II. Argument

### A. *Applicable Law*

In denying Mr. Dennis's January application, the Court held that Mr. Dennis's compliance with the conditions of his pretrial release did not constitute "new" facts or evidence that warranted reconsideration of Mr. Dennis's conditions because "when the conditions were set, they were set with the expectation that Defendant would comply." Dkt. 27 (citing 18 U.S.C. § 3142(g)). But the Bail Reform Act, as promulgated in relevant part at section 3142(g), identifies the factors the Court is to consider "in determining *whether* there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g) (emphasis added). "Once one concedes, as the government [and Pretrial Services have] here, that pretrial detention is not necessary, the operative inquiry becomes what are the *least restrictive* conditions that will *reasonably assure* the defendant's appearance" and the safety of the community. *United States v. Hutchins*, 298 F. Supp. 3d 1205, 1207–08 (E.D. Wisc. 2017) (citing 18 U.S.C. § 3142(c)(1)(B)).

We respectfully submit that Mr. Dennis's demonstrated history of compliance with the terms of his pretrial release justifies modification of his conditions. Under the plain language of section 3142, the Court "may *at any time* amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3) (emphasis added). The Court "is not required to find changed circumstances in order to revisit [the] Magistrate Judge['s] release order." *United States v. Brock*, No. 21 Cr. 140 (JDB), 2021 WL 3616892, at *3 (D.D.C. Aug. 16, 2021).

As another District Court has held, rejecting an argument from the government "that compliance with release conditions is not enough, standing alone, to warrant modification of these conditions," such a "view is contrary to the normal practice in this and other district courts around the country." *Hutchins*, 298 F. Supp. 3d at 1208. As the court explained:

> When defendants establish that they will abide by their obligation to appear in
> court, logic dictates that the justification for imposing the existing release

3

United States v. Dennis
20 Cr. 623 (LGS)

> conditions lessens. Put differently, if the Bail Reform Act requires no more than the least restrictive conditions needed to reasonably assure the defendant's appearance, then consistent compliance with existing conditions counsels in favor of reducing their severity on the theory that lesser conditions will suffice. *Id.*

This holding echoed the observation made by the Magistrate's Court regarding "the policies underlying the Bail Reform Act and routine practice in courts around the country." *United States v. Hutchins*, No. 17 Cr. 124 (JPS) (E.D. Wisc. Oct. 19, 2017), Doc. No. 35 at 5. Specifically:

> Reducing the level of supervision (e.g., from home confinement, then to home detention, then to curfew, etc.) after a demonstrated record of compliance (or increasing supervision in the event of non-compliance) is a routine measure necessary to ensure the court's obligation to impose the least restrictive conditions necessary to reasonably assure [a defendant's] appearance and the safety of the community. *Id.* (citing 18 U.S.C. § 3142(c)(1)(B)).

As described at length in Mr. Dennis's prior submissions, and as proven by Mr. Dennis's demonstrated record of compliance with all the terms of his pretrial release over the more than five months since this case was initiated, the home detention and location monitoring conditions in the Magistrate Court's release order far exceed the "least restrictive" set of conditions necessary to assure Mr. Dennis's appearance in court or to prevent any danger to the community. We highlight below a few of the most salient reasons why.

    B.    *Risk of Flight*

As previously described (Dkt. 18 at 5–6), Mr. Dennis is a United States citizen who has surrendered his passport to Pretrial Services. *See Hutchins*, 298 F. Supp. 3d at 1209 ("[T]he notion that Hutchins can escape the country without a passport is both true and irrelevant. Not having a passport will at a minimum make this more difficult, and the Bail Reform Act does not mandate a set of conditions that will guarantee that the defendant cannot flee.").

Although he was living in the Dominican Republic at the time of his arrest, Mr. Dennis lived in New York for more than 50 years, and maintains a deep network of supportive friends and colleagues here. At the time of his arrest, Mr. Dennis was under no obligation to live in the United States and (to his knowledge) was facing no criminal charges from which he was absent. Mr. Dennis did not challenge his removal to the United States and has been residing with his elderly and infirm parents, and acting as their caretaker, for more five months.

Mr. Dennis's significant bond has also been co-signed by three of his close family members, who would be financially devastated if he were to fail to appear. Nor would Mr. Dennis inflict upon his elderly parents the worry, stress, and abandonment that would result if he were to flee. Mr. Dennis also has no liquid assets that would allow him to flee, even if he wanted to (which he does not).

United States v. Dennis
20 Cr. 623 (LGS)

      As noted in our prior submissions, during the period of time after Mr. Dennis had been released from custody, but before his co-signers had been sworn to the bond and before Mr. Dennis was fitted with location monitoring equipment, Mr. Dennis did nothing that evidenced any intent to flee. If Mr. Dennis had any inclination to flee, he would have acted on it at this time—before any third parties would have been subject to the negative consequences of his flight, while Pretrial Services was unaware of his location, and while he was not carrying any mobile electronic device that could be tracked or traced. Of course, Mr. Dennis did not attempt to flee because he has complete and full respect for the Court's orders, and he has complied and will continue to fully comply with them.

      Since his arrest, Mr. Dennis has also flown between New York and Florida, transiting between international airports, with no law enforcement or Pretrial Services accompaniment. *See Hutchins*, 298 F. Supp. 3d at 1209 ("Moreover, Hutchins has traveled within the United States several times since his arrest and has not made any attempt to flee."). Again, if Mr. Dennis were going remove his location monitoring equipment and attempt to flee, there would have been no better opportunity to do so than when he was already in an international airport, alone, with preapproval to board a flight. Again, Mr. Dennis did not taken any such actions because he has no intention to flee. Rather, he has coordinated his travel and checked in as required with Pretrial Services. Mr. Dennis intends to vigorously defend himself against the government's accusations and seek a trial at the Court's earliest availability at which to do so. These significant facts should not be overlooked. *See United States v. Hutchins*, No. 17 Cr. 124 (JPS) (E.D. Wisc. Aug. 25, 2017), Doc. No. 23 at 3 (considering as a "significant fact" in favor of reduction of defendant's pretrial release conditions that, after defendant's "arrest in Las Vegas[,] he flew from Las Vegas to Milwaukee (unaccompanied by law enforcement or a representative from pretrial services), where he spent the weekend without the supervision of law enforcement or pretrial services. He subsequently appeared in court here as required. He then flew to Los Angeles (apparently changing planes in Minneapolis), again unaccompanied by law enforcement or anyone from pretrial services. Upon his arrival in Los Angeles, he reported to pretrial services as required.").

      As Mr. Dennis's Pretrial Officer in Florida has confirmed, Mr. Dennis has complied with all of the other conditions of his pretrial release as well. Ex. A.

      In sum, the significant conditions of release to which Mr. Dennis is already subject are more than sufficient to reasonably assure that Mr. Dennis appears at all future court appearances. His demonstrated record of compliance—including during situations that would have presented prime opportunities to attempt to flee—conclusively establishes that he is not a risk of flight. Accordingly, the location monitoring and home detention conditions far exceed the least restrictive conditions necessary to reasonable assure his future appearances. *Cf. Brock*, 2021 WL 3616892, at *4 (reducing pretrial release conditions for defendant accused of entered Capitol in military gear and carrying flex-cuffs onto the Senate floor, and "notwithstanding his belief in the righteousness of his actions," because "he has consistently demonstrated 'his willingness to comply with his obligations to appear in this Court as required'" (quoting *Hutchins*, 298 F. Supp. 3d at 1209–10)). *See also* Dkts. 18, 20.

United States v. Dennis
20 Cr. 623 (LGS)

      C.     *Danger to the Community*

It bears repeating that Magistrate Judge Wang did not base her decision to impose location monitoring and home detention on any purported danger from Mr. Dennis—who has no criminal history and no history of violence. Mr. Dennis is not charged with conspiring or attempting to harm anyone, planning or taking any steps to harm anyone, or committing or attempting to commit any acts of violence against anyone. He is accused of sending harassing communications, but any risk of such future conduct has already been mitigated.

Specifically, Mr. Dennis does not challenge and has fully complied with the "no-contact" order and electronic communication monitoring conditions issued by Magistrate's Court. He has not opened any new email accounts or phone accounts without permission from Pretrial Services; has provided Pretrial Services with the phone numbers and email accounts/passwords that he uses; and he has not contacted any of the alleged victims or any of the hundreds of other persons the government stated he should refrain from contacting. Any risk of "danger" to the community that Mr. Dennis purportedly presents—which are based solely on the unproven allegations against him because he has no criminal history—has already been more than sufficiently addressed by these conditions.

As described in more detail in the defense's prior submissions (Dkt. 18 at 8–9), even if there were a risk of danger to the community here, the conditions of Mr. Dennis's pretrial release in their current form still exceed the least restrictive means of preventing such harm. Even if the location monitoring and home detention conditions are relaxed, the existing conditions would continue to specifically prohibit Mr. Dennis from contacting any of the alleged victims, any current or former employee of his former firm, and other specified persons, and prevent him from opening any new email or phone accounts. He has proven he will comply with these conditions during the more than five months of his pretrial release to date. *Cf. Brock*, 2021 WL 3616892, at *3 (removing location monitoring condition despite allegations that defendant was a danger to the community because "the Court is convinced that a combination of less restrictive conditions is sufficient to mitigate those concerns").

      D.     *The 3142(g) Factors Support Modification*

Finally, and again without fully restating the arguments that were made in Mr. Dennis's original bail modification application submissions (Dkt. 18 at 7), even if the section 3142(g) factors controlled, these factors favor modification in this case.

- Mr. Dennis is not charged with committing or attempting to commit any acts of violence. And he has not contacted any alleged victim since the no-contact order was issued. *See* 18 U.S.C. § 3142(g)(1).
- Even if the Court accepts the government's claim at this stage that the record reflects evidence of cyberstalking, the "weight of the evidence" is generally considered the least important factor for the Court's bail consideration. *See United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y .2008); 18 U.S.C. § 3142(g)(2).

6

<u>United States v. Dennis</u>
20 Cr. 623 (LGS)

- Mr. Dennis's personal history and characteristics weigh heavily against the need for location monitoring in this case, as described in detail above and in our in prior submissions. *See* <u>18 U.S.C. § 3142(g)(3)(A)</u>.

- Mr. Dennis has a number of ongoing health ailments for which he is receiving treatment. As such, he is not physically able to flee, even if he were so inclined (which he is not).

- Mr. Dennis's family ties are deep and strong. He is living with his elderly and infirm parents in Florida and helping to care for them. During the five months he has been living with them, their health has continued to decline and his caregiving has increased significantly. He would not flee or risk violation of his bond conditions and threaten the health and safety of his parents at this time. In addition, his bond has been co-signed by three close family members who would be devastated financially if he were to flee. *See id.*

- Mr. Dennis is in no financial position to flee, he has no history of drug or alcohol abuse, he has no criminal history, and he has never missed a scheduled court proceeding. *See id.*

- At the time of his arrest, Mr. Dennis was not on probation, parole, or release in any other matter. *See id.* § 3142(g)(3)(B).

- As discussed, Mr. Dennis presents no danger to any other person or the community that would be increased by the removal of his home detention and location monitoring conditions. *See id.* § 3142(g)(4).

\*     \*     \*

      For the foregoing reasons, we respectfully request that that Court lift the home detention and location monitoring conditions of Mr. Dennis's pretrial release. To the extent the Court has any concerns not addressed by Mr. Dennis's submissions, Mr. Dennis notes again that he would be amenable to additional, reasonable conditions on his release (e.g., an increase of his personal recognizance bond amount) to assuage any such concerns.

      We thank the Court for its consideration of this request.

      Respectfully submitted,

      /s/ Neil Kelly

      Neil P. Kelly
      Assistant Federal Defender
      (212) 417-8744

cc:    AUSA Sarah Kushner
       Pretrial Services Officer Joshua Rothman

# EXHIBIT A

| | |
|---|---|
| **From:** | Charles Sweatt |
| **Sent:** | Thursday, April 21, 2022 4:32 PM |
| **To:** | Neil Kelly |
| **Subject:** | RE: Willie Dennis |

Good afternoon Neil,

Ultimately due to Mr. Dennis' case being from the Southern District of New York, our office would defer to Pretrial Services in Southern New York regarding our position. I can say though, Mr. Dennis has had no compliance issues while on bond, and has complied with all location monitoring program, mental health treatment, and substance abuse testing requirements since he's been supervised here in the Middle District of Florida. If you need to discuss by phone at all, please feel free to give me a call tomorrow. With the exception of one visit I need to make first thing in the morning and a brief appointment at noon, I should be free and in the office the rest of the day.

Thank you,



## Charles Sweatt

Intensive Supervision Specialist
United States Pretrial Services
Middle District of Florida
Office:
Cell:

---

**From:** Neil Kelly <Neil_Kelly@fd.org>
**Sent:** Thursday, April 21, 2022 3:45 PM
**To:** Charles Sweatt
**Subject:** Willie Dennis

Mr. Sweatt,

I hope you have been doing well. I wanted to check in regarding Willie Dennis, who I am representing in the Southern District of New York. We intend to request that, in light of Mr. Dennis's continued compliance with his pretrial supervision and his increased caregiving responsibilities for his elderly parents, his home detention condition be lifted or modified to a curfew. I have reached out to Pretrial Services in New York as well, but can you please let me know if you would consent to this request or if you oppose?

I am available to discuss by phone as well, if you have any questions or would like to discuss.

1

Thank you so much,
Neil Kelly


Neil P. Kelly | Assistant Federal Defender
**Federal Defenders of New York, Inc.**
52 Duane Street, 10th Floor
New York, NY 10007
Office: (212) 417-8744
Cell: (646) 335-3785
neil_kelly@fd.org