# EXHIBIT A

M6SHDenC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20 Cr. 623 (LGS)

5   WILLIE DENNIS,

6

7              Defendant.

8                                        Remote Conference
    ------------------------------x
9
                                         New York, N.Y.
10                                       June 28, 2022
                                         4:05 p.m.
11

12  Before:

13
                    HON. LORNA G. SCHOFIELD,
14
                                         District Judge
15
                         APPEARANCES
16
    DAMIAN WILLIAMS
17       United States Attorney for the
         Southern District of New York
18  BY:  MARGUERITE COLSON
         Assistant United States Attorney
19
    DAVID E. PATTON
20       Federal Defenders of New York, Inc.
         Attorney for the Defendant
21  NEIL KELLY
    JENNIFER BROWN
22

23

24

25

M6SHDenC

1          (The Court and all parties present remotely; case

2     called)

3          MS. COLSON:  Good afternoon, your Honor.  For the

4     United States, Assistant U.S. Attorney Marguerite Colson.  And

5     with your Honor's permission, joining me in my office is one of

6     our interns, Nathaniel Chalk.

7          THE COURT:  That's fine.  Good afternoon.  Good

8     afternoon, Mr. Chalk.

9          MR. CECUTTI:  Good afternoon, your Honor.  Neil Kelly,

10    Federal Defenders of New York.  With me is Jennifer Brown on

11    the Zoom, and Mr. Dennis is also joining by Zoom as well.

12          THE COURT:  OK.  Good afternoon, Mr. Kelly.

13          And good afternoon, Mr. Dennis.

14          And I'm sorry, who is with you Mr. Kelly?

15          MR. KELLY:  Ms. Brown is also on the Zoom.

16          THE COURT:  Good afternoon, Ms. Brown.

17          MR. CECUTTI:  Good afternoon, your Honor.  This is

18    Anthony Cecutti.  I'm CJA counsel, and I'm on duty today.

19          THE COURT:  OK.  Thank you.

20          All right.  So we are here in the case of United

21    States v. Willie Dennis in response to Mr. Dennis's request to

22    proceed *pro se* and waive his right to counsel.

23          First, as you can all tell, we're proceeding here by

24    videoconference, and I want to make sure, Mr. Dennis, that you

25    can see me and you can hear me.

M6SHDenC

1          THE DEFENDANT:  Yes, your Honor, I can see you, and I

2    can hear you well.  Thank you.

3          THE COURT:  All right.  So if at any point you can't

4    see or hear me, would you please just let me know, and we'll

5    remedy that as quickly as we can.

6          THE DEFENDANT:  OK.  Your Honor, one question I have.

7          THE COURT:  Yes.

8          THE DEFENDANT:  There's a gentleman who introduced

9    himself earlier; said he was with CJA, I believe it was.

10          THE COURT:  Yes.

11          THE DEFENDANT:  Can -- he's never been part of the

12    process before, so --

13          THE COURT:  Sure.  I'm happy to explain that.  I'll

14    explain it a little more down the line, but let me just clarify

15    that.

16          I've asked Mr. Cecutti to be present because he's on

17    the CJA panel, which is a panel of criminal defense lawyers who

18    are vetted by the court and who are available to be appointed

19    not only as counsel, but also as what's called standby counsel.

20    And sometimes *pro se* litigants elect to have standby counsel.

21    I can explain more what the role of standby counsel is if

22    you're interested in that, but we'll get to that in a minute.

23    That's why Mr. Cecutti is here.

24          THE DEFENDANT:  Thank you, your Honor.

25          THE COURT:  Sure.  So as you all know, but I'll say

1    this really for Mr. Dennis's benefit, what we're doing right

2    now is just establishing that it's OK to proceed by video.

3    Normally, we are required to proceed in person, and you have

4    the right, Mr. Dennis, to have this proceeding be in person.

5    And in order for us not to proceed in person, there are certain

6    things that I need to establish on the record, so that's what

7    I'm doing right now.

8            So as I said, you have the right to be physically

9    present for this and for any other proceeding, but I understand

10   from Mr. Kelly that you had requested that we proceed remotely,

11   in part because you're in Florida and partly because of a

12   family member has health issues, is that right?

13           THE DEFENDANT:  That's correct, your Honor.  Thank

14   you.

15           THE COURT:  All right.  So based on that, I find that

16   the proceeding cannot be further delayed without serious harm

17   to the interest of justice for the reasons that I just said,

18   and also because the trial was scheduled to begin in three

19   months with the first pretrial submissions due in early August.

20   And obviously, we need to resolve the representation issues, or

21   not, of Mr. Dennis.  So the sooner the better, and that's why

22   we're here.

23           So let's move on to our next step.  We're here in

24   response to Mr. Kelly's June 3 letter stating that Mr. Dennis

25   no longer seeks representation, specifically by the Federal

M6SHDenC

1   Defenders, and that he wishes to proceed *pro se* and waive his

2   right to counsel.

3        Is that right, Mr. Dennis?

4        THE DEFENDANT:  Yes, your Honor, that's right.  I

5   don't think it goes into all the details of why I'm -- I think

6   one of the biggest issues of why I'm looking to represent

7   myself is because the discovery process has not gone at the

8   pace in which I think it would ordinarily in cases like this,

9   and I think that, as a result of that, I've been -- I've

10  lost -- it's been to my material disadvantage that I haven't

11  been able to receive information and material at this -- being

12  so long into the case.

13       THE COURT:  I understand.  So I just wanted to

14  establish that I understood and that I understand what your

15  desire is.  So having established that, what you're trying to

16  do is represent yourself.  I --

17       THE DEFENDANT:  Your Honor, can I ask you one

18  question?

19       THE COURT:  Yes.

20       THE DEFENDANT:  I submitted a list of reasons why I

21  wanted to change counsel.  It was very detailed.  And I didn't

22  have your -- access to you or your staff, and *pro se*, I had to

23  wait.  But did you receive that?  I asked --

24       THE COURT:  I did receive it.  And actually, I've

25  received a number of materials from you, either that came to my

M6SHDenC

1    chambers by regular mail or that were submitted to the

2    government and then forwarded to me.

3              But what I really want to do is focus -- I have a plan

4    and a way that we need to proceed in order for me to comply

5    with the requirements, and so in an instance where someone

6    wants to represent themselves -- I mean, you have a

7    constitutional right to do that.  You don't -- in some sense

8    you don't have to justify it to me, but the reason we're here

9    is I can't let that happen unless I know that your decision is

10   knowing and voluntary and that you understand the risks of

11   proceeding on your own and the consequences of proceeding on

12   your own and also that it's completely voluntary; that you

13   haven't been pressured and coerced in some way to proceed this

14   way.  I'm just required as a matter of law to do that, and

15   that's the purpose of the proceeding today.

16             Is that clear?

17             THE DEFENDANT:  Yeah, I just wanted to make sure

18   that -- I think that in the writings that I sent it gives very

19   logical reasons, and it clearly shows why there was no pressure

20   involved, why after being a member of the bar for 30 years,

21   this is a well thought out plan is for me to represent myself.

22   It didn't -- you know.  So I thought that those letters

23   articulated and have been articulating different issues that

24   have been arising that have been detrimental to me and my case.

25             THE COURT:  I understand what you're saying, but,

M6SHDenC

1   frankly, just as a legal matter, even if your reasons were

2   totally irrational, you have a constitutional right to counsel,

3   but you also have a right to reject that.  So while I

4   understand that you've submitted reasons, it's really not my

5   place to evaluate them because you have a right to proceed in

6   the way you think is best.  But part of what I want to do today

7   is just make sure you understand the full ramifications of

8   doing that.

9            So before we do all of that, I have to establish your

10  competence.  Frankly, you seem perfectly competent to me, but

11  there are questions that traditionally judges ask to do that.

12  So that's what I'm going to do now.

13           First, before I do that, I'd like to remind you of two

14  things before you speak.  First, you've heard this before.  You

15  have the right to remain silent, and if you choose to speak,

16  any statements you make could be used against you.  That's the

17  first thing.

18           And the second, as an attorney, I'm sure you're

19  familiar with the attorney-client privilege.  And that

20  privilege protects from disclosure to me or to third parties,

21  like the government, communications between you and Federal

22  Defenders, specifically Mr. Kelly, but people who have been

23  acting as your lawyers.  And that privilege covers confidential

24  statements between you and Federal Defenders, either made by

25  you or made by them, in connection with providing you with

M6SHDenC

| | |
|---|---|
| 1 | legal advice.  If you were to say something that divulged those |
| 2 | communications, then you very well could be waiving the |
| 3 | attorney-client privilege, and the consequence could be that |
| 4 | you could be waiving it as to other communications or things |
| 5 | you've said that you would rather keep confidential. |
| 6 | So what I'm going to suggest is that you not divulge, |
| 7 | to the extent that you haven't already, any further |
| 8 | communications between yourself and Federal Defenders, just to |
| 9 | protect the attorney-client privilege and the confidentiality |
| 10 | accorded to your prior communications. |
| 11 | Understood? |
| 12 | THE DEFENDANT:  Yes, your Honor. |
| 13 | THE COURT:  So the next thing that traditionally |
| 14 | happens, and I'm going to do it here, is that I'm going to ask |
| 15 | Mr. Street, who is my courtroom deputy, to place you under oath |
| 16 | so that I can ask you some questions to confirm that you are |
| 17 | competent to proceed today. |
| 18 | So, Mr. Street, will you do that. |
| 19 | THE DEPUTY CLERK:  Yes, your Honor. |
| 20 | (Defendant sworn) |
| 21 | THE DEFENDANT:  Yes, I do, Mr. Street. |
| 22 | THE COURT:  So you are under oath now, which means |
| 23 | that if you answer any of my questions falsely, your statements |
| 24 | could be used against you in a separate action for perjury or |
| 25 | making false statements. |

M6SHDenC

1              So my first question is, please tell me your full
2    name.
3              THE DEFENDANT:  Willie Eugene Dennis.
4              THE COURT:  How old are you?
5              THE DEFENDANT:  I'm 60 years of age.
6              THE COURT:  Where were you born?
7              THE DEFENDANT:  Queens, New York.
8              THE COURT:  All right.  How far did you go in school?
9              THE DEFENDANT:  Law school.  Completed law school.
10             THE COURT:  Where did you get your law degree?
11             THE DEFENDANT:  Columbia University Law School.
12             THE COURT:  When was that?
13             THE DEFENDANT:  1988.
14             THE COURT:  All right.  Are you currently licensed to
15   practice law?
16             THE DEFENDANT:  Yes, I am.
17             THE COURT:  Could you briefly summarize your
18   employment experience as a lawyer.
19             THE DEFENDANT:  Yeah.  When I -- when I graduated from
20   law school, I began my career at firm Orrick
21   Harrington & Sutcliffe where I was there for approximately
22   three years, and then I joined the firm of Mudge Rose Guthrie
23   Alexander Ferdon, and I practiced there until that firm
24   actually closed, which was roughly 1995, 1996.  I then joined
25   the firm of Camhy Karlinsky & Stein and was there until the

M6SHDenC

1     firm split up, and then I joined as a partner at Akin Gump.

2     Following years at Akin Gump, I was at Thelen Reid, which is

3     another firm that's no longer.  I had a real good track record

4     here of picking winners.  And then I went to K&L Gates.

5                 THE COURT:  OK.  What was your area of practice?

6                 THE DEFENDANT:  I was a corporate attorney advising

7     large and small multinational companies on debt deals, equity

8     deals, as well as being a general adviser to them on their

9     litigation matters, their labor and employment matters.

10                THE COURT:  OK.  So you were a transactional lawyer?

11                THE DEFENDANT:  Yes, your Honor.

12                THE COURT:  Are you currently or have you recently

13    been under the care of a physician, a psychiatrist, or a

14    psychologist?

15                THE DEFENDANT:  Well, I've actually -- because this

16    has been an ongoing process, I've been seeing for a number of

17    years now, I'm currently, you know, with a therapist.

18                THE COURT:  And is there anything about your, for lack

19    of a better word, mental condition that impedes your ability to

20    understand what we're doing today?

21                THE DEFENDANT:  My mother might say so.  But, I mean,

22    I'm down here taking care of my parents, but I don't -- I don't

23    think that there's anything that -- there's nothing that I'm

24    aware of or anyone else.

25                THE COURT:  So you understand what we're doing here?

M6SHDenC

1          THE DEFENDANT:  Yes.

2          THE COURT:  OK.  And you're fully capable of making

3     decisions, is that right?

4          THE DEFENDANT:  That's correct, your Honor.

5          THE COURT:  And within the past 24 hours, have you

6     used or taken any alcohol, drugs, or medication that might

7     interfere with your ability to participate in our proceedings?

8          THE DEFENDANT:  No, I have not, your Honor.

9          THE COURT:  All right.  Is your mind totally clear

10    today?

11         THE DEFENDANT:  Yes, it is, your Honor.

12         THE COURT:  OK.  So based on your answers to my

13    questions and your demeanor, I am comfortable that you are

14    fully competent to proceed today in these proceedings.

15         So now what I'd like to do now is, because you say

16    you'd like to represent yourself, I need to be sure that you

17    understand your rights and the rights you'd be giving up by

18    representing yourself, and I also want to be sure you

19    understand the demands and risks of representing yourself.  I

20    understand you're an attorney.  If there's anything about what

21    I'm saying that you already know, please bear with me.  It's

22    something that I have to assure myself of.  And by all means,

23    if there's anything you don't understand that I'm saying,

24    please feel free to ask me.

25         So the first thing is that you have a right under the

M6SHDenC

1    Constitution to have an attorney represent you at trial, and if

2    you can't afford an attorney, one would be appointed to

3    represent you.

4            Do you understand that?

5            THE DEFENDANT:  Yes, I do, your Honor.

6            THE COURT:  All right.  You also understand that,

7    conversely, you have the right to represent yourself in this

8    criminal case, including at trial?

9            THE DEFENDANT:  Yes.  Yes, your Honor.

10            THE COURT:  OK.  So would you mind telling me, only

11    because I think it's not entirely clear, at least to me, I

12    understand that you don't want to be represented by Federal

13    Defenders and by Mr. Kelly and that you have had issues with

14    the representation.  But in cases where that happens -- and I

15    don't mean with Federal Defenders.  I mean from time to time

16    the relationship between a client and an appointed attorney

17    doesn't work out, and then typically the client says I would

18    like a different lawyer, and a different lawyer is appointed to

19    represent the client.  And you have not chosen to go that

20    route, and I just wanted to explore why that is.

21            THE DEFENDANT:  I think, your Honor, in part it's

22    because of my personal familiarity with the case and the facts

23    that are before us.  I mean, I've actually been living this for

24    about three, four years now.  And during the period in which I

25    was -- I became aware of the most recent complaint -- this is

M6SHDenC

1    not the first complaint by my firm against me, the most recent

2    complaint in November of 2021, because there was actually a --

3    actually, the October complaint, prior to that there was a

4    complaint that was made against me with the District Attorney's

5    Office in May of 2020, and that case was dismissed based on

6    similar facts and circumstances.  So as a result of that, I got

7    a lot of -- I became very aware of the charges that were made

8    and the arguments that needed to be made to defeat them in that

9    case alone.

10          I didn't find out that this was going on, as I pointed

11   out, until November of 2021, that this had actually been

12   brought to the federal courts.  And so it caught me by

13   surprise, and I wasn't sure if this was new charges or were

14   they similar to the charges that were made before the District

15   Attorney's Office in the city of New York under Cyrus Vance,

16   when he was District Attorney.  And during the months since

17   November through May of this year, I realized that these --

18   after looking at them and getting the information that I did, I

19   realized they were the same charges, more or less.  Same set of

20   facts.  So I became very comfortable with, based on my prior

21   records and talking to my prior attorneys, that same charges,

22   you make the same arguments that you're making now -- that you

23   made then, you make now.  It's be consistent.  That's what you

24   said then; that's what you say now.  And then it should -- they

25   feel it should prevail.

M6SHDenC

1          So I do have a kitchen cabinet of prior lawyers who

2     have been -- who represented me before the District Attorney's

3     Office who are advising me, you know, sort of, in terms of how

4     to proceed against these recent charges.  So it's not -- so

5     there's a familiarity with them.

6          THE COURT:  Well, let me ask you this:  One of the

7     things that I wanted to clarify first is although the charges

8     may be similar factually, understand these are federal charges

9     with the implications that come with that.  I mean, they are

10    different charges under a different statute, but they may be

11    based on the same facts.  I don't know if they are.  It's not

12    really that relevant right now.

13          But what I hear you saying is that you feel that

14    you're familiar with the facts and the possible defenses, and

15    so it's because of that you want to proceed without

16    representation in this matter, is that right?

17          THE DEFENDANT:  Familiar with the charges and, I

18    should add, I believe once I get the disclosures that I'm

19    required to receive, it will then -- that's why I want to

20    proceed, yes.

21          THE COURT:  So I guess one of the questions, then,

22    still is unclear to me.  Just apart from your familiarity with

23    the facts -- and we can go through this in a minute -- there's

24    a lot that needs to be done in the act of lawyering at trial

25    besides being familiar with the facts.  I guess one of the

M6SHDenC

1    things that I would urge you to think about is whether it would

2    be helpful to have a lawyer represent you so that they can

3    bring those skills to bear at trial in a way that you wouldn't

4    be able to because you're not a criminal defense lawyer.

5           THE DEFENDANT:  That makes certainly something --

6    yeah, one of the things I wanted to do, your Honor, I haven't

7    had -- they wouldn't -- I couldn't do before was talk to the

8    *pro se* office of the Southern District, because I've been told

9    by people that they're very helpful.  And so my thought was,

10   given my experience with the facts and with the case and

11   working with the *pro se* department, which I've heard that

12   they're phenomenal, that that would be the way to start.

13          THE COURT:  Well, let's explore that.  I understand

14   that that is something of interest, and I have only good things

15   to say about our *pro se* office.  But in the same way that a

16   standby lawyer wouldn't be able to stand up in court and

17   represent you at trial, the people in the *pro se* office

18   wouldn't represent you.

19          I think you probably understand that the real

20   challenge here has to do with courtroom and courtroom skills in

21   trying a criminal case.  And it's often said as a joke, but

22   I'll repeat it, and I don't mean it entirely as a joke, but the

23   old saying about a fool for a client is sometimes the person

24   who represents himself.  They say it about doctors, too.  A

25   fool for a patient is the doctor who cares for himself.  Now,

M6SHDenC

1    I'm not going to presume to suggest -- well, let me proceed

2    with what I have prepared to say, and we can continue to talk

3    about some of these things.

4            So I want to confirm -- I think I know the answer.  I

5    don't think you've ever represented anyone in a criminal

6    proceeding, is that right?

7            THE DEFENDANT:  No, I have not, your Honor.

8            THE COURT:  Have you ever seen a criminal trial?

9            THE DEFENDANT:  No, I've seen one, yeah.

10           THE COURT:  So I think it's fair to say that you

11   would -- these would be new skills and new territory.  I think

12   you understand there's a lot at stake here.  I'm sure you

13   understand that you're charged with four separate accounts of

14   cyberstalking.

15           And I wanted to ask Ms. Colson, what is the maximum

16   sentence that Mr. Dennis faces?  I think I know, but I want to

17   make sure we're in agreement.

18           MS. COLSON:  Your Honor, each of those four counts

19   carries a maximum sentence of five years, for a total maximum

20   term of 20 years' imprisonment.

21           THE COURT:  OK.  So supervised release, I assume, is

22   three years to be imposed concurrently as the maximum.

23           MS. COLSON:  Correct, your Honor.

24           THE COURT:  And the fine?

25           MS. COLSON:  250,000 or the greater, pardon me, twice

M6SHDenC

1    any pecuniary loss to a person other than the defendant.  I

2    think 250,000 would be the operative number here.

3              THE COURT:  OK.  Plus a special assessment of $400?

4              MS. COLSON:  Correct, your Honor, 100 per charge.

5              THE COURT:  So in sum, the maximum penalty,

6    Mr. Dennis, so what's at stake here, is a possible maximum of

7    20 years' imprisonment, three years' supervised release after

8    any imprisonment, a fine of $250,000 plus $400 as a special

9    assessment.  That, of course, is the maximum, and that is only

10   if you were convicted.  But that is the biggest downside and

11   that is what's at stake.  I just want to make sure you

12   understand that.

13             Is that clear?

14             THE DEFENDANT:  Yes, your Honor, it's very clear.

15             THE COURT:  So I also need to tell you that if you

16   decide to represent yourself, I'm the judge, obviously, and so

17   I can't advise you on how to try your case or how to make some

18   of the decisions that you'll need to make.  So what I'd like to

19   do now is just describe for you -- I can't give you a

20   comprehensive list, but I want to give you at least a pretty

21   substantial list of some of the things that you will be called

22   on to do if you decide to represent yourself.  And we do have a

23   transcript being made of these proceedings.

24             THE DEFENDANT:  OK.

25             THE COURT:  So it will all -- you're free to take

M6SHDenC

1    notes, but it's also being take down verbatim.

2            One of the things that you'll need to do is be

3    familiar with the Federal Rules of Criminal Procedure and the

4    Federal Rules of Evidence.  And fairly soon, that is, in early

5    August, you'll need to decide whether you want and whether it's

6    in your interest to file pretrial motions, what's called

7    motions *in limine*, which relate to evidentiary issues, is there

8    evidence that you want to move to exclude under the Federal

9    Rules of Evidence, and is there evidence that you think that

10   you need to move now to get into evidence under the Federal

11   Rules of Evidence.

12           Next, you'll also need to work collaboratively with

13   the prosecutors to submit to the Court jointly proposed

14   questions that I would ask potential jurors.  You'd need to

15   evaluate potential jurors when we get to trial in a process

16   called voir dire and decide which jurors that you would try to

17   seek for cause.  You'd have to understand when it's legitimate

18   to try to strike a juror for cause, and you'd have to determine

19   which you should strike as part of your allotted peremptory

20   challenges.

21           After you get past jury selection, you'd need to

22   decide whether to make an opening statement.  As you may know,

23   criminal defendant, there's a presumption of innocence.  So

24   criminal defendant doesn't have any obligation to make a

25   statement or to make any argument.  The burden's entirely on

M6SHDenC

1    the prosecution.  So the first decision after jury selection

2    would be do you want to make an opening statement?  Would that

3    be helpful to you?  Then if you chose to do that, then you,

4    like the prosecutor, would be allowed to preview the evidence

5    in an opening statement, but you wouldn't be allowed to make

6    legal argument.  And I would enforce that rule.  So if you were

7    making an opening statement and you strayed into the area of

8    argument, I would tell the jury to disregard what you had said,

9    which might affect their perception of you.

10           Then during the trial itself when witnesses were on

11   the stand called by the government, it would be your

12   responsibility to make objections based on the Rules of

13   Evidence, like objections to hearsay or other inadmissible

14   types of evidence.  And then once witnesses have testified,

15   you'd have the right to cross-examine each of them to test

16   their perception or their memory or their motives or their

17   bias, their truthfulness.  And it takes some skill to

18   cross-examine.

19           You'd also be required then to work collaboratively

20   with the prosecutor to propose instructions on the law that I

21   would review and then deliver to the jury.  You'd have the

22   right at the end of the trial, but no obligation again because

23   of the presumption of innocence, to make a closing argument for

24   acquittal.  You'd also need to make the strategic decision

25   whether to put on an affirmative case for your defense.  Often

M6SHDenC

1   criminal defendants do not put on a case.  Often criminal

2   defendants do not take the stand, and that's because the burden

3   is entirely the government's.  But sometimes defendants make

4   the decision to put on a case, and you'd have to make that

5   strategic decision.

6          Then if you decided to go ahead and put on a defense

7   case, you'd have to decide on the strategy of what witnesses to

8   call, what documents you might want to put into evidence.

9   There's a certain technique to questioning witnesses.  You have

10  to follow the Rules of Evidence.  There's a technique to -- and

11  rules about moving documents into evidence, and all of that is

12  fairly technical.  So that's basically getting you through the

13  trial process.

14         So I want to make sure you understand that that's kind

15  of the menu of, for lack of a better word, challenges that you

16  would be faced within a trial.

17         Do you understand or do you have any questions about

18  anything I just said?

19         THE DEFENDANT:  Yes, I do have.  I understand -- I

20  have a couple questions.

21         THE COURT:  Sure.

22         THE DEFENDANT:  The one area that really I'm concerned

23  about is you say that I have to work collaboratively with the

24  prosecutors.

25         THE COURT:  Right.

M6SHDenC

1          THE DEFENDANT:  And so I guess the question -- the

2     fact is that as of now the prosecutors have not been giving me

3     the disclosure that I need in order to establish my case.  I

4     mean, you know, so I'm -- unless they're giving me *Brady*

5     material and they're providing that to me so I can really -- if

6     there's something providing, that shows that I should be

7     acquitted, I need that sooner rather than later, and I need it

8     before we get to the jury selection, before -- I really need

9     that now because trial is so close.

10          THE COURT:  I guess one of the things that I would

11     say -- well, I know discovery -- you've raised it now twice, so

12     let's talk about it.  I think it's important.  It's obviously

13     something of concern to you.

14          So what I would like from the government is a report

15     on Rule 16 discovery, on *Brady* disclosure, and your intentions

16     as far as 3500 material and any other disclosure.  And if you

17     just pause after we talk about each one so that I can make sure

18     that Mr. Dennis understands and has what he's entitled to.

19          THE DEFENDANT:  And, your Honor, just one other thing

20     I'd like to say.  I, based on my prior case, my prior attorneys

21     developed a list of questions which we have submitted and --

22     back in May.  And so having -- those are the questions -- the

23     answers to those questions, whether we don't have any

24     information or we're not going to answer it or this is why,

25     would go a long way towards me being able to evaluate the case.

M6SHDenC

1    So there's specific --

2          THE COURT:  I guess one of the issues is -- and I'm

3    jumping ahead of myself a little bit -- that criminal

4    litigation is not like civil litigation.  I know that you're

5    not a litigator, so you're not intimately familiar with it

6    either.  But in civil litigation, both parties send each other

7    requests for documents, and then they say, I don't have

8    anything or I object or here it is, or whatever it is they say.

9    And that isn't now criminal proceedings work.

10          In criminal proceedings, the government is obligated,

11    basically, to turn over what it has as far as discovery, and

12    it's required to turn over what it has as far as exculpatory

13    material, but it has no obligation to go out and subpoena or

14    demand documents from any other parties that it doesn't have in

15    its possession.  It's up to you and your attorneys to subpoena

16    that from those third parties.

17          So let's hear from Ms. Colson.  I want to understand

18    what's happened so far.

19          THE DEFENDANT:  OK.  The only thing I'll add is that

20    the list that we sent was actually a list prepared by the

21    Federal Defenders.

22          THE COURT:  OK.

23          THE DEFENDANT:  So my attorney -- my attorney just

24    added questions on to that.

25          THE COURT:  OK.

M6SHDenC

1          THE DEFENDANT:  My prior attorneys.  OK.

2          THE COURT:  All right.  Ms. Colson, go ahead.

3          MS. COLSON:  Your Honor, taking those report

4    categories in turn, Rule 16 discovery has been disclosed, save

5    for our identified set of data in the defendant's iCloud

6    account in his phone.  Like the defendant's other accounts,

7    those had to go through a privilege review which, in any case,

8    takes some time, and in this case it was particularly

9    time-consuming owing to the defendant claiming a very broad

10   list of privilege.  The privilege review was recently completed

11   on both of those, and it's just undertaken our responsiveness

12   review.

13          I'll note, your Honor, that all of the materials that

14   we're talking about here are the defendant's own

15   communications.  So he is intimately familiar with them,

16   arguably on a level that we are not familiar with them.

17          As to *Brady*, it's an ongoing --

18          THE COURT:  Wait, wait, wait.  I just want to slow

19   down a little bit so we talk about each category.

20          As far as Rule 16 material, can you describe generally

21   what's been provided.

22          MS. COLSON:  Your Honor, I believe we've turned over

23   communications from Mr. Dennis to various individuals, and as

24   Mr. Dennis has noted, we have his phone which contains certain

25   iCloud -- excuse me, we have his iCloud account and we have the

M6SHDenC

1   contents of his phone.  Those are still undergoing review.

2              THE COURT:  OK.  So what --

3              MS. COLSON:  But we have turned over various law

4   enforcement reports, FBI 302s if they're known, and other

5   Rule 16 material outside of those limited categories that I

6   just described.  Rule 16, in our view, is complete, save for

7   those two categories.

8              THE COURT:  When you say "save for," so basically what

9   you've given to him, as I understand it, are communications

10  between Mr. Dennis and particular individuals, some law

11  enforcement files including FBI 302s, and the materials that

12  have yet to be provided because they had to undergo both a

13  privilege review and a relevance review are the contents of

14  his, basically, iCloud account and the contents of his phone,

15  although I would think everything on his phone is in his iCloud

16  account.

17             MS. COLSON:  Your Honor, yes, and I apologize.  I am

18  relatively new to the case, but there have been -- I'm looking

19  at my file as we speak.  There have been one, two, three, four,

20  five -- six previous disclosures, and save for those two

21  limited categories, we do think discovery is complete.  We

22  will, obviously, expeditiously review those two categories that

23  have just been sort of cleared through the privilege review and

24  then --

25             THE COURT:  Do you have a time frame for producing

M6SHDenC

1    that material?

2               MS. COLSON:  I don't, your Honor.  I can check back

3    with the law enforcement agents currently reviewing and update

4    the Court as soon as we do have a time frame.

5               THE COURT:  That would be great.  If you could give me

6    a letter within a week or so just telling me what the status is

7    and your estimated date for production so that we can at least

8    have all of the Rule 16 discovery finished.

9               MS. COLSON:  Understood, your Honor.  And I do

10   reiterate that these are his communications.  Presumably, he

11   would know what they are.

12              THE COURT:  Understood.  But I can't swear I know

13   everything that's in my phone.  I assume Mr. Dennis is in the

14   same boat.

15              So that's Rule 16 material.  And then tell me other

16   categories.  Tell me about *Brady*.  I know you understand what

17   your obligation is under *Brady*, and just so Mr. Dennis

18   understands, sounds like he knows, *Brady v. Maryland*'s

19   basically exculpatory material.

20              So, Ms. Colson, tell me about *Brady* disclosures.

21              MS. COLSON:  Your Honor, we understand that that's an

22   ongoing obligation.  To the extent we have come across any

23   *Brady* material, it will have already been disclosed.  Any *Brady*

24   material that we would come upon would be expeditiously

25   disclosed.

M6SHDenC

1          Then I believe the next category your Honor mentioned

2     was 3500 material which would cover witness statements, and

3     those will be disclosed at a time set by the government --

4     excuse me, set by the Court in advance of trial.

5          THE COURT:  OK.  Typically, I require that about two

6     weeks in advance of trial, just so Mr. Dennis understands.

7          THE DEFENDANT:  Your Honor, can I make one comment,

8     because this is where I am confused?

9          THE COURT:  Yes.  OK.

10          THE DEFENDANT:  The Federal Defenders prepared a list

11     of questions that they quote/unquote said were *Brady* questions

12     that we needed answers to that -- May 24, that list of

13     questions.  And so is the prosecutor saying she's responded to

14     those questions already?  Is that what I'm hearing?

15          THE COURT:  I think she's fairly new to the case, but

16     let me ask her.

17          MS. COLSON:  I'll say only that we understand our

18     *Brady* obligations, and so to the extent that this list of

19     questions would have touched upon *Brady* material, we would have

20     disclosed that material.

21          THE COURT:  I'll just say that I saw in the materials

22     that I reviewed from Mr. Dennis a list of questions, or what

23     looked like document demands, really, but the reason I made the

24     point I made before is if the government has materials that are

25     pertinent to your case, they are required to turn them over.

M6SHDenC

1    But if they don't have them, if, for example, they're from K&L

2    Gates, they're from Proskauer, they're from whomever, if they

3    don't have those materials, then they don't have an obligation

4    to go out and get them because you want them.  It's your

5    obligation --

6                    THE DEFENDANT:  Right.

7                    THE COURT:  -- to get the materials from a third

8    party.

9                    But let me just stop you there for a second.  Let me

10   just ask Mr. Kelly, who I know who's been intimately involved

11   in this, and if I could just ask you, Mr. Kelly, you may know

12   more than Ms. Colson since you've been in the case and she's

13   new to the case.

14                   MR. KELLY:  Yes, your Honor.  Two points I think I

15   wold make in response to what's been discussed so far.  First,

16   it's my understanding that we, and Mr. Dennis, have the full

17   production of electronic discovery materials.  That the

18   government's privilege review is more for their sake than for

19   the defense's.  So unless there was another set of materials

20   that's forthcoming, when Ms. Colson before was describing

21   materials to come through a privilege review, it's my

22   understanding that we already have that.

23                   THE COURT:  In other words, you have all of those

24   materials.  On behalf of Mr. Dennis, you have all those

25   materials.  In other words, the contents of his phone and his

M6SHDenC

1  iCloud account, and it's really Ms. Colson who's waiting for

2  the privilege and relevance review so that she knows what she's

3  allowed to look at?

4          MR. KELLY:  Correct, your Honor.

5          THE COURT:  OK.

6          MR. KELLY:  There is a small subset of attorneys' eyes

7  only documents that are the indices for the FBI's case files.

8  I've raised that with the government.  To the extent Mr. Dennis

9  proceeds *pro se*, they've represented that they're going to take

10  some ameliorative steps to give him that information, but that

11  is the only subset of material that I'm aware of.  It's three

12  indices to the FBI's case files.  Other than that, my

13  understanding is Mr. Dennis has everything the government has

14  produced and has everything that's in the electronic discovery

15  review process.

16          THE COURT:  OK.  That's helpful.  You were going to

17  say two things.  What's the other one?

18          MR. KELLY:  The second is I think there was some

19  confusion, perhaps justifiably, between Mr. Dennis, the

20  government, and perhaps the Court as to his discovery demands.

21  Those were not served by our office.  Mr. Dennis then indicated

22  his desire to proceed *pro se*, and he then provided that

23  material -- excuse me, those requests to the government

24  directly.

25          I won't speak for the government as to whether they've

M6SHDenC

1    reviewed and responded to those as if they were discovery

2    requests, but just so the record is clear, we had not served

3    those.  Then there was the intervening request by Mr. Dennis to

4    proceed on his own.  He then served those himself on the

5    government.  That is what I understand he's also provided

6    copies of to the Court.

7                 THE COURT:  OK.  That's helpful.  Thank you.

8                 So, Ms. Colson, I just direct your attention to those,

9    and if you could deal with them in due course.

10                MS. COLSON:  Understood, your Honor.

11                THE COURT:  All right.  So now tell me -- what I'd

12   like to do now, Mr. Dennis, is proceed where I was, which was

13   to ensure that you understand the challenges associated with

14   proceeding on your own.

15                THE DEFENDANT:  Right.  I had one other question

16   because you were mentioning how I can't discover things that's

17   not in the possession of the government.  I think I said to you

18   there have been communications going on between Proskauer and

19   the Department of Justice just this past week which led to them

20   reaching out into my civil case and reaching out to the

21   arbitrator in the civil case asking him, more or less, not to

22   lift a stay.

23                So in that instance where Proskauer has talked to the

24   government and says, Willie Dennis is trying to lift his stay

25   in his civil case, and we don't think he should, the government

M6SHDenC

1   has then -- or maybe they have not -- the government has then

2   responded to Proskauer saying:  We don't believe the stay

3   should be lifted.  These are the reasons why, and you should

4   share this with the arbitrator.  Proskauer in turn -- and I'm

5   not involved in this process at all, even though I'm

6   representing myself in the civil matter -- Proskauer in turn on

7   June 22 sends a letter to the American Arbitration Association

8   with the statement that the Department of Justice wants to talk

9   to the arbitrator before he's inclined to lift the stay, if

10   he's inclined to lift the stay.

11          So I guess my question to all of that is since I was

12   not involved in Proskauer's discussion with the Department of

13   Justice in terms of how they positioned it, what they said,

14   then the Department of Justice's decision that they wanted to

15   intervene and then using Proskauer as the agent to intervene

16   and now an official communication was sent to the American

17   Arbitration Association, can I get discovery on the

18   conversation between Proskauer and the Department of Justice on

19   that?

20          THE COURT:  So what I need to do -- I can't sort of

21   rule on the fly here, especially since I haven't heard from the

22   government, but in general -- and I did see a couple of

23   letters, I think they were letters, just today that had been

24   attached to the most recent filings or submissions here, and

25   they dealt with the arbitration and the stay in the

M6SHDenC

```
1    arbitration.  And in general, the arbitration is in the realm
2    of the arbitrator.  It's the arbitrator who has jurisdiction
3    over that.  I don't have jurisdiction over that.  And if the
4    arbitrator wants to stay the arbitration for whatever reason
5    the arbitrator thinks is a good idea, that is between the
6    parties and the arbitrator and has nothing to do with me.  And
7    I wouldn't get involved in that, just so you understand that.
8                THE DEFENDANT:  OK.
9                THE COURT:  OK.  So I want to be sure I just -- to
10   pick up where we were, I went through a whole laundry list of
11   things that you would have to do at trial, and frankly, people
12   spend years learning those skills.  You have a lot at stake
13   here.  I just want to make sure that you understand that if you
14   represented yourself, that it would be your responsibility to
15   do all of those things.
16               Do you understand that?
17               THE DEFENDANT:  Yes, I do, your Honor.
18               THE COURT:  And, again, one of the things I would ask
19   you to think about is whether you would consider -- I
20   understand that there's been a breakdown in the relationship
21   with Federal Defenders, but if you would consider having a
22   different attorney, such as Mr. Cecutti -- who I'm afraid we
23   may be detaining from other obligations.  Mr. Cecutti, jump in
24   if you're supposed to be in another courtroom right now -- but
25   I would just ask you to consider having somebody who's an
```

M6SHDenC

1    experienced trial lawyer represent you in this trial where

2    there's a lot at stake and a lot of challenging work to be

3    done.

4            THE DEFENDANT:  Yeah.  I mean, I have to say, as we've

5    been going through this conversation, my biggest concern is

6    that -- is basically if I cannot get access to disclosures I

7    need, then I will have a really difficult time with this case.

8    And as I've said in my letters, I'm really concerned that the

9    Department of Justice reached into the civil case when I --

10   when there's a criminal case going on.  I don't know what would

11   have motivated them to actually -- if they actually did that.

12   And if the fact is I can never find out, then that's -- that is

13   a problem, I guess, that I'm going to have to start dealing

14   with is that they can do these things, and there's no way to --

15   they can influence processes, and there's no way to understand,

16   even though you have a right -- because I think them entering

17   into the civil and it is a criminal -- it is a criminal case

18   that they're doing it from, they should be willing to freely --

19   and I could ask Ms. Colson while she's on the phone -- to

20   disclose her communications with Proskauer on that issue or

21   just to say that they had no communications with Proskauer.  I

22   think that's a fair question.

23           THE COURT:  But, Mr. Dennis, that's not what we're --

24   that's not what we're here for.  What I'm trying to do is

25   figure out if you understand what you're taking on if you

M6SHDenC

1   decide to represent yourself, and I want to make sure that once

2   you do understand that, that that is really how you want to

3   proceed rather than having another different lawyer appointed

4   to represent you.  That's where I'm going.  So let me pick up

5   again where I was.

6           If you represent yourself, you'll be expected to abide

7   by the Court's trial schedule.  I think you know that trial is

8   scheduled to begin with jury selection on September 28, with

9   first pretrial submissions, meaning those motions I mentioned,

10  on August 12.  And you would be responsible for that.

11          Do you understand that?

12          THE DEFENDANT:  Yes, I do, your Honor.

13          THE COURT:  OK.  I think you also understand that the

14  right of self-representation -- and I say this because I always

15  say it in this circumstance, not because I doubt you -- but

16  self-representation is not a license to abuse the dignity of

17  the courtroom.  So you would have to comport yourself

18  professionally.

19          You understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  All right.  Do you also understand that

22  even if you are representing yourself, I may terminate that

23  representation if I found that you deliberately engaged in some

24  serious and obstructionist misconduct?

25          THE DEFENDANT:  Your Honor, I will not do that, and I

M6SHDenC

1   understand.

2           THE COURT:  All right.  Good.  Do you also understand

3   that a lawyer may have better and easier access to legal

4   research materials and potential witnesses who could help with

5   your defense, particularly since your bail conditions restrict

6   your travel and also prohibit your contact with certain people?

7           THE DEFENDANT:  Yes.  Yes, your Honor, I understand.

8           THE COURT:  Then do you also understand that even if

9   you had standby counsel, in other words, a lawyer like

10  Mr. Cecutti to behind the scenes advise you, that he or any

11  other standby counsel would not be entitled to speak to the

12  jury or appear in front of the jury or speak to the Court?

13  That would just be sort of a private advisory relationship.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do, your Honor.

16          THE COURT:  OK.  Then do you also understand -- and

17  this is a very important aspect that sometimes *pro se* litigants

18  aren't entirely clear on -- that if you wanted to tell the jury

19  your version of the events in your own words, that the only way

20  that you could do that would be to take the witness stand and

21  testify under oath and subject yourself to cross-examination?

22  You couldn't just get up in argument at the beginning or the

23  end of the trial and tell your side of the facts.

24          Do you understand that?

25          THE DEFENDANT:  I absolutely understand the truth

M6SHDenC

1    behind my story, uh-huh.

2              THE COURT:  OK.  But, again, what I want to make sure

3    you understand is that you can't tell that story even if you

4    represent yourself unless you take the witness stand, swear to

5    tell the truth under oath, and subject yourself to

6    cross-examination.

7              THE DEFENDANT:  Uh-huh, yes.

8              THE COURT:  Is that clear?

9              THE DEFENDANT:  Yes.  Yes, your Honor.

10             THE COURT:  OK.  And because this is such an important

11   point, I'm just going to elaborate a little bit.

12             So I will tell the jury, I always tell the jury, in

13   fact, that opening statements, closing arguments, questions put

14   to the witnesses are not evidence, and their verdict has to be

15   based on the evidence.  So you shouldn't expect that you would

16   be able to make factual statements to the jury unless they were

17   separately established by evidence, such as your taking the

18   stand under oath.

19             Is that clear?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  All right.  And that if you did try to

22   make statements during the course of argument, I may well be

23   forced to instruct the jury to disregard what you said.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

M6SHDenC

1            THE COURT:  You should also understand that if you act

2    as your own attorney, a jury could draw inferences about you as

3    a person, about what you did in the case, about what you know

4    about the case in a way they would not be able to do if there

5    were an intermediary between you and them, such as an attorney

6    representing you.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Do you also understand that even if you

10   chose not to testify, the rights you have as a criminal

11   defendant not to incriminate yourself could be undermined

12   because the jury may draw impressions about you based on how

13   you conduct yourself or how you conduct the defense at trial?

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Also do you understand that if you decided

17   at some point to discuss a possible plea agreement with the

18   government, a criminal defense attorney likely would be better

19   able to do that than you in your position as a defendant?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Do you also understand that if you

22   represent yourself at trial and you were convicted, you would

23   not be able to argue on appeal that the conviction resulted

24   from inadequate representation because there wouldn't have been

25   any representation?

M6SHDenC

1          Is that understood?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you also understand that once you've

4    waived your Sixth Amendment right to counsel, you may not

5    simply demand to have counsel reinstated at some point later?

6    I would, of course, consider any request you make for counsel,

7    but after you elect to represent yourself, you can't try to get

8    an advantage or delay the trial by first waiving counsel and

9    then asking for counsel.

10         Is that clear?

11         THE DEFENDANT:  Yeah, almost.  Let me ask a couple

12   questions along those lines.

13         THE COURT:  OK.

14         THE DEFENDANT:  I think that -- well, I want to hear

15   more about the parameters in terms of -- as I've sort of

16   indicated on this call and as I think about it, in the case

17   before the District Attorney of the city of New York, we got to

18   the point where no one would turn over any disclosure, and

19   that's why the case did not proceed forward, because the same

20   sort of disclosure that Mr. Kelly asked for and that I've asked

21   for since May was never forthcoming.

22         But in the event that I actually do get disclosure and

23   it turns out that I review the disclosure and it's things that

24   I didn't anticipate, what is the -- what is my ability to come

25   to the Court and say -- and say I want -- I want a retained

M6SHDenC

1    counsel?  And it doesn't have to be appointed counsel; it could

2    be someone I retain myself.  I could do that at any time, is

3    that right?

4            THE COURT:  You could.  At any time if you want to

5    retain your own counsel, you can do that.

6            THE DEFENDANT:  OK.  OK.  OK.

7            THE COURT:  But my advice to you is if you're thinking

8    that you're going to do that, the sooner the better, because

9    anybody you retain, even if it's the people who represented you

10   in front of the state, they will be bound by whatever you do.

11   So the sooner the better is all I could say.

12           THE DEFENDANT:  Yeah.  I'm sort of weighing against

13   how soon am I going to get the answers to the questions that

14   Mr. Kelly -- I mean, it's not like I'm thinking infinitely.

15   How soon --

16           THE COURT:  Wait.  Remember what Mr. Kelly said.

17   Mr. Kelly said he got the questions from you, but that before

18   submitting them to the government, you interposed your

19   directive that they weren't to act on your behalf anymore and

20   that you would represent yourself.  So the government got the

21   questions from you.  They did not get them from Mr. Kelly.

22           THE DEFENDANT:  Well, to really be more clear, and I

23   didn't -- Mr. Kelly actually sent me an email saying he had

24   sent them to the government already, and so -- and so my

25   questions were -- and this is what I put in my emails --

M6SHDenC

1   additional questions to the ones that the government should

2   have received from Mr. Kelly.  And I --

3           THE COURT:  So let's do this.  We're not here to

4   adjudicate that, and I also really don't want to get into

5   recriminations about what may have transpired.  Nor do I want

6   you to waive the attorney-client privilege.

7           But what I will do is I will ask, Ms. Colson, if you

8   could respond by a week from today, and if that ends up not

9   being enough time, then just ask for more time.  But time's

10  passing here, so I'd like to keep things moving.  If you could

11  respond by a week from today explaining to the Court where we

12  stand with respect to Mr. Dennis's questions.  OK?

13          MS. COLSON:  Understood, your Honor.  I'll just

14  reiterate what Mr. Kelly helpfully stated.  Apologies for being

15  new.  There is nothing left, as we see it, for Mr. Dennis to

16  receive under Rule 16.

17          THE COURT:  I understand.  But I think it would help

18  Mr. Dennis, who I think is frustrated and also doesn't fully

19  understand the process, to know why these specific questions

20  are not answered or the materials aren't provided as part of

21  the government's Rule 16 discovery.  And I understand that's

22  not normally a burden that's imposed on you.  My apologies for

23  that, but I actually think that it's the more efficient way and

24  will lead to less consternation on everyone's part if we just

25  proceed if that way.  OK?

M6SHDenC

1          MS. COLSON:  That's probably easiest.  You're right,

2     your Honor.  Thank you.

3          THE COURT:  OK.  Thank you.

4          So, Mr. Dennis, I want to conclude this area of my

5     questioning of you.  I just want to make sure that you

6     understand the challenges and risks you'd be taking on if you

7     chose to represent yourself, and if you have any questions

8     about that remaining, please ask them now.

9          THE DEFENDANT:  I think, your Honor, you've been very

10    patient, thoughtful in laying out the different challenges that

11    I face, and I don't have any other questions at this point.

12         THE COURT:  OK.  So the next thing I want to confirm

13    is that your request to waive your right to counsel is

14    voluntary, so I'll just ask that direct question.

15         Is this a voluntary request that you're making?

16         THE DEFENDANT:  Yes, it is, your Honor.

17         THE COURT:  Has anyone threatened you or coerced you

18    or tried to force you to proceed to trial without a lawyer?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  And has anyone promised you any benefit or

21    tried to induce you in some way to waive your right to a

22    lawyer?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  And if you think you would like a little

25    longer to think about this, I can give you that time.  We could

M6SHDenC

1    reconvene in a couple of days so you have a chance to

2    reconsider if you would like to, in light of all that's

3    transpired.

4            THE DEFENDANT:  No, your Honor, I'd like to proceed

5    forward.

6            THE COURT:  OK.  And I will share with you my view.  I

7    think perhaps it's been clear, but I'll share it with you now

8    anyway.  And that is my view is that if you do decide to

9    represent yourself, I think that is an unwise decision.  I

10   think your interests at trial would be much better served if

11   you had an experienced trial lawyer, one who doesn't directly

12   have their own future and well-being at stake in the trial.

13           Understood?

14           THE DEFENDANT:  Understood, your Honor.

15           THE COURT:  So given everything I've told you about

16   the penalties you face, the risks and challenges of waiving

17   your right to counsel, is it still your wish to represent

18   yourself in this case, including at trial?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  And is it your wish to begin doing that

21   immediately, as opposed to at some later point?

22           THE DEFENDANT:  Immediately, your Honor.

23           THE COURT:  All right.  So based on my discussions

24   today with Mr. Dennis, my observations of his demeanor, I find

25   that he is competent, and he has waived his Sixth Amendment

M6SHDenC

1    right to counsel, and that his waiver is knowing and voluntary.

2           So with that, Federal Defenders and Mr. Kelly are

3    relieved as counsel.  And, first, I just want to talk to

4    Mr. Kelly about all the materials that you have.  Have you been

5    able to provide them to Mr. Dennis, or is that still in the

6    works?  What's the status of that?

7           MR. KELLY:  Yes, your Honor.  Mr. Dennis has external

8    hard drives of all the government's productions, and in his

9    recent request to our office, we've provided him with copies of

10   all of our communications with the government and with the

11   Proskauer firm.  So as of today's date, he has everything from

12   the case file except for those, as I mentioned, three

13   attorneys' eyes only documents.

14          THE COURT:  OK.  Thank you.  That's helpful.

15          THE DEFENDANT:  And, your Honor, just to comment, I'm

16   still reviewing the files that were sent to me, so I can't

17   confirm that I have everything that his been -- that -- from

18   their offices as of yet.  So I want that just to be on the

19   record.

20          THE COURT:  Sure.  I understand.  Mr. Kelly has

21   represented that he's turned over everything, but, obviously,

22   you should review it to see if it appears that anything's

23   missing.

24          THE DEFENDANT:  There are one or two things, and

25   I'm -- that I believe are missing, and I'll be able to document

M6SHDenC

1    that.

2           THE COURT:  What I would ask you to do is if you think

3    there are some things that are missing, just work directly with

4    Mr. Kelly about that, and if there is some issue or problem,

5    you can come to me.  But I would just urge you to try to work

6    things out with Mr. Kelly first, and I can assure you, just

7    based on prior dealing, that I am sure Mr. Kelly will act in

8    good faith and will certainly not make any misrepresentations

9    to the Court.  So try that avenue first.  If there's a problem,

10   then come to me.

11          THE DEFENDANT:  OK, your Honor.

12          THE COURT:  So now I want to turn to the issue of

13   standby counsel.

14          As I mentioned before, sometimes in cases like this a

15   defendant like yourself will request to have standby counsel

16   appointed to assist them.  The role of that person -- and that

17   would be Mr. Cecutti in this case -- the role of that person

18   would be to be available for your questions or to advise you if

19   you ask for advice.  Basically, it's a resource there for you.

20   That person would not speak to the jury.  They would not

21   represent you.  They would not speak to me on your behalf.

22   They would not write letters on your behalf.  It's basically

23   just an advisory relationship, and it's Mr. Cecutti because

24   he -- the CJA lawyers from that panel have days when they're

25   assigned essentially to be on call.  This is Mr. Cecutti's day,

M6SHDenC

1    and so that's why he's the person here.  The people on the

2    panel are reappointed every year based on their performance in

3    the prior year and a vetting process by the Court.

4            So the question is would you like Mr. Cecutti

5    appointed to act as standby counsel for you as a resource?

6            THE DEFENDANT:  Yes, your Honor, I would.

7            THE COURT:  OK.  So, Mr. Cecutti, consider yourself so

8    appointed, and you can speak to Mr. Dennis and figure out what

9    his needs and requests are.

10           If at any point, Mr. Dennis, you decide that you want

11   an appointed lawyer to represent you and you qualify still to

12   have an appointed lawyer, Mr. Cecutti would be available and

13   the person to do that.

14           Is that understood?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  All right.  So what I want to talk about

17   next are dates.  I think you're familiar with the schedule, but

18   the trial is scheduled to begin September 28 with jury

19   selection.  Any motions *in limine*, and that is motions to

20   exclude or permit particular evidence, are due August 12.  So

21   that means you and the government both have to file any such

22   motions by August 12.  Usually, just so you know, they're

23   brief.  They're not long tomes of paper.  And they usually

24   argue based on the Rules of Evidence that something either

25   should be admitted or excluded.  I have a page limit myself of

M6SHDenC

1    five pages for each motion and each response.  As I said,

2    motions are due August 12.  Response is due a week later,

3    August 19.

4            Then I mentioned before that there are certain things

5    you need to collaborate with the government on in preparing.

6    There are three things:

7            First, I would like a single document submitted

8    jointly by you and the government that notes just the points of

9    difference.  The first document is proposed questions for

10   prospective jurors, and that's called voir dire.  Of course,

11   I'll review it and in the end decide what questions should be

12   asked.  That's based on what you submit to me.

13           Second, the second collaborative document are the

14   proposed jury instructions which instruct the jury on the law

15   of the government's accusations, as well as your defenses.

16           And the third document is a proposed verdict form.

17   Those are due by September 2.

18           Finally, you'll be expected to attend in person the

19   final pretrial conference which is scheduled for September 19

20   at 11:00 a.m.

21           And those should all be in a written document, in a

22   written order, but if for some reason they're not, I'll issue a

23   written order just so it's clear.

24           Do you have ECF privileges, by the way, Mr. Dennis?

25           THE DEFENDANT:  I do not at this point.

M6SHDenC

1          THE COURT:  Would you mind getting them just so that

2     we're not dealing with snail mail to get you communications

3     because we can't just email.  It's too informal.  We have to --

4     as the Court I have to put things on the docket, and you can

5     access them on the docket.

6          THE DEFENDANT:  OK.

7          THE COURT:  All right.  So if you could do that

8     expeditiously, that would be great.

9          So I know there are various letters that you have

10    written to the Court that have not been filed on the docket.

11    Any communications with the Court have to be filed in the

12    docket, in that way there's no question that the government has

13    seen them.  By the same token, Ms. Colson understands that any

14    communications with the Court from her likewise have to go on

15    the docket, and that way you will see them.  So everything is

16    completely transparent.

17         What I'd like you to do is wait for Ms. Colson's

18    letter, which we should have by next week, and then -- I think

19    we've taken care of all the issues with Federal Defenders.  If

20    there are any remaining issues that you want to raise with the

21    Court, in other words, by making a motion or an application, if

22    you would do that at that point.  And what I would like to do

23    is have any motion business July 12 and any opposition by

24    July 22.

25         OK.  I think that is it.  Is there any other issue

M6SHDenC

1    that anyone thinks that I need to address?

2          THE DEFENDANT:  Well, one important one I just

3    realized is that this transcript you said -- when would I be

4    able, because I didn't take the notes --

5          THE COURT:  Right.

6          THE DEFENDANT:  How soon and when would I be able to

7    get a copy of this so I could study it in more detail?

8          THE COURT:  That I can't tell you.

9          Mr. Street, can you help us?  Or perhaps I could ask

10   the court reporter.

11         (Discussion off the record)

12         MR. CECUTTI:  Your Honor, this is Anthony Cecutti.

13         THE COURT:  Yes.

14         MR. CECUTTI:  I've been listening and paying close

15   attention.  I'm happy to put in a request for the transcript

16   tonight to assist Mr. Dennis getting a copy of the transcript.

17         THE COURT:  That would be great.  Thank you.

18         All right.  Another question I have, and only because

19   it seems to be pressing, perhaps I misunderstood, but there

20   seems to be an issue with Mr. Dennis's phone.

21         Do you not have your phone, Mr. Dennis?

22         THE DEFENDANT:  No, your Honor, I do not.

23         THE COURT:  I think the government has the contents of

24   the phone.  Can you now give the phone back to Mr. Dennis?

25         MS. COLSON:  Your Honor, the phone is still being

M6SHDenC

1    reviewed.  The contents of the phone are evidence, and so we

2    are not in a position to give them back yet.

3            THE COURT:  I guess what I was wondering is -- I

4    assume the contents of the phone are all on some digital media,

5    and you can keep that and give him his phone back.

6            MS. COLSON:  Your Honor, we view the phone itself as

7    an instrument of the crime.

8            THE COURT:  OK.  So what we'll do is this:  If you

9    want to make an application for your phone, Mr. Dennis, I'll

10   hear your argument, I'll hear the government's argument, and

11   then I'll rule on it.  OK?

12           MS. COLSON:  Your Honor, before we break, I would just

13   ask now that --

14           THE DEFENDANT:  Before you leave the phone issue --

15           THE COURT:  Wait, wait, wait.  I'm going to let

16   Ms. Colson, since she started, ask her question, then I'll call

17   on you, Mr. Dennis.

18           MS. COLSON:  Your Honor, mine was on a slightly

19   different topic, so if Mr. Dennis would like to be heard on the

20   phone issue.

21           THE COURT:  OK.  You want to be heard on the phone

22   issue?

23           THE DEFENDANT:  Yes.  OK.  This is -- I think

24   Mr. Kelly's still on.  I think he told me they had given him

25   all the discovery off of the phone already.

M6SHDenC

1          But besides that, I've only been allowed to have one

2     email account, which is tied to that phone, my old phone.  And

3     I'd just like confirmation, and I've been having -- this is

4     going to be in one of my motions.  I've been having a lot of

5     issues electronically with my devices -- but I wanted

6     confirmation from the government that no one is able to or has

7     the ability to read my emails on a real-time basis from a

8     technical standpoint.

9          THE COURT:  No, I understand your concern.

10         Ms. Colson.

11         MS. COLSON:  Your Honor, no one's accessing or using

12    that will phone.  We're purely holding it for evidentiary

13    purposes and searching it pursuant to whatever the parameters

14    have been court approved.

15         THE COURT:  OK.

16         THE DEFENDANT:  But, Ms. Colson, can you actually

17    physically do that?  Because I've been having issues.  So could

18    you -- having that phone, could you read my emails?  I'm not

19    saying you did it, but could you -- would you be able to?

20         THE COURT:  Well, I'm not going to preside over a

21    dialogue.

22         THE DEFENDANT:  OK.  I'm sorry.

23         THE COURT:  No, that's OK.

24         So what I'd like you to do is make an application for

25    your phone, or perhaps you can talk to Mr. Cecutti and see if

M6SHDenC

1    there's some happy medium or alternative so that you're -- I

2    mean so you're able to function because, frankly, whether

3    you're *pro se* or whether you're represented, if you can't

4    communicate confidentially by email, that seems to me

5    difficult, to say the least.

6            So make an application, then I can hear arguments from

7    both sides and figure out what the right solution is.  OK.

8            THE DEFENDANT:  Would I be able to get Mr. Cecutti's

9    contact information before we hang up?

10           THE COURT:  Mr. Cecutti, are you still there?  But

11   you're on mute.

12           MR. CECUTTI:  Yes, I'm here.

13           THE COURT:  What's the easiest way that isn't going to

14   take everybody's time for you to be in touch with Mr. Dennis?

15           MR. CECUTTI:  If I can quickly give him my cell phone

16   number.

17           THE COURT:  Perfect.

18           THE DEFENDANT:  All right.

19           MR. CECUTTI:  Mr. Dennis, my cell phone number is 917.

20           THE DEFENDANT:  OK.

21           MR. CECUTTI:  741.

22           THE DEFENDANT:  OK.

23           MR. CECUTTI:  1837.

24           THE DEFENDANT:  OK.  Thank you.

25           MR. CECUTTI:  And I'm available tonight to speak if

M6SHDenC

1    you would like.

2              THE DEFENDANT:  917-741-1837.

3              MR. CECUTTI:  Correct.

4              THE DEFENDANT:  Thank you, sir.

5              THE COURT:  Now, Ms. Colson, you had another subject

6    you wanted to raise?

7              MS. COLSON:  We would just ask now that we have the

8    ECF issue squared away, and Mr. Dennis knows how to reach both

9    AUSAs Sarah Kushner and me, that Mr. Dennis communicate only to

10   us when he's looking to communicate with the government rather

11   than the U.S. Attorney himself or people on that level.  We

12   think that we can communicate anything that he wishes to be

13   passed on, but it suffices to --

14             THE COURT:  The other thing is it's highly inefficient

15   because it's your job, in the first instance, to deal with

16   whatever comes up in this case.  Mr. Dennis, could I ask you to

17   do that.

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  OK.  Great.  All right.  If there's

20   nothing else, I'm going to adjourn this proceeding.

21             Mr. Dennis, if you could contact the *pro se* office

22   about how to get access to ECF.

23             THE DEFENDANT:  OK.

24             THE COURT:  And also the email address you can use to

25   have your motions filed on ECF.

M6SHDenC

1          THE DEFENDANT:  OK.  I should just call them in the

2     morning?  I'll call them in the morning.

3          THE COURT:  I'm not sure you -- that's a good

4     question.  Mr. Street -- so here's what I'm going to do.  I

5     will get off the phone, and everyone else can as well, or I

6     think the government and Federal Defenders can get off the

7     phone, and then Mr. Street can tell you how to be in touch with

8     the *pro se* office and what to ask them and how to be in touch.

9     OK?

10          THE DEFENDANT:  OK.

11          THE COURT:  All right.  This conference is adjourned.

12     Thank you.

13          THE DEFENDANT:  Thank you, your Honor.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25