UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
           :
UNITED STATES OF AMERICA    :      20 Cr. 623 (JSR)
           :
    – v. –    :
           :
WILLIE DENNIS,    :
           :
           Defendant.    :
------------------------------------------------------------X


## THE GOVERNMENT'S MOTIONS *IN LIMINE*


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Sarah L. Kushner
Stephanie Simon
Assistant United States Attorneys
- Of Counsel -

**Table of Contents**

BACKGROUND ..................................................................................................................... 3

ARGUMENT ......................................................................................................................... 5

    I.     The Defendant May Not Litigate Civil Claims Against The Law Firm And Its Partners In This Criminal Case ................................................................................. 5

          A.     Relevant Facts ................................................................................................ 6
          B.     Applicable Law .............................................................................................. 6
          C.     Discussion ...................................................................................................... 7

    II.    The Court Should Preclude Evidence Or Argument That The New York County District Attorney's Office Previously Dismissed Similar Charges Against The Defendant ...................................................................................................... 10

    III.   The Court Should Preclude Evidence Or Argument About Any Aspect Of The Government's Prosecutorial Motives, Conduct, And Investigative Methods In This Case ........................................................................................................................ 11

    IV.   The Court Should Preclude Evidence And Argument Concerning The Potential Punishment Or Consequences Of Conviction ...................................................... 14

    V.    The Court Should Preclude Evidence And Argument Concerning The Defendant's Prior Commission Of "Good Acts" And Failure To Commit Other "Bad Acts" .............................................................................................................. 14

    VI.   The Court Should Preclude Evidence And Argument Concerning The Defendant's Family Background, Parents, Children, Health, Age, Religion, Or Other Personal Attributes Unconnected To Guilt .............................................. 16

CONCLUSION ................................................................................................................... 16

## Table Of Authorities

**Cases**

*Manko v. United States*, No. 95 Civ. 1611 (KMW), 1998 WL 391129 (S.D.N.Y. July 13, 1998), *aff'd*, 63 Fed. Appx. 570 (2d Cir. 2003) ................................................................................ 7

*Rogers v. United States*, 422 U.S. 35 (1975) .................................................................. 14

*Shannon v. United States*, 512 U.S. 573 (1994) ............................................................. 14

*Sparf v. United States*, 156 U.S. 51 (1895) .................................................................... 12

*United States v. Al Kassar*,  660 F.3d 108, 123-124 (2d Cir. 2011) ............................... 15

*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) ............................................... 7

*United States v. Armstrong*, 517 U.S. 456 (1996) .......................................................... 11

*United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ............................................................................................................................ 16

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ............................................. 15

*United States v. Demosthene*, 334 F. Supp. 2d 378 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 899 (2d Cir. 2006) .......................................................................................................... 12

*United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012), *aff'd*, 770 F.3d 160 (2d Cir. 2014) ........................................................................ 15

*United States v. Reese*, 933 F. Supp. 2d 579 (S.D.N.Y. 2013) ....................................... 12

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997) .................................................. 11

*United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (KAM) (E.D.N.Y. Apr. 15, 2015). 15

*United States v. Rodriguez*, 582 F. Supp. 2d 486 (S.D.N.Y. 2008) ............................... 10

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) ..................................................... 15

*United States v. Shkreli*, No. 15 Cr. 637 (KAM), 2017 WL 3623626 (E.D.N.Y. June 24, 2017).. 7

*United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) .. 12

*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997) .................................................. 11

*United States v. Viserto*, 596 F.2d 531 (2d Cir. 1979) ................................................... 10

*United States v. Washington*, 705 F.2d 489 (D.C. Cir. 1983) (per curiam) ................... 12

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law to request rulings on several evidentiary issues in advance of the trial of Willie Dennis (the "defendant"). *First*, the Court should preclude the defendant from attempting to litigate civil claims against his former law firm (the "Law Firm") and its partners in this criminal case because those civil claims are irrelevant to whether the defendant committed the charged conduct in this case and would create a confusing mini-trial within this trial. *Second*, the Court should preclude the defendant from introducing evidence or arguing that the New York County District Attorney's Office previously dismissed similar charges against him because, even if there were such a case, the thought processes of another prosecutor's office are irrelevant and such evidence would risk confusing the jury. *Third*, the Court should preclude the defendant from introducing evidence or arguing about any aspect of the Government's charging decisions and investigative methods because those arguments are properly put before only the Court, and not the jury. *Fourth*, the Court should preclude evidence and argument concerning the potential punishment or consequences of conviction because those issues are not relevant to the defendant's innocence or guilt. *Fifth*, the Court should preclude evidence and argument concerning the defendant's prior commission of "good acts" and failure to commit other "bad acts" because specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one. *Sixth*, the Court should preclude evidence and argument concerning the defendant's family background, parents, children, health, age, religion, or other personal attributes, absent a showing that such factors bear on the issue of guilt.

**BACKGROUND**

The defendant is charged with cyberstalking four of his former colleagues (the "Victims") from the Law Firm based on unrelenting harassing and threatening text messages and emails he

3

sent them over a significant period of time.  At trial, the Government expects to prove—primarily through testimony from Victims and from electronic evidence obtained from the defendant's cellphone, email accounts, and iCloud account, as well as from the Victims' phones—that from at least in or about 2018, through at least in or about 2020, the defendant engaged in a pervasive campaign of harassment, intimidation, and threats directed at his former colleagues, including the Victims in this case.  The defendant, who was an equity partner at the Law Firm's New York office from in or about 2005, until he was terminated on or about May 13, 2019, sent the Victims hundreds of communications, at all hours of the day and night, often in rapid succession.  In some instances, the defendant went so far as to send threatening messages about some of the Victims' family members.  Moreover, in connection with his cyberstalking, the defendant physically stalked and harassed certain Victims in person.

The Government anticipates the Victims will testify at trial that, as a result of the defendant's conduct, the Victims suffered substantial emotional distress and feared for their and their families' physical safety.  One of the Victims who worked at the Law Firm's New York office had to temporarily relocate from New York to another state, and the Law Firm hired private security for that Victim to ensure her safety.  Another Victim changed the location of his parking garage and upgraded his home security system out of fear of what the defendant might do.  Another Victim started keeping a gun under his pillow to protect himself and his family.

On or about October 28, 2020, the defendant was charged by Complaint with four counts of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2, and an arrest warrant was issued.  On or about November 19, 2020, a grand jury returned a four-count Indictment against the defendant on the same charges.  On or about November 16, 2021, pursuant to the arrest warrant in this case, the defendant—a United States citizen—was arrested in and expelled from the

Dominican Republic, where he had been residing since in or about February 2020. On or about November 19, 2021, the defendant was presented in this District on the charges in the Indictment.

The defendant was initially represented by counsel from the Federal Defenders of New York. On or about June 3, 2022, defense counsel informed the Court that the defendant no longer wished to be represented by the Federal Defenders, and instead, wanted to proceed to trial *pro se*. On or about June 28, 2022, after a videoconference, the Court relieved Federal Defenders as counsel for the defendant and granted the defendant's request to proceed *pro se*. The Court also appointed standby counsel for the defendant.

## ARGUMENT

### I. The Defendant May Not Litigate Civil Claims Against The Law Firm And Its Partners In This Criminal Case

If the defendant presents a defense case, the Court should preclude the defendant from introducing any evidence, or making any arguments, attempting to prove the merits of the civil employment discrimination claims he has filed against the Law Firm and certain of its employees in civil litigation (the "Civil Litigation"). Although it is permissible for the defendant to cross-examine Government witnesses with appropriate questions regarding any potential motive, bias, or impeachment, including the fact that the defendant is currently suing the Law Firm and certain of its employees, the allegations themselves are not evidence. Even if the allegations were true, employment discrimination or retaliation is not a defense to cyberstalking charges. Finally, even if any such evidence were relevant, it should be excluded because any probative value it has is far outweighed by the risk of jury confusion and undue delay. The Court should preclude the defendant from creating a mini-trial within this trial regarding his civil employment discrimination claims.

### A. Relevant Facts

On or about November 9, 2020, the defendant filed a civil lawsuit in this District against the Law Firm and eight of its employees, one of whom is a Victim in this case. *Dennis v. K&L Gates*, 20 Civ. 9393 (MKV), Dkt. No. 1. On or about March 22, 2021, the defendant filed an amended complaint against the Law Firm and the same eight employees, alleging claims arising from his termination from the Law Firm. (*Id.*, Dkt. No. 34.) In that civil suit, the defendant alleges race discrimination and retaliation by the Law Firm, in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964; the New York State Human Rights Law; and the New York City Human Rights Law; and related common law claims of negligent hiring, training, retention, and supervision; unjust enrichment; and intentional infliction of emotional distress. (*Id.*) On or about March 24, 2021, Judge Vyskocil issued an order staying that civil suit pending the resolution of an arbitration in the District of Colombia involving the same parties and allegations. (*Id.*, Dkt. No. 35.)[1]

### B. Applicable Law

The admissibility of evidence at trial is governed by the Federal Rules of Evidence. Federal Rule of Evidence 402 requires that evidence be relevant to be admissible. Pursuant to Federal Rule of Evidence 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *United States v. Shkreli*, No. 15 Cr. 637 (KAM), 2017 WL 3623626, at *2 (E.D.N.Y. June 24, 2017) (quoting Fed. R. Evid. 401). While Rule 401 sets a "low standard for relevance," *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008), a court's "determination of what

---

[1] For purposes of this memorandum, the term "Civil Litigation" refers to the SDNY case before Judge Vyskocil and the parallel arbitration matter in D.C.

constitutes 'relevant evidence' is guided by the nature of the claims and defenses presented." *Shkreli*, 2017 WL 3623626, at *2. "[I]n order to be relevant, evidence [must] . . . have an incremental effect on the probability of a 'consequential fact.'" *Manko v. United States*, No. 95 Civ. 1611 (KMW), 1998 WL 391129, at *7 (S.D.N.Y. July 13, 1998), *aff'd*, 63 Fed. Appx. 570 (2d Cir. 2003). Even if relevant, evidence may be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay." Fed. R. Evid. 403.

### C. Discussion

In the Civil Litigation—which the defendant initiated in November 2020, after much of the offense conduct in this case occurred—the defendant alleges that the Law Firm and certain of its partners wrongfully terminated and retaliated against the defendant based on his race and his purported status as a whistleblower on alleged sexual harassment within the firm. Based on prior statements that the defendant has made in this case, *see, e.g.*, Ex. A (May 24, 2022 Email from W. Dennis to Federal Defender Neil Kelly),[2] the Government anticipates that the defendant may seek to argue at trial that testimony and evidence about the allegations that he has asserted in the Civil Litigation are necessary to put the communications at issue in this case into context.[3] That is

---

[2] The Government has redacted the following types of information from the Exhibits attached to this memorandum: information that identifies third parties whose names are not part of the public record in this case and direct contact information for attorneys who have never been or are no longer counsel of record in this case.

[3] For example, in a letter from the defendant to the Court, dated August 3, 2022, the defendant argued that he needs to present certain witness testimony "to demonstrate the context of the emails on which [his] indictment is based," and that he "will be deprived of any reasonable opportunity to defend [himself] unless [he] can present the context of [his] emails, which includes the misconduct of the Firm's leadership group," which, the defendant alleges, "was not only violating my contractual rights but discriminating against [the defendant] across several bases, and . . . subverting the rights and best interests of the Firm and its partners and employees." Ex. B.

wrong. While there may be a proper basis on cross-examination for asking witnesses about the Civil Litigation, including, for example, cross-examining Victims about any potential bias that may stem from the fact that the defendant is suing the Law Firm and one of the Victims, the defendant may not try to substantively prove through this trial the claims that he is asserting in the Civil Litigation.

As an initial matter, mere allegations are not evidence. The Civil Litigation is still in preliminary stages. The defendant has merely *filed* employment-related claims against the Law Firm and certain of its employees. No civil discovery has been exchanged in the Civil Litigation and it is unlikely that either matter will proceed while this criminal case is pending. The SDNY civil case has been stayed pending resolution of the arbitration, and the arbitration has been stayed, in part, to avoid interfering with this criminal case. Accordingly, the defendant should be precluded from introducing evidence or arguing about his own, self-serving, unproven allegations in the Civil Litigation.

In any event, even if it were true that the defendant was discriminated or unlawfully retaliated against by the Law Firm or the one Victim named in the Civil Litigation, that is not a defense to cyberstalking. It does not somehow transform the defendant's cyberstalking into lawful conduct or shed any light on his intent in sending non-stop text messages and emails to the Victims. The defendant may argue that evidence of alleged discrimination or retaliation is necessary to put the at-issue communications into context. But that broad, general assertion is insufficient to render evidence of discrimination or retaliation relevant in any way. At a minimum, the Court should preclude any such evidence or argument absent a specific showing by the defendant that evidence of a particular alleged act of discrimination or retaliation is relevant to a particular text message or email he sent a Victim.

Based on the evidence, it is unlikely that the defendant will be able to make such a showing. The Government expects that the evidence will show that the Victims did not respond to or otherwise invite in any way the unrelenting communications that they received from the defendant. The defendant's constant, unanswered text messages and emails speak for themselves. No evidence of discrimination or retaliation by the Law Firm or its partners will change the purpose and import of those communications. Such evidence is even less relevant with respect to the many text messages and emails that the defendant sent following his termination from the Law Firm. Any unlawful employment discrimination or retaliation that the defendant allegedly experienced at the Law Firm would have had to occur while the defendant was still working at the Law Firm. The defendant was fired on May 13, 2019. Accordingly, with respect to the many texts and emails that the defendant sent after May 13, 2019, the defendant cannot establish that evidence of the Law Firm and its partners' alleged discrimination and retaliation against him is at all relevant in order for the jury to understand the context in which those messages were sent.

Finally, even if evidence of discrimination or retaliation by the Law Firm was relevant under Rule 401, any probative value it would have would be far outweighed by the risk of jury confusion and undue delay.[4] That is because any such evidence or arguments could lead to a mini-trial on the civil allegations and would divert the jury's attention from the only issue in this case: whether the defendant unlawfully stalked, using a facility of interstate commerce, the Victims.

---

[4] The defendant has requested permission, and the Court has authorized the defendant, to issue Rule 17 subpoenas to approximately 36 different individuals. At this stage, it is not clear whether the defendant plans on calling any of those individuals as witnesses at trial, but if he does, the Government will likely move to preclude their testimony and/or any evidence that the defendant may seek to introduce through them that bears solely on the merits of the defendant's discrimination and retaliation claims in the Civil Litigation. The defendant should not be allowed to call witnesses to testify at this criminal trial to try to prove his claims in the Civil Litigation.

Allowing the defendant to litigate his civil claims through this criminal case would be improper. Accordingly, the defendant should also be precluded under Rule 403 from introducing this type of evidence or argument.

## II. The Court Should Preclude Evidence Or Argument That The New York County District Attorney's Office Previously Dismissed Similar Charges Against The Defendant

At the June 28 conference, the defendant claimed that the New York County District Attorney's Office previously dismissed similar charges to those brought against him in this case. (Dkt. No. 57 at 13.)  The defendant should be precluded from introducing any evidence or argument at trial about that purported prior case.  As an initial matter, the Government is not aware of any such case or dismissal.  But even it were true, the fact of such dismissal is irrelevant and should not be introduced at this trial.  It is well-settled that the dismissal of criminal charges is evidence of nothing.  A prosecutor's office may dismiss its charges for any number of reasons that may have nothing to do with the strength of the evidence against the defendant.  That is especially true where, as here, there is no evidence to suggest that any state charges were dismissed as a result of any determination by the prosecutor or a court on the merits.  *See United States v. Rodriguez*, 582 F. Supp. 2d 486, 487 (S.D.N.Y. 2008).  Even if the state had brought charges against the defendant and then determined that those charges lacked merit, evidence of the dismissal of those state charges would still be irrelevant.  *See id.*; *see also United States v. Viserto*, 596 F.2d 531, 536-537 (2d Cir. 1979) (finding evidence of defendant's acquittal on related charges inadmissible to rebut the charges in the instant case).  It is for the jury to decide whether the evidence at trial establishes the defendant's guilt beyond a reasonable doubt, and a prosecutor's charging decision has no bearing on that evidence.  An alleged dismissal of state charges holds no significance

whatsoever, and the defendant should be precluded from offering any such evidence that may confuse the jury.

### III. The Court Should Preclude Evidence Or Argument About Any Aspect Of The Government's Prosecutorial Motives, Conduct, And Investigative Methods In This Case

The defendant should be precluded from offering evidence or argument at trial about the Government's motives and conduct in prosecuting him or the investigative and prosecutorial methods that the Government used in this case.

It is well-settled that a claim of improper prosecutorial motive, whatever its ground or grounds, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Such a claim is self-evidently "unrelated to factual innocence of the crime charged," which is the sole issue to be decided by the jury, and, as a result, the Court alone must resolve it. *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997). Moreover, any evidence or argument concerning the reasons for, methods used in, or timing of a defendant's arrest and prosecution is irrelevant to the proper issues at trial, and serves no purpose other than to distract the jury from the evidence of the defendant's guilt. It is also improper because it would invite, at best, confusion or, more likely, encourage jury nullification, which a court must take every effort to prevent. *See United States v. Thomas*, 116 F.3d 606, 614-615 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court"; jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent"); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also Sparf v. United States*, 156 U.S. 51,

101 (1895) ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves."); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power."); *United States v. Reese*, 933 F. Supp. 2d 579, 583-584 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and the overall propriety of the Government's investigation); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (noting that the defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case"), *aff'd*, 173 F. App'x 899 (2d Cir. 2006); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant).

In prior statements made to the Government and the Court, the defendant has implied (1) that the Government has had an unfair advantage in preparing for trial because it had already been investigating the defendant for a year when the defendant was arrested in and first learned about this case, (2) that the Government violated his rights by conducting a covert investigation, without notifying him, and (3) that the Government improperly obtained an indictment against him. For example, in an email to the Federal Defenders and the Government, dated June 22, 2022, which the defendant also sent the Court by overnight mail, the defendant stated:

> The Department of Justice already has received more than a year longer than me to prepare for trial. The 'sealed' indictment was handed down on **October 28, 2020,** without me ever being interviewed. I first learned of the indictment on **November 18, 2022**. . . .
>
> I respectfully request the Courtv [sic] to consider wether [sic] the United States Attorney for the Southern District, Damian Williams, had sufficent [sic] time to review and consider the merits of the sealed indictment dated **October 28, 2020** before moving forward. Mr [sic] Williams was appointed on **October 27, 2021.** Less than 30 days later, action was being taken with respect to the October 28, 2020 sealed indictment. . . . Moreiver [sic] It [sic] appears, and I respectfully and humbly requests [sic] the Court to consider in making its determination, from the January 6th congressional hearings that the Department of Justice was **'ethically challenged'** during the period. ( October 28, 2020 ) [sic] which was seven days before Election Day., [sic] during which the 'sealed indictment' was obtained.

Ex. C. The defendant should be precluded at trial from introducing any evidence or making any arguments in this vein.

There is nothing improper about the fact that the Government's investigation was not public until the defendant was located and arrested in this case. Moreover, any challenge to the legality of the indictment is for the Court, not the jury, to decide. Accordingly, any evidence or argument concerning the Government's investigation and prosecution of the defendant must be precluded because it is irrelevant to the issues before the jury and would confuse the jury, distract from the relevant evidence at trial, and improperly encourage the jury to make or decline to make a decision about the defendant's innocence or guilt on an improper basis. The defendant remains free to make arguments to the jury about the weight and/or the quality of the proof that the Government offers at trial to the extent that it bears on his guilt or innocence, but he may not put the motivations or conduct of prosecutors or law enforcement agents in issue in order to invite the jury to acquit based on alleged governmental misconduct.

**IV.     The Court Should Preclude Evidence And Argument Concerning The Potential Punishment Or Consequences Of Conviction**

The defendant should be precluded from offering evidence or argument concerning the potential punishment or consequences that he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* There is no proper basis for the defendant to put these issues before the jury in any form, and the defendant should not be permitted to offer evidence or argument inviting the jury to consider them. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. at 9-10) ("anything that adverts to possible punishments, including possibility of incarceration, however obliquely, is improper and will not be permitted," including, for example, a statement in opening or closing arguments that the defendant's "liberty is at stake," which would be "a not-so-thinly veiled reference to the prospect of incarceration, which is altogether improper").

**V.     The Court Should Preclude Evidence And Argument Concerning The Defendant's Prior Commission Of "Good Acts" And Failure To Commit Other "Bad Acts"**

To the extent that the defendant may seek to present evidence or argument concerning his prior commission of alleged "good acts" or to offer evidence of his non-criminal activities, he should be precluded from doing so. Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897

14

F.2d 63, 70 (2d Cir. 1990). Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) and 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014). "Furthermore, pursuant to Federal Rule of Evidence 403, a district court may exclude evidence of a defendant's prior good acts if it finds that any minimal probative value of such evidence is outweighed by the likelihood of jury confusion and the risk of jury nullification." *Rivera*, 2015 WL 1725991, at *2; *see United States v. Al Kassar*, 660 F.3d 108, 123-124 (2d Cir. 2011).

      Applying this well-settled case law here, the defendant should be precluded from offering evidence or argument, including in his opening statement, concerning any involvement in any organizations, any charitable, community service, or philanthropic work, or any other specific instance or instances of prior alleged good or public-oriented acts, or the lack of commission of other bad acts, or his lack of criminal history. Nor should the defendant be permitted to suggest that any prior achievements make it less likely that he committed the charged crimes.

15

**VI.    The Court Should Preclude Evidence And Argument Concerning The Defendant's Family Background, Parents, Children, Health, Age, Religion, Or Other Personal Attributes Unconnected To Guilt**

The defendant should be precluded from offering evidence and argument concerning his family background, parents, children, health, age, religion, or other personal attributes, absent a showing that such factors bear on guilt. *See, e.g.*, *United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of [d]efendant's family and personal status" as not "relevant to the issue of whether [d]efendant committed the crimes charged"). Such evidence is irrelevant to the jury's determination of guilt and therefore should be precluded.

## CONCLUSION

For the foregoing reasons, the Government's motions should be granted.

Dated:   New York, New York
         August 12, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
for the Southern District of New York

By:  _____
Sarah L. Kushner
Stephanie Simon
Assistant United States Attorneys
(212) 637-2676/(914) 993-1920