UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                     :

UNITED STATES OF AMERICA            :            20 Cr. 623 (JSR)

                  *– v. –*                :

                                       :

WILLIE DENNIS,                        :

                                       :

                        Defendant.      :
------------------------------------------------------------ X

## **THE GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE***

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Sarah L. Kushner
Stephanie Simon
Assistant United States Attorneys
- Of Counsel -

**Table of Contents**

ARGUMENT ............................................................................................................. 1

    I.      Evidence Of The Defendant's Other Harassing Behavior Should Be
Admitted ................................................................................................................... 1

            A.      Applicable Law ................................................................................. 2

            B.      Discussion ........................................................................................ 4

    II.      The Court Should Permit The Government To Introduce Limited
Background Testimony Regarding The Defendant's Firing From The Law Firm ............. 7

    III.    Warnings Sent To The Defendant Are Not Hearsay And Are Admissible ............ 9

    IV.    The Court Should Preclude Any Evidence Or Argument About The
Government's Charging Decisions In This Case ............................................................ 11

    V.     The Defendant Should Be Precluded From Cross-Examination On Topics
That Are Irrelevant And Do Not Bear On Witness Credibility ....................................... 13

            A.      Applicable Law ............................................................................... 13

            B.      Discussion ...................................................................................... 15

CONCLUSION ........................................................................................................ 17

## Table of Authorities

### Cases

*Crawford v. Washington*, 541 U.S. 36 (2004) ............................................................ 10

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ..................................................... 13, 14

*Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253 (2d Cir. 1999) ............................ 15

*United States v. Agostini*, 280 F. Supp. 2d 260 (S.D.N.Y. 2003) ............................... 16

*United States v. Bellomo*, 176 F.3d 580 (1999) ......................................................... 11

*United States v. Brennan*, 798 F.2d 581 (2d Cir. 1986) ............................................... 3

*United States v. Colon*, 880 F.2d 650 (2d Cir. 1989) ................................................... 3

*United States v. Crowley*, 318 F.3d 401 (2d Cir.), *cert. denied*, 540 U.S. 894 (2003) ........... 14, 15

*United States v. Cummings*, 858 F.3d 763 (2d Cir. 2017) ............................................ 6

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ................................................ 3, 4

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) ............................................. 11

*United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002) ............................................ 15

*United States v. Gambardella*, No. 10 Cr. 674 (KBF), 2011 WL 6314198 (S.D.N.Y. Dec. 15, 2011) ...................................................................................................... 15

*United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993) ............................................. 3, 6

*United States v. Laljie*, 184 F.3d 180 (2d Cir 1999) ................................................. 13

*United States v. Levy*, 731 F.2d 997 (2d Cir. 1984) ..................................................... 6

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991) ........................................................................................................ 13, 14

*United States v. Massino*, 546 F.3d 123 (2d Cir. 2008) ............................................... 4

*United States v. Paulino*, 445 F.3d 211 (2d. Cir. 2006) ............................................ 10

*United States v. Pedroza*, 750 F.2d 187 (2d Cir. 1984) ............................................ 10

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) .......................................... 15

*United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007) ........................................ 2, 10

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990) ............................................... 3

*United States v. Reyes*, 18 F.3d 65 (2d Cir. 1994) ................................................... 10

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ............................... 6, 14

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ........................................... 13, 14

*United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066 (S.D.N.Y. Feb. 27, 2009) ... 14

*United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir. 1985) ............................... 10

*United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL 1947503 (S.D.N.Y. May 13, 2021) .... 6

*United States v. Towne*, 870 F.2d 880 (2d Cir. 1989) ............................................................. 2, 5

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993) ............................................................. 3

## **Statutes**

Fed. R. Evid. 403 ..................................................................................................................... 3

Fed. R. Evid. 608(b) ............................................................................................................... 14

Fed. R. Evid. 611(a) ............................................................................................................... 13

Fed. R. Evid. 611(b) ............................................................................................................... 13

Fed. R. Evid. 801(c) ............................................................................................................... 10

## PRELIMINARY STATEMENT

The Government respectfully submits this supplemental memorandum of law to request the following rulings on additional evidentiary issues in advance of the trial of Willie Dennis (the "defendant").

1. The Court should admit evidence of the defendant's physical stalking and harassing messages to others as direct evidence of the charged crimes or, in the alternative, under Federal Rule of Evidence 404(b), to establish the defendant's motive, knowledge, intent, plan, preparation, identity, and absence of mistake or accident.

2. The Court should admit into evidence limited facts regarding the revocation of the defendant's access to the offices of his former law firm (the "Law Firm") and to the Law Firm's email and IT systems; and the defendant's firing from the Law Firm to complete the narrative necessary to understand the evidence.

3. The Court should admit into evidence specific written warnings and a cease and desist letter that the Law Firm sent the defendant in response to his relentless messages.

4. The Court should preclude any evidence or argument about the Government's charging decisions in this case.

5. The Court should preclude the defendant from cross-examining witnesses from the Law Firm on topics that are irrelevant and do not bear on their credibility.

The relevant background is set forth in the Government's initial motions *in limine*, filed on August 12, 2022, and incorporated by reference here, including all defined terms.  (Dkt. No. 75.)

## ARGUMENT

### I.   Evidence Of The Defendant's Other Harassing Behavior Should Be Admitted

The Government seeks to introduce evidence that (1) while cyberstalking his Victims, the defendant also physically stalked some of them, and (2) the defendant engaged in a campaign of harassing Law Firm employees that was not limited to the Victims referenced in the Indictment. Specifically, the Government anticipates that:

- Victim-1 will testify that after the defendant's physical access to the Law Firm had

1

been blocked, Victim-1 saw the defendant lurking near the Law Firm's office very early in the morning;

- Vicitm-2 will testify that in June 2019, the defendant physically accosted him and verbally berated him at a professional conference in Washington, D.C., and that the defendant followed him at a different professional conference in New Orleans in February 2020;

- Victim-4 will testify that, after the defendant was expelled from the Law Firm, the defendant confronted her at a deli near the Law Firm's New York office; and

- Several of the Victims and the Law Firm's General Counsel will testify that they learned the defendant was sending threatening messages to even more partners of the Law Firm, and that this conduct impacted their reactions to the defendant's conduct towards them.

This is direct evidence of, and inextricably intertwined with, the charged conduct.   In the alternative, such evidence is admissible under Rule 404(b) to establish the defendant's knowledge, intent, plan, preparation, identity, and lack of accident or mistake.

### A.  Applicable Law

Evidence of "uncharged criminal activity is not considered 'other crimes' evidence … if it arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial." *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (alterations in original).   In such circumstances, the uncharged crime evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act. *See United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (internal citation omitted).

In the alternative, evidence of "other acts" is admissible under Rule 404(b) if it is (1) advanced for a proper purpose, such as to prove "motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident"; (2) relevant to the crimes for which

the defendant is on trial; and (3) has probative value which is not substantially outweighed by any

unfair prejudicial effect.  If requested, such evidence must be admitted with limiting instructions

to the jury.  *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v.*

*Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (citations omitted).  The Second Circuit follows an

"inclusionary" approach, which means that "evidence of prior crimes, wrongs, or acts is admissible

for any purpose other than to show a defendant's criminal propensity.'"  *United States v. Brennan*,

798 F.2d 581, 589 (2d Cir. 1986); *see also United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011).

Rule 404(b) provides that "such evidence may properly show motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident, . . . but this list is not

exhaustive."  *Curley*, 639 F.3d at 57 (quotation and citations omitted).

Evidence of another criminal act that is "sufficiently similar to the conduct at issue" may

be admitted at trial "to show that a defendant who claims that his conduct had an innocent

explanation had the knowledge or intent necessary to commit the charged offense."  *United States*

*v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (citation omitted).  A defendant's knowledge and

intent are in issue unless the defendant has expressed with sufficient clarity a decision not to

dispute that element of the offense.  *See United States v. Colon*, 880 F.2d 650, 656-57 (2d Cir.

1989).  If the evidence is relevant, the district court must determine if its potential for unfair

prejudice substantially outweighs its probative value.  *See* Fed. R. Evid. 403.  "The evidence's

probative value depends largely on whether or not there is a close parallel between the crime

charged and the acts shown."  *Curley*, 639 F.3d at 57 (internal quotation marks and citation

omitted).  "Evidence is unfairly prejudicial when 'it tends to have some adverse effect upon a

defendant beyond tending to prove the fact or issue that justified its admission into evidence.'" *Id.* (quoting *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008)).

### B.  Discussion

Evidence that the defendant physically stalked certain Victims and was observed near the New York office even after he was barred from the premises and after he was fired is direct evidence of the charged crimes.  Such actions, which occurred in conjunction with the defendant's sending or attempting to send the Victims thousands of text messages and emails, arose out of the same "course of conduct" charged in the Indictment—that is, the defendant's scheme to harass and intimidate the Victims.  Those incidents demonstrate the defendant's intent to harass the Victims, and contributed to the emotional distress and visceral fear that the Victims experienced as they received the defendant's harassing electronic messages.  As a result, it is inextricably intertwined with the defendant's cyberstalking scheme against those Victims, and will be necessary to complete story of the crime on trial.

Likewise, evidence of the threatening emails and text messages the defendant sent to Law Firm partners other than the Victims is also part of the charged conduct.  Several of the Victims will testify that they saw or otherwise learned of threatening communications to others, in addition to those that they were receiving, and that contributed to their fear of the defendant and the actions they took in response.[1]  Moreover, some of the messages the defendant sent to other partners at

---

[1] For example, the Government expects that one of the non-Victim witnesses (the General Counsel of the Law Firm) will testify that he learned about the emails and text messages the defendant was sending to the Victims and other employees of the Law Firm, and that the General Counsel took certain steps to protect Law Firm employees after learning that collective information, including arranging security services around the Law Firm's New York office.  Such testimony is not hearsay, because the Government is not offering testimony concerning these communications for their truth, but rather to show the witnesses' states of minds and to explain their next steps, including steps taken to protect themselves from the perceived danger posed by the defendant.

the Law Firm contain statements about the Victims, and reference certain of the defendant's in-person encounters with the Victims.  These additional messages written by the defendant therefore provide important context for the Victims' testimony, and will be "necessary to complete the story of the crime [on] trial."  *Towne*, 870 F.2d at 886.

Evidence of the defendant's physical stalking of his Victims and the defendant's harassing messages to additional Law Firm partners are also admissible in the alternative under Rule 404(b) to show the defendant's knowledge, intent, plan, preparation, identity, and lack of accident or mistake.  The Government expects that the Victims will testify that their unexpected physical encounters with the defendant, and their knowledge that he was doing the same to others, exacerbated the Victims' fears about the extent of the defendant's harassment of them and their families, including the possibility of physical harm.  Those encounters also prove the defendant's identity, demonstrating that it was the defendant, and no one else, who sent the Victims the disturbing electronic communications at issue in this case, and that such communications were not sent by accident or mistake.  Finally, these physical encounters undermine any assertion that the defendant did not intend to instill fear in the Victims or cause them substantial emotional distress.

Likewise, the defendant's harassing messages to even more Law Firm partners, in addition to the Victims, show the defendant's intent to harass, the scope of his plan to intimidate the Law Firm and its partnership, his extensive preparation to do so, his clear identity, and the lack of accident or mistake.  Given the similarities and overlap between the defendant's communications to the Victims and his communications to other partners at the Law Firm, evidence of the defendant's cyberstalking of the Victims goes directly to his knowledge and intent to cyberstalk the Victims.  Where, as here, there is a "close parallel between the crime charged and the acts shown," courts have routinely found that the other bad acts were probative and admissible under

Rule 404(b) to show knowledge and intent. *Gordon*, 987 F.2d at 909; *United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL 1947503, at *10 (S.D.N.Y. May 13, 2021) (finding that prior instance of kidnapping was "sufficiently similar to have significant probative value regarding [the defendant's] intent and knowledge"). And evidence of the defendant's cyberstalking of others at the Law Firm undermines any defense that the defendant's communications to the Victims were innocent and not intended to threaten, harass, or intimidate, or were sent by mistake.

Evidence of the defendant's physical encounters with the Victims during the relevant time frame, and of the defendant's harassing messages to Law Firm partners other than the Victims, is no more inflammatory or sensational than the crimes with which the defendant is charged. The charged conduct in this case includes the defendant's use of racial slurs and references to the Holocaust in written communications to the Victims. Where, as here, "the evidence is no more sensational or disturbing than the crimes with which the defendant is charged," the "concerns regarding the potential prejudicial effect of Rule 404(b) evidence are mitigated." *Torres*, 2021 WL 1947503, at *11 (quoting *United States v. Cummings*, 858 F.3d 763, 778 (2d Cir. 2017)) (internal quotation marks omitted); *see also United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) ("evidence, which represented only a tiny fraction of the testimony heard by the jury, and did not involve conduct any more sensational or disturbing than the crimes . . . charged . . . did not . . . warrant exclusion"). Moreover, the defendant included both Victims and non-witness victims in some of the same text message threads. Therefore, the jury will learn about non-witness victims and certain communications that they, along with the Victims, received from the defendant regardless of whether or not this additional evidence comes in. To the extent there could be any risk of unfair prejudice, it can be properly addressed through a limiting instruction. *See United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984).

6

## II. The Court Should Permit The Government To Introduce Limited Background Testimony Regarding The Defendant's Firing From The Law Firm

The Court should permit the Government to introduce the limited facts that (1) the defendant's access to the premises and the email systems of the Law Firm was revoked on or about January 30, 2019, and (2) the defendant was terminated from the Law Firm by a firmwide partnership vote on or about May 13, 2019.  Knowledge of those events is necessary context for the jury to understand the meaning and intent of the defendant's conduct towards his Victims.

Beginning in or about late 2018 and continuing into in or about January 2019, the defendant, from his work email, sent numerous harassing and disruptive emails to Law Firm partners.  The Government expects that the General Counsel will testify that in or about January 2019, he sent the defendant several warnings to stop sending such emails.  The defendant ignored those warnings, however, and continued his campaign of cyberstalking.  Accordingly, on or about January 30, 2019, the Law Firm revoked the defendant's access to his work email and barred him from the physical premises of the Law Firm, in an attempt to halt the defendant's conduct.

After the defendant was locked out of his Law Firm email on or about January 30, 2019, the defendant started sending the Law Firm hundreds of emails from a personal Gmail account. As soon as the Law Firm blocked that Gmail account, the defendant created a new one; indeed, the Government expects that evidence from a Google custodian will establish that, during the relevant time period, the defendant created several different Gmail accounts from which he continued to email the Victims and other members of the Law Firm.  In a vicious cycle, the defendant created a new account each time the Law Firm identified and blocked him.  The background of the defendant's revocation of access and banning by the Law Firm is necessary context to understanding the defendant's malicious intent in using these multiple accounts to

7

circumvent the Law Firm's controls, and how the defendant was on notice that his communications were unwanted and harassing.

The fact that the defendant was terminated from the Law Firm on or about May 13, 2019 is also essential context for the jury to understand the evidence in this case. First, the defendant's expulsion from the Law Firm, in part due to the relentless campaign of harassing messages that the defendant was sending to the Victims, is probative of the fact that the defendant was placed on notice in stark terms—through permanent loss of employment—that those messages were harassing in their volume and content. Second, this limited evidence establishes that as of May 13, 2019, the defendant had no legitimate business reason to be constantly messaging his former colleagues, to be showing up at professional conferences that he knew would be attended by members of the Law Firm, or to be lingering near the Law Firm's New York office. Yet, in June 2019, for example, the defendant sent more than 487 emails to members of the Law Firm, and showed up at a professional conference where he harassed—both in person and online—one of the Victims in this case. Third, the defendant's own messages repeatedly allude to his firing, and the Government anticipates that the evidence and testimony will establish that the defendant's campaign of harassment against the Victims and other members of the Law Firm was part of the defendant's ongoing effort to extort the Law Firm for millions of dollars. Specifically, before the defendant was terminated, the Law Firm attempted to negotiate a settlement for the defendant to leave voluntarily. The defendant, however, demanded $20 million. The Government expects that the defendant's own messages will show that his cyberstalking scheme was motivated in part by the fact that the defendant hoped that the Law Firm would pay his demanded sum to stop the harassment. In other words, this evidence is relevant to show motive.

The Government does not intend to introduce evidence regarding various other derogatory factors that culminated in the defendant's termination from the Law Firm, such as his poor work performance—he was barely billing 90 hours a year as an equity partner at a major global law firm—and the fact that a judge presiding over the defendant's divorce proceeding was threatening to hold the defendant in contempt and imprison him for failing to pay child support.[2]  Accordingly, the Government should be permitted to introduce the above limited, sanitized evidence of the defendant's termination from the Law Firm as necessary background information to explain the direct evidence to the jury.

### III.    Warnings Sent To The Defendant Are Not Hearsay And Are Admissible

The Government intends to introduce communications sent on behalf of the Law Firm by testifying witnesses and others to the defendant instructing the defendant to cease his harassing communications (the "Warnings").  Specifically, the Government intends to introduce emails from the Law Firm's General Counsel (a testifying witness) and the Deputy General Counsel (a non-testifying witness), stating that the Law Firm considered the messages that the defendant was sending employees of the Law Firm harassing and instructing the defendant to stop.  *See* Exs. A-C.  The Government also intends to offer a formal cease and desist letter, sent from the Law Firm's counsel to the defendant, again warning the defendant that his communications were viewed as harassing and instructing the defendant to cease such communications immediately.  *See* Ex. D.[3] Such evidence is not hearsay because they consist of instructions, not statements, and any

---

[2] The Government will not introduce evidence regarding the other reasons that the defendant was fired unless the defendant puts the bases for his termination at issue during cross-examination or otherwise.

[3] Exhibits A through D were previously produced to the defendant on or about January 18, 2022, and again on or about September 21, 2022.

statements contained therein are not offered for the truth of the matter asserted, but rather to show that the defendant was repeatedly placed on notice that his messages were perceived as harassing, intimidating, and threatening to the recipients.

### A. Applicable Law

Hearsay is an out-of-court statement admitted for the truth of the matter asserted.  *See* Fed. R. Evid. 801(c); *Quinones*, 511 F.3d at 312.  An out-of-court statement that is not offered for the truth of the matter asserted is not hearsay, however, and may be admitted if relevant for another proper purpose.  For example, where an out-of-court statement "show[s] the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed," the statement is not hearsay and is therefore admissible.  *United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984) (citations omitted); *see also United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985) ("[a] state of mind can be proved circumstantially by statements . . . which are not intended to assert the truth of the fact being proved" (internal quotation marks and citation omitted)); *cf. United States v. Paulino*, 445 F.3d 211, 216-17 (2d. Cir. 2006) (statements offered for the non-hearsay purpose of establishing context or background do not implicate the Confrontation Clause).  The Supreme Court has explained that admission of non-hearsay, even if testimonial, does not implicate the Confrontation Clause.  *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).  If the statement is otherwise admissible, the court must determine "whether the probative value of this evidence for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement."  *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994).

### B.  Discussion

The Warnings were commands to the defendant, not statements.  To the extent the Warnings contain statements in part, for example, characterizing the defendant's conduct, those statements are being offered not for their truth, but rather for their effect on the recipient, the defendant.  Accordingly, they are not hearsay.  *See United States v. Bellomo*, 176 F.3d 580, 586 (1999) ("Statements offered as evidence of commands . . . rather than for the truth of the matter asserted therein, are not hearsay."); *United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) (holding that the trial court erred in refusing to admit out-of-court instruction on hearsay grounds, explaining that "an order, *i.e.*, an imperative rather than a declarative statement, . . . offered not for its truth, but for the fact that it was said" is "not hearsay," but ultimately concluding that the court did not abuse its discretion in refusing to admit the statement on relevancy grounds).  Finally, the danger of unfair prejudice from those statements, which, as noted, will in many cases be echoed by other evidence, does not outweigh their probative value for a non-hearsay purpose.

### IV.  The Court Should Preclude Any Evidence Or Argument About The Government's Charging Decisions In This Case

As set forth in the Government's initial motions *in limine* (Dkt. No. 75 at 12-14), the defendant should be precluded from offering evidence or argument at trial about the Government's motives in prosecuting him.  In recent weeks, the defendant has made it clear that he intends to argue at trial that the Indictment against him is unlawful because it was obtained as a result of (1) "policital [sic] influence imposed on the Southern District of New York," and (2) a "conspiracy of KL Gates and its clients to engineer [the] indictment," and served Rule 17(c) subpoenas relating to an alleged cyberattack by the Chinese Communist Party on the Law Firm's servers in Asia.  *See*

11

Exs. E-F.[4]  The Government's motion to preclude should apply to any evidence or arguments that the Indictment in this case was improperly motivated by politics, a conspiracy between or among the Law Firm and its clients, or any alleged cyberattack by the Chinese Communist Party.

None of the allegations above are relevant to the issues in this case.  And any evidence or argument concerning the motive behind the Government's prosecution of the defendant or implying that the Government's prosecution was improperly motivated by outside forces would confuse the jury, distract from the relevant issues and evidence at trial, and improperly encourage the jury to decide the case on an improper basis.  The defendant remains free to make arguments to the jury about the weight and/or the quality of the proof that the Government offers at trial to the extent that it bears on his guilt or innocence, but he may not put the motivations or conduct of prosecutors or law enforcement agents in issue, which would invite the jury to acquit based on alleged governmental misconduct.  Nor may he invite the jury to acquit based on alleged improper efforts by the Law Firm or its clients to convince the Government to prosecute the defendant.[5]

---

[4] The Government is only attaching the portions of these emails that are relevant to this motion.

[5] For reasons that the Court explained on the phone conference on September 23, 2022, the defendant should also be precluded from introducing any evidence or making any arguments about the "no-contact list" that was proposed in connection with the defendant's bail conditions.  *See* Sept. 23 Tr. at 12 (the Court explaining that "the matter regarding the no-contact list has either nothing to do with the trial or is at best tangential.  The question that Mr. Dennis is raising is whether the no-contact list was in some sense engineered by other people, and even assuming that were so, that has nothing to do with the trial.").

## V.    The Defendant Should Be Precluded From Cross-Examination On Topics That Are Irrelevant And Do Not Bear On Witness Credibility

The defendant should be precluded from cross-examining witnesses on the following subjects:

(1) their compensation or wealth, or (2) instances of alleged poor work performance.  Neither of

those topics are relevant nor have any bearing on any witness's truthfulness.

### A.  Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees the right of a defendant in

a criminal case to be confronted with the witnesses against him.  *See, e.g.*, *Delaware v. Van Arsdall*,

475 U.S. 673, 678 (1986).  "This means more than being allowed to confront the witness

physically, for the main and essential purpose of confrontation is to secure for the opponent the

opportunity of cross examination."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 955 (2d Cir.

1990), *cert. denied*, 501 U.S. 1233 (1991) (internal quotation marks, citations, and emphasis

omitted).  "[T]he scope and extent of cross-examination," however, "lies within the sound

discretion of the trial judge."  *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990).  As the

Supreme Court has explained:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned
> to impose reasonable limits on such cross-examination [of a prosecution witness]
> based on concerns about, among other things, harassment, prejudice, confusion of
> the issues, the witness' safety, or interrogation that is repetitive or only marginally
> relevant. . . .  [T]he Confrontation Clause guarantees an opportunity for effective
> cross-examination, not cross examination that is effective in whatever way, and to
> whatever extent, the defense might wish.

*Van Arsdall*, 475 U.S. at 679 (quotation and citation omitted); *accord United States v. Laljie*, 184

F.3d 180, 192 (2d Cir 1999); *see also* Fed. R. Evid. 611(a) (noting that courts "shall exercise

reasonable control" over cross-examination to "avoid wasting time" and to "protect witnesses from

harassment or undue embarrassment") and 611(b) (limiting scope of cross-examination of

witnesses to subject matter of direct examination and matters affecting credibility of witnesses). "As long as a defendant's right to confront the witnesses against him is not violated, limitations on cross-examination are not grounds for reversal," *Roldan-Zapata*, 916 F.2d at 806, and "[t]he decision of the trial court to restrict cross-examination will not be reversed on appeal unless its broad discretion has been abused," *Maldonado-Rivera*, 922 F.2d at 956.

"[A] trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." *Scarpa*, 913 F.2d at 1018 (quotation omitted). "'Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Crowley*, 318 F.3d 401, 417 (2d Cir.), *cert. denied*, 540 U.S. 894 (2003) (quoting *Van Arsdall*, 475 U.S. at 679).

Rule 608(b) "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." *United States v. Schlussel*, No. 08 Cr. 694 (JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009) (citation omitted). Moreover, Rule 608(b) "prohibits a party from presenting 'extrinsic evidence' of '[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility,' unless that conduct was the subject of a criminal conviction." *Crowley*, 318 F.3d at 417 (alteration in original) (citation omitted); *see also* Fed. R. Evid. 608(b). "Further, under [Federal Rule of Evidence] 403, the district court may exclude even relevant evidence if it finds that the probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

14

evidence." *Crowley*, 318 F.3d at 417 (quoting *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002)); *see also, e.g.*, *United States v. Gambardella*, No. 10 Cr. 674 (KBF), 2011 WL 6314198, at *2 (S.D.N.Y. Dec. 15, 2011) (precluding cross examination on witness's prior acts of domestic violence where its probative value would be substantially outweighed by the danger of prejudice before the jury).

### B. Discussion

Cross-examination relating to witnesses' compensation or wealth, and alleged poor work performance should be precluded as irrelevant to the issues in this case and the witnesses' credibility. Even if such topics were marginally relevant, which they are not, testimony about them would primarily, if not solely, serve the purpose of harassing the Victims and other Law Firm witnesses, and would be unfairly prejudicial.

First, the defendant should be precluded from cross-examining the Victims and other Law Firm witnesses concerning their compensation or wealth. That information has no bearing on the charged offenses. Questioning on such topics would serve only to make the Victims and other Law Firm witnesses appear unsympathetic to the jury, and deviate into irrelevant claims raised by the defendant's Civil Lawsuit. *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (observing that "evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations," but holding such evidence was appropriately admitted in that case because it was probative of facts relating to elements of the crimes charged); *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) (to be relevant for impeachment purposes, evidence of a witness's wealth "must actually be inconsistent with the witness['s] testimony").

Second, the defendant should be precluded from cross-examining the Victims and other Law Firm witnesses concerning instances of alleged poor work performance. In many text

messages and emails sent to the Victims and to other Law Firm partners, the defendant alleges that certain partners at the Law Firm had made various professional errors, or were otherwise bad at their jobs. For example, in text messages to Victim-3, the defendant has called into question why Victim-3 left his former law firm: "Have you told the Firm lawyers why you really left [the former law firm] ? What really happened there ? Or did you lie ..like you lied about me." Several other messages from the defendant to Victim-3 similarly reference that former law firm, implying that Victim-3 was involved in some wrongdoing there. Further, in emails and text messages to Victim-1, the defendant has suggested that Victim-1 failed to carry his weight in his position at the Law Firm and failed to generate sufficient revenues for the Law Firm.

Evidence of or testimony about any of those topics has the "potential for substantial prejudice" because it "may be viewed as reflecting poorly on [the witness's] character and influence the jury to a point of distraction from the matter about which [the witness may be] called on to testify." *United States v. Agostini*, 280 F. Supp. 2d 260, 261-62 (S.D.N.Y. 2003). Such evidence has no bearing on the witnesses' credibility, as the Government is not aware of any allegation of poor work performance on the part of the Victims and other Law Firm witnesses suggestive of a lack of honesty. Nor is such evidence relevant to the charged conduct—in other words, it does not make it more or less likely that the defendant stalked his victims. And testimony on such topics would be confusing for the jury, who would not have the context to assess the veracity of any allegations of poor work performance, and waste the jury's time.

Cross-examination on the topics described above is not probative of any material issue before the jury and could create an unfair prejudice against the Victims and other Law Firm witnesses. As a result, those topics should be precluded.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Government's motion should be granted.

Dated: New York, New York
       September 27, 2022

                         Respectfully submitted,

                         DAMIAN WILLIAMS
                         United States Attorney
                         for the Southern District of New York

       By: _____
                         Sarah L. Kushner/Stephanie Simon
                         Assistant United States Attorneys
                         (212) 637-2676/(914) 993-1920

17