1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20 CR 623 (JSR)

5   WILLIE DENNIS,

6              Defendant.               Conference
    ------------------------------x

7
                                        New York, N.Y.
8                                       October 7, 2022
                                        11:10 a.m.
9

10  Before:

11
                        HON. JED S. RAKOFF,
12
                                        District Judge
13
                            APPEARANCES
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  SARAH L. KUSHNER
         KIMBERLY RAVENER
17       STEPHANIE SIMON
         Assistant United States Attorneys
18
    WILLIE DENNIS, Defendant Pro Se
19
    Also Present:
20  Michael Mueller
    Hadassa Waxman
21

22

23

24

25

1              (Case called)

2              MS. KUSHNER:  Good morning, your Honor, Sarah Kushner,

3    Stephanie Simon, and Kimberly Ravener for the government.

4              THE COURT:  Good morning.

5              Mr. Dennis, can you hear me?

6              THE DEFENDANT:  Yes, your Honor, I can hear you.

7    Willie Dennis here.

8              THE COURT:  Excellent.

9              Then we have some lawyers with respect to certain of

10   the subpoenas.

11             Before we deal with the motions *in limine*, we will

12   deal with the two outstanding subpoena issues.

13             THE DEFENDANT:  Your Honor, I would like, before we

14   begin the proceedings, make a motion to dismiss.  I move to

15   dismiss the indictment on two bases.

16             First, I have a constitutional right to confront my

17   accusers, but quashing the subpoenas of K&L Gates' executive

18   management team has denied me that right of confrontation.  K&L

19   Gates' executive management team were the ones who triggered

20   the indictment against me.  They were the persons whose conduct

21   I was complaining about because they were harming both the firm

22   and, second, squashing the subpoena deprived me of proving

23   my -- the statute reads that I must show that I have intent to

24   injure or harass.  The statute states basically once -- the

25   government put prove my intent to kill, injure, harass,

1  intimidate, or place under surveillance with intent to kill,

2  injure, or harass or intimidate another person using emails.

3  The top count against me requires proof beyond a reasonable

4  doubt that it was my intent in sending these emails to

5  intimidate or cause fear in the recipients.  That was never my

6  intent.  I was trying to serve the firm's best interests and

7  protect my financial rights.

8          The executive team expelled me from the firm,

9  violating multiple provisions of the firm's bylaws, because I

10  insisted on remedying gender discrimination, sexual

11  discrimination, race discrimination, and poor management.

12          The objective proof of my intent is the business

13  conduct, the multiple acts of mismanagement which justified my

14  emails.  Without that context, a jury will simply read the

15  emails and count the number sent.  They will rely on the

16  content of the message without any content to understand it.

17          Just days before trial I have no counsel, no evidence,

18  and no lawyers.  I will only be able to sit and listen to the

19  prosecution talk about my intent with no ability to explain the

20  truth to the jury.

21          As evidence of this, I point to the fact that, as the

22  Court has recognized, that in the sealed indictment, in the

23  first footnote, it says that:  Between on or about September 4,

24  2019 and/or about September 20, 2019, Mr. Dennis sent at least

25  approximately 200 written communications to the victim and

1    other members of the law firm.

2         The Court also knows that, on September 4, armed New

3    York City Police Officers were sent to my home at 10:30 at

4    night in order to deliver a threat to me not to send any more

5    emails.

6         The Court is also aware from the documents that K&L

7    Gates, in September 2019, also sent Chicago police officers,

8    off-duty Chicago police officers, to surveil me at a conference

9    at the Marriott Hotel.

10        So the only person who has actually been put in

11   physical harm's way has been me and my family with armed people

12   around us.  The only way that the officer would come to my home

13   was basically as a result of K&L Gates' management team filing

14   a complaint which ultimately the district attorney's office

15   declined to prosecute.

16        That night, if something would have happened to me, as

17   we have seen in the news over the last two years, if I had been

18   shot, then this would be a very different story.  Luckily, I

19   was not.  But to have it happen again with armed men around me

20   in September in Chicago, luckily, again, I was not injured.

21        Now, the district attorney's office essentially said

22   to me that we are going to decline to prosecute.  But you have

23   the ability to tell your story as to these incidences, and we

24   can decide whether we investigate.

25        At this point I'm not even being allowed to question

1    the individuals who authorized these activities which put me in

2    physical harm and the big part of the context in which me

3    emails were sent.  We will talk about the emails and how they

4    felt like they were intimidating, I was actually -- my family

5    members and I were actually in harm's way.

6         THE COURT:  Thank you, Mr. Dennis, for arguing the

7    motion.  I should note for the record that Mr. Dennis, at his

8    request, is appearing here by video today.

9         The motion is denied.  With respect to the first prong

10   in the motion confronting accusers, of course that means that

11   at trial you get to cross-examine and confront those who are

12   being called as government witnesses against you, and of course

13   Mr. Dennis will have that full right.

14        With respect to the question of intent, that is, in

15   this case, as in most cases, a jury question.  The government

16   asserts, and the grand jury has found, that there is probable

17   cause to believe that Mr. Dennis acted with criminal intent,

18   but Mr. Dennis firmly denies that and will have the opportunity

19   to make that denial, either if he takes the stand, or even if

20   he doesn't take the stand, which of course is his

21   constitutional right to do, to either take the stand or not

22   take the stand, both protected by the Constitution.  He will be

23   able to either call other witnesses or, through

24   cross-examination and argument, present his view of his intent.

25        The motion is denied.

1                    Let's now turn --

2                    THE DEFENDANT:  Your Honor, just for the record, to be

3        clear, my accusers are not coming to court.  They will not be

4        in the courtroom that day.  So I will not have an

5        opportunity --

6                    THE COURT:  You misunderstand the law in this area.

7        Of course you have chosen, as is your right, to appear *pro se*.

8        But I would ask you, since you are a lawyer, even though you

9        are not a trial lawyer, to take a look at the relevant

10       decisions of the Supreme Court.  This includes the *Crawford*

11       case, the *Melendez Diaz* case, and a whole bunch of cases that

12       define what is meant by the right to confront your accuser.

13       Then you would realize that it doesn't mean that you have a

14       right to confront someone who happened to go to the government

15       with a complaint against you, but rather that you have a right

16       to confront those people who testify against you at trial.  You

17       might want to take a look at those cases.

18                    I think we need to move on, Mr. Dennis.

19                    You had requested that we postpone until today the

20       motion to quash your subpoena against Lawrence Platt.  I

21       granted your request.

22                    Let me hear now first from counsel for Mr. Platt, who

23       should go to the rostrum and identify herself.

24                    MS. WAXMAN:  Thank you very much, your Honor, this is

25       Hadassa Waxman for movant Lawrence Platt, and I respectfully

1    request that your Honor quash the subpoena served on Mr. Platt

2    by Mr. Dennis.

3         Your Honor, Mr. Platt left the K&L Gates law firm in

4    2016 and has had zero contact with the defendant since that

5    time other than a handful of emails that Mr. Dennis sent to

6    Mr. Platt in or about 2021 to which Mr. Platt did not respond.

7    Therefore, Mr. Platt does not and indeed cannot have any

8    information that is relevant to any issue here at trial or any

9    issue relevant to Mr. Dennis' defense.

10        On that basis, your Honor, we respectfully request

11   that you quash the subpoena to Mr. Platt.

12        THE COURT:  Mr. Dennis.

13        THE DEFENDANT:  I think the first point that I'll

14   make, your Honor, was that Mr. Platt was included on my witness

15   list in the civil case before Judge Wojkowski.  By including

16   Mr. Platt on the no-contact list, I was effectively precluded

17   from talking to Mr. Platt directly myself.

18        As a result of him being included in the non-contact

19   list, the only way I've been able to contact him was by issuing

20   a subpoena to him where he otherwise would have been, in my

21   opinion, a favorable witness to me.  But the government, again,

22   prevented me from contacting him by adding him onto the

23   no-contact list.

24        So from that vantage point, the one point I'll ask the

25   Court is, since the Court has squashed the subpoenas with

1   respect to the other people and the Court has essentially said

2   that the no-contact list has no value or not sure why the

3   government has made this list, I would like for the Court to

4   immediately make it null and void so I could begin to talk to

5   the people on that list.

6          THE COURT:  Excuse me.  Let me interrupt you.

7          You anticipated the issue I was going to raise.  I had

8   invited you repeatedly to make a motion with respect to the

9   no-contact list itself, and I take it you are now making that

10  motion, and we will consider that motion then in a minute.

11         But what I hear you saying is that really you have, as

12  was the case with the other subpoenas, you now are dropping

13  your demand for the document part of the subpoena and all

14  you're really interested in is whether you can call Mr. Platt

15  as a witness at trial.  Is that right?

16         THE DEFENDANT:  Yes.  May I further address -- one of

17  the reasons why I would like Mr. Platt's testimony is because,

18  as a former member of the executive committee, I am -- I would

19  like for him to testify to the fact that we discussed as to

20  whether the firm, K&L Gates, has ever filed a criminal

21  complaint against a partner which resulted in police going to

22  his home at 10:30 at night.

23         THE COURT:  Excuse me, because we have got to move

24  this on.  As I made clear in our last conference, this hearing

25  today must be concluded by 1:00 because I have to perform a

1    wedding in upstate New York.

2         So to move things along, I doubt very, very much that

3    any of that evidence would be admissible at trial, but let's

4    keep things separate.

5         The first thing I want to address is that now that

6    Mr. Dennis has finally made a motion to strike the no-contact

7    list, let me hear from the government, and then we will come

8    back to counsel for Mr. Platt.

9         Let me hear from the government how this list came

10   about and what your position is with respect to the list.

11   Because this all occurred when this case was before Judge

12   Schofield.

13        MS. KUSHNER:  Thank you, Judge.  Would you like me to

14   go to the podium?

15        THE COURT:  You can stay there.

16        MS. KUSHNER:  So the list was compiled in consultation

17   with the FBI based on the defendant's own emails that the

18   government had already obtained pursuant to search warrants as

19   of November 2021, as well as text messages that the government

20   had obtained from victims' cell phones.  At that time we did

21   not yet have the defendant's own phone.  But this was all based

22   on the defendant's own words and contact with these third

23   parties who did not respond to these unwanted emails.

24        THE COURT:  So is this ordered by Judge Schofield?

25        MS. KUSHNER:  Judge, it was ordered by --

1             THE COURT:  Mr. Dennis, let her finish.

2             Go ahead.

3             MS. KUSHNER:  It was ordered by Judge Wang after what

4    was a two-plus-hour bail hearing where the defendant was

5    directed not to have any contact with current or former

6    employees of K&L Gates, which of course would include Lawrence

7    Platt here, as well as additional names that the government

8    said it would promptly provide to both defense and pretrial

9    services.

10            THE COURT:  Let's take the immediate case, which is

11   Mr. Platt.  The assertion by Mr. Dennis is that this is someone

12   who he believes could give favorable testimony to him and that

13   for that reason it was included in his witness list that was

14   submitted to the American Association of Arbitration in

15   connection with the civil case and that it would be helpful to

16   him to at least reach out to Mr. Platt.  Mr. Platt, of course,

17   can tell him that he doesn't want to talk to him or have any

18   contact with him.

19            But his point, Mr. Dennis' point, is that before he

20   can call a witness at trial, he at least would like the

21   opportunity with respect to someone who he believes would have

22   favorable evidence to make contact with him.

23            Now, I can see why that might have been premature at

24   the time Judge Wang issued this order.  But now that we are so

25   close to trial and Mr. Dennis needs to make his final

1  determination of who, if anyone, he wants to call on his

2  behalf, it's hard for me to see why he should be precluded from

3  at least trying to make contact with those people.  I have a

4  feeling they may choose not to talk to him, which is their

5  right, but I don't see why he should be precluded from this

6  opportunity.  Indeed, as I pointed out to him many times, I

7  invited him to make this motion even earlier, but now he has

8  made it.

9      MS. KUSHNER:  Your Honor, first off, the government

10  would ask that the defendant proffer why he believes Mr. Platt

11  has any favorable evidence.

12      THE COURT:  Why does he have to do that?  Let's take a

13  normal case.  Even if a defendant was precluded, as part of a

14  bail condition, from having any contact with a prospective

15  witness because of other concerns, his or her counsel would

16  typically not be so precluded and that counsel wouldn't have to

17  tell the government up front why he or she wanted to contact

18  that person, which might reveal defense strategy.  They could

19  just do it.  Of course there is this oddity here that

20  Mr. Dennis, in what I can only consider an exercise of poor

21  judgment, has decided to represent himself, but that's his

22  right.

23      THE DEFENDANT:  Your Honor, I would like to object --

24      THE COURT:  Excuse me, Mr. Dennis.  I am going to

25  finish my statement, as I let you finish yours earlier, and

1    then I will hear from you.

2          THE DEFENDANT:  Thank you, your Honor.

3          THE COURT:  I don't see why he should at this stage be

4    precluded from contacting Mr. Platt.

5          MS. KUSHNER:  Your Honor, based on the government's

6    evidence, the fact that Mr. Platt was a recipient of harassing

7    and threatening text messages from the defendant, if the

8    defendant is given permission, we would ask that any contact to

9    Mr. Platt be through Mr. Platt's counsel, at least in the first

10   instance, and not to him directly.

11         THE COURT:  Well, we will hear from counsel in a

12   minute, but that has nothing to do with you.  You are not

13   Mr. Platt's counsel.  It sounds to me like what you are doing

14   is seeking to enforce, even at this late date, the no-contact

15   order of Judge Wang.  While I would have to consider that

16   individually with respect to various witnesses, with respect to

17   Mr. Platt, I am going to vacate the order and allow Mr. Dennis

18   to contact Mr. Platt, if his counsel so permits.

19         Now let's turn to counsel.  Just so you will

20   understand this, Mr. Dennis, no one can ever contact someone

21   who is represented by counsel except by first contacting their

22   counsel.  I'm sure you know that from your own practice.  While

23   I have removed effective immediately the no-contact order with

24   respect to Mr. Platt, that means you still have to make contact

25   initially through his counsel.  Let me hear from his counsel.

1              MS. WAXMAN:  Thank you very much, your Honor.

2         I would ask Mr. Dennis not to make any contact with,

3    whether it be by email, text message, phone call, or personal

4    visit to Mr. Platt.  My understanding, based on discussions

5    with Mr. Platt, is that he does not wish to speak to

6    Mr. Dennis.

7         Just to give context, your Honor, it seems, from

8    Mr. Dennis' representations earlier, he would like Mr. Platt to

9    testify about whether seven years ago the management committee

10   filed a criminal complaint against another partner at the firm.

11   That itself, your Honor, I would submit, is not relevant.

12        In any event, of course, no management committee at

13   any law firm has any authority to file a criminal complaint.

14   So I cannot imagine Mr. Platt would have any relevant evidence

15   to Mr. Dennis, and, as such, I would request that Mr. Dennis

16   not make any contact with Mr. Platt.

17             THE COURT:  Here is my ruling.

18             THE DEFENDANT:  Your Honor, you said you were going to

19   give me a chance to respond.

20             THE COURT:  I'm sorry, yes.  I'm sorry, Mr. Dennis.

21   Go ahead.

22             THE DEFENDANT:  I think that what we are looking at is

23   now we are effectively -- number one, as I raised before, I had

24   raised this issue with Mr. Kelly of the Federal Defenders, this

25   no-contact list, in which I asked him to approach the

1   government about dealing with this and understanding why these

2   individuals were on there.  As a result of them being on there,

3   I was prevented from having any conversation with them until

4   now.

5          Your Honor has entered into the record repeatedly that

6   he has asked me or given me the opportunity to make an

7   application to the Court.  But what your Honor doesn't seem to

8   recognize in his remarks is that the reason why I'm

9   representing myself *pro se* is because I have no funds, because

10  the government had me with an ankle bracelet and under home

11  detention during this whole period, a very draconian treatment

12  for someone 60 years of age who has no criminal record.  This

13  prevented me from having any funds to hire counsel.

14         What I also point out to the Court is that the Court

15  has said, Mr. Dennis, you have the opportunity to make an

16  application.  When I say I'm representing myself *pro se*, what I

17  mean is, it's just me and my iPad and my mother and father.

18  The government has four attorneys on this matter, two

19  paralegals, including Damian Williams, helping them.  Everyone

20  else has a number of lawyers, and they have their paralegals

21  and they have their assistants.  When I talk about representing

22  myself, the detriment to me is not having the resources that

23  the other parties have.

24         So making an application or doing anything else in

25  this case is not just simply me being able to do it, but me

1    having the resources around me to be able to effectively carry

2    this out.  I would have had attorneys if I would have funds in

3    which to use attorneys for.

4         The other thing I want to make sure is on the record,

5    I completely agree with your Honor that I would like to have

6    had counsel that I could have retained, but it's clear on the

7    record that the government, and the Department of Justice knows

8    it, they made that impossible for me.

9         I object to your comment that you have a feeling that

10   Mr. Platt would not want to respond to me.  It's our

11   relationship that we have.  I don't know how the Court has come

12   to that conclusion, that he wasn't.

13        I think, most importantly, what we are seeing in this

14   whole process is this no-contact list has been used to deny me

15   access for almost an entire year and now, days before trial,

16   seven days before trial, now, all of a sudden, these witnesses

17   become available to me.  That's patently unfair to me during

18   this whole process.

19        And what we see is that the witnesses that we

20   discussed, in terms of subpoenas that have been quashed, on the

21   one hand, the no-contact list doesn't mean anything.  On the

22   other hand, it has done me a serious injustice as far as me

23   preparing for trial, because I didn't have access to a lot of

24   people.  Now people are speculating that they don't want to

25   talk to me.  We don't know that, and we would have been able to

1    resolve this if the Federal Defenders in New York had done what

2    I asked them to do in December of 2021.

3        THE COURT:  Some of this has been covered in previous

4    conferences, and I'll just note for the record that of course

5    many criminal defendants are indigent and, under the

6    Constitution, they then get counsel appointed free of charge,

7    as was done in this case, through the Federal Defenders, and it

8    was Mr. Dennis who made the decision to fire the Federal

9    Defenders and to proceed *pro se*.

10       Notwithstanding that, Judge Schofield, though not

11   required to, appointed a member of this Court's Criminal

12   Justice Act panel to assist him as standby counsel, and he

13   fired that counsel.  And then I appointed still another member

14   of the Criminal Justice Act panel to act as his standby

15   counsel, and he fired that counsel.  This was a choice that he

16   made repeatedly and voluntarily.

17       But here is my ruling on the motion pending about the

18   no contact with Mr. Platt.

19       Mr. Dennis is still free to reach out to Mr. Platt's

20   counsel and to try to convince her that he should be able to

21   have contact with Mr. Platt or that, through counsel, Mr. Platt

22   can provide answers to his questions.  She may agree to that.

23   She may disagree to that.  That's between her, her client, and

24   Mr. Dennis.  But I will permit Mr. Dennis to have contact with

25   Ms. Waxman with respect to the possibility of Mr. Platt

1    testifying at trial.  With that qualification, the subpoena is

2    otherwise quashed.

3            MS. WAXMAN:  Thank you, your Honor.

4            THE COURT:  Let's turn next to the subpoena against

5    Mr. Michael Mueller.

6            Would counsel for Mr. Mueller please identify himself.

7            MR. MUELLER:  Thank you, your Honor.  My name is

8    Michael Todd Mueller, and my firm is the Mueller Law Firm.

9            THE COURT:  You're moving to quash the subpoena

10   against you.

11           MR. MUELLER:  Yes, your Honor.  I am the counsel for

12   Mr. Dennis' exwife.  I was retained in 2017, some five years

13   ago, to enforce a 2015 judgment regarding unpaid child support

14   and spousal support.

15           During the last five years, there may have been nine

16   motions filed.  The most recent was settled about a year ago,

17   but the disputes continue.

18           And everything that Mr. Dennis asks for is germane to

19   my representation of Ms. Bailey, and it would be highly

20   prejudicial to provide these privileged documents to him which

21   he could then use against my client.  I believe, based on

22   privilege alone, he is not entitled to my work product relating

23   to a postjudgment divorce action.

24           I have also read some of the minutes from this case.

25   I'm not a federal trial attorney.  But it also appears to me

1  that everything he has asked for is not relevant to his defense

2  of whether he did or not send harassing text messages.

3      THE COURT:  Before I hear from Mr. Dennis, the first

4  item on his subpoena to you is "all information provided by K&L

5  Gates to you in Bailey v. Dennis in the Supreme Court of the

6  State of New York from January 2019 through and including the

7  date of Mr. Dennis' illegal expulsion from K&L Gates, which was

8  not subject to a subpoena or Mr. Dennis' consent."

9      Now, it may not be the most artfully worded request,

10  but I don't see how it calls for privileged documents.  It

11  calls for documents that were provided to you by K&L Gates.

12  Where is any attorney-client privilege involved?

13      MR. MUELLER:  Some of those documents related or

14  requests by K&L Gates over their concerns of privilege relating

15  to Mr. Dennis --

16      THE COURT:  You are not here to assert their

17  privilege.

18      MR. MUELLER:  Your Honor, I know.

19      Also, all documents that I have sent to or requested

20  of K&L Gates related to my enforcement of my client's divorce

21  judgment, including, but not limited --

22      THE COURT:  First of all, he is asking in this first

23  request not for things you sent but things that they sent you.

24  Secondly, anything you sent them would also not be privileged

25  once it was disclosed to a third party.

1          So I think, at least as to the first argument you're

2     making, and perhaps as to other of the communications called

3     for in this subpoena, your privilege argument is frivolous and

4     denied.

5          However, I'm at a loss to see any of the relevance of

6     any of this to the upcoming trial.

7          Let me ask Mr. Dennis, what's the relevance?

8          THE DEFENDANT:  The relevance, your Honor, once again,

9     establishing the context in what my emails were -- your Honor,

10    by the way, do you hear static when I'm talking?

11         THE COURT:  No.

12         THE DEFENDANT:  OK.  It's coming clear to you because

13    my parents and I, we are hearing static whenever I start

14    speaking on our end.

15         THE COURT:  I'm not hearing it on my end, and you are

16    coming through loud and clear.  Go ahead.

17         THE DEFENDANT:  Once again, in establishing the

18    context in which my emails were sent, this is all -- we are

19    still referring to 2019.  Essentially, the context is that some

20    of my emails related to K&L Gates giving confidential

21    information to my exwife's attorney without my knowledge or

22    permission or consent.

23         THE COURT:  So that might be conceivably relevant to

24    your civil case, but what has that to do with the criminal

25    case?

1          THE DEFENDANT:  Once again, the criminal case, I have

2     to show the context in which my emails were sent.  My emails

3     were sent in that context of asking them to please provide me

4     with copies of the documents they said that they sent, asking

5     them to please tell me why they sent it, in violation of all

6     legal standards.  So that's the context.  They have

7     basically -- again, this is another area -- similar to where

8     emails were sent relating to asking them why they sent police

9     to my home, this is another area where they criminalize

10    legitimate communication.

11         THE COURT:  I'm sorry.  I don't see that any of this

12    has any relevance to the criminal case, so the motion to quash

13    is granted.

14         MR. MUELLER:  Thank you, your Honor.

15         THE DEFENDANT:  I just want to add to the record then.

16         At this point the Court has quashed every subpoena for

17    every witness that I have sought.  The Court has quashed every

18    subpoena relating to K&L Gates bringing guns -- having police

19    officers, armed police officers, coming to my home at night.

20    They squashing subpoena relating to K&L Gates giving

21    confidential information to my exwife's attorney without

22    providing me copies.  That context is what -- I want to have

23    witnesses to show that context in which my emails were being

24    sent, and I think that's materially adverse to me.

25         THE COURT:  I'm sorry you disagree with the Court's

1    rulings, but the Court's rulings stand.

2          Let's turn to the motions *in limine*.

3          The government has filed a bunch of motions *in limine*.

4    The defense did not respond.  Under my rules, the defendant

5    should have responded a week ago, but I'm not going to stand on

6    that ceremony, and I will give Mr. Dennis an opportunity now to

7    respond as we go through the individual motions *in limine*.

8          Let me start with the ones that I think are, frankly,

9    open and shut, and then we will turn to the ones that may

10   require further argument.

11         With respect to the government's motion to preclude

12   the defendant from introducing evidence or arguing at the

13   criminal trial that the New York County District Attorney's

14   Office previously dismissed similar charges against him, while

15   I would think the law is crystal clear that that argument and

16   in evidence is not admissible in a criminal trial,

17   nevertheless, if there is anything you wanted to say about

18   that, Mr. Dennis, this is your opportunity.

19         THE DEFENDANT:  Your Honor, as I've stated in the

20   record before, in May of 2020, the District Attorney's Office

21   of New York declined to indict me on charges similar to the

22   ones that were brought in October of 2020, four months later.

23   The threshold for indictment on the state level is lower than

24   the threshold for the indictment on the federal level.

25         Now, as I have mentioned in my papers, the former U.S.

1    Attorney for the Southern District, Mr. Berman, has made an

2    allegation that there was serious political influence in the

3    Southern District after he was forced out of office between

4    June of 2020 and December of 2020.  My indictment was filed on

5    October 28, 2020, which happened to be, obviously, a few days

6    from the election.  And what has been very public is that at

7    that time the Justice Department was undergoing some serious

8    ethical issues.

9            Since then, Senator Durbin has said that he has begun

10   an investigation into the activities of the Southern District

11   during the exact period of time when this indictment was filed

12   against me.  As I have said in my papers before, given the

13   resources of the Department of Justice, I find it very, very

14   difficult to believe that they would move forward on an

15   indictment where the state, on a much less stringent threshold,

16   decided not to, that they would do so without some sort of

17   political influence, they would dedicate resources to a case of

18   this type.

19           So I think it's important and in looking at,

20   quote/unquote, what I have called the source of the conspiracy,

21   which is not any longer -- the former U.S. Attorney for the

22   Southern District saying, no, things were not done the way they

23   typically were done, and it needs to be investigated.

24   Understanding that only -- or someone like a Rosemary Alito,

25   whose brother, Samuel Alito, sits on the Supreme Court of New

1    York, would have the ability or could have the ability, so

2    could Jenny Thomas, of being able to influence the Southern

3    District to bring a case based on an email harassment of former

4    partners that the state refused to prosecute.

5            THE COURT:  As you say, you have previously brought to

6    the attention of the Court your conspiracy theory.  But I think

7    you're missing the narrow point of this motion.  Whatever the

8    prosecutorial decisions, either of another prosecutorial office

9    or of, for that matter, the U.S. Attorney's Office in bringing

10   an indictment, is totally irrelevant to the criminal case

11   brought against you.

12           Indeed, I don't even allow in my practice as a judge

13   the indictment to be presented to the jury.  I explain to them

14   what the charges are in short form.  But I say to them, an

15   indictment is not evidence.  A charge is not evidence.  The

16   defendant is presumed innocent until and unless the government

17   has established to the satisfaction of this jury his or her

18   guilt beyond a reasonable doubt.  So all of this is irrelevant

19   to the trial.

20           So the motion to preclude the defendant from

21   introducing evidence or arguing that the New York County

22   District Attorney's Office previously dismissed similar charges

23   against him is granted, and, similarly, the government's motion

24   to preclude the defendant from introducing evidence or arguing

25   any aspect of the government's prosecutorial motives and

1    investigative methods is granted.

2         The next motion.

3         THE DEFENDANT:  Your Honor, before we leave that, just

4    so I understand -- what am I able to say about these facts?  Am

5    I able to say, for example, to a jury that police officers came

6    to my home in September of 2019, stating that I had

7    basically -- was being accused by my partners of harassment and

8    that they failed to deliver me papers, or any complaint at that

9    time?  Am I able to say that?

10        THE COURT:  Certainly you are not able to say that in

11   your role as a lawyer.  If you take the stand and testify as a

12   witness, I'm not going to rule yet whether you could bring that

13   to the attention of the jury or not.  I'd have to consider it

14   against the context of the entire previous proceedings at

15   trial.

16        But as a lawyer, like in your opening statements or

17   your summation, you cannot say that.  But you possibly could,

18   I'm not ruling one way or the other, possibly could bring that

19   up in your -- if you take the stand.  But of course you may not

20   want to take the stand.  That's totally your choice.

21        THE DEFENDANT:  Just so I'm clear, a lawyer could

22   not -- if I had a separate lawyer representing me, they could

23   not say, we are going to go through some of the things that

24   occurred to Mr. Dennis and his prior law firm, and we are going

25   to talk -- some of the things that occurred were the following

1  different things that occurred.

2        THE COURT:  That's right.  He could not, and I'll tell

3  you why.  A lawyer cannot in argument, either on opening or

4  closing argument, refer to matters that are not in evidence and

5  that are unlikely to come into evidence, and this is unlikely

6  to come into evidence.

7        So the way it would work if you were represented by

8  separate counsel, is, you cannot say one word about this on

9  opening statement because of the unlikelihood it would come

10  into evidence.  If, nevertheless, the Court was ultimately

11  persuaded to allow you to bring this into evidence, then you

12  could, in your closing argument, refer to it, but only if it

13  had come into evidence.  That's because a lawyer can never

14  refer to facts that are not part of the evidence or that are

15  not likely to come into evidence.

16        Since you're representing yourself, when you are in

17  your role as a lawyer, you have to abide by the rules governing

18  the lawyer.  And if you do take the stand, you will abide by

19  the very different rules that apply to someone who is

20  testifying.

21        Let me give you a more --

22        THE DEFENDANT:  Can I ask you one question, your

23  Honor, just so I'm clear?

24        THE COURT:  Yes.

25        THE DEFENDANT:  It's very likely -- is it very likely

1    that the jury will never, ever hear about the fact that police

2    officers came to my home?

3            THE COURT:  That's probably right, yeah.

4            THE DEFENDANT:  And that police officers had me under

5    surveillance under a contract by K&L Gates.  That wouldn't come

6    into evidence?

7            THE COURT:  I don't know of any criminal trial where

8    that has ever come into evidence before the jury.  There are

9    occasionally cases where motions are made pretrial regarding

10   alleged police misconduct and those are treated as pretrial

11   motions.  And the Court either, if it is persuaded there was

12   misconduct, may dismiss or narrow the indictment.  And if the

13   Court is not persuaded, then that's binding, but it doesn't

14   come up at trial.  It never comes up at trial, Mr. Dennis.  I'm

15   sorry.

16           THE DEFENDANT:  Your Honor, I just get emotional

17   because my family was in danger that night.  I'm sorry that no

18   one seems to understand that.  It was at my home and police

19   officers coming to my home at night.  And we have seen people

20   die.  So I'm sorry if I keep harping on this, that no one ever

21   will know this, that these police officers came at 10:00 at

22   night.

23           THE COURT:  Let's move on.

24           The next motion is that the defendant is precluded

25   from producing evidence and argument about the potential

1   consequences of conviction.  That, of course, is also

2   well-established law.  In every criminal case in this country

3   every judge tells the jury in their instructions that the

4   question of punishment is for the Court, not for the jury, and

5   they should not consider it in any way, shape, or form.

6          Unless you have something contrary to that law which

7   has been the law of the United States for 200 years,

8   Mr. Dennis, I'm inclined to grant that motion.

9          THE DEFENDANT:  I am just so flabbergasted.  No one is

10  going to know that police officers came to my house at the

11  request of K&L Gates.  I'm flabbergasted.

12         THE COURT:  I'm sorry that you are not familiar with

13  the law of the United States.

14         Let's go on to the next motion.  The previous one is

15  granted.

16         The motion is to preclude the defendant from producing

17  evidence and argument concerning his commission of good acts

18  and failure to commit bad acts.  This refers to not the facts

19  of this case, but in general, so-called propensity evidence.

20         Just to move this along, because these are familiar

21  areas, that motion is granted with the proviso that if the

22  government opens the door through some of their witnesses, if,

23  for example, some witness were to blurt out, even though not

24  asked to do so by the government, oh, we always thought

25  Mr. Dennis is a bad guy, that would open the door, in my view,

1    to his introducing some evidence that he's really a good guy.

2    So I just want to make clear -- that's really true of all my

3    rulings here today.  All my rulings excluding evidence are

4    subject to the qualification that if the door is opened, then

5    they may be revisited.

6            The next motion is:  Defendant is precluded from

7    introducing evidence and argument concerning his family

8    background, parents, children, health, age, religion, or other

9    personal attributes.

10           Now, I think the law on that is also quite clear.  If

11   Mr. Dennis takes the stand, if he chooses, which is totally his

12   choice to testify, then much of that background is admissible

13   under well-established Supreme Court precedent.  If he doesn't

14   take the stand, then virtually all of that is inadmissible.

15           And the reason for that, says the Supreme Court of the

16   United States in decisions that, again, go back at least 50

17   years, probably longer, is that the jury has a right to know

18   about the general background of someone who is testifying and

19   that is relevant to their assessing the credibility and

20   meaningfulness of the testimony.

21           Mr. Dennis, you cannot get into any of that in your

22   argument as a lawyer, but if you do take the stand, you can get

23   into at least some of that.

24           The next motion is that the defendant is precluded

25   from attempting to litigate civil claims against his former

1  firm and its partners, referring to the civil case that has

2  been stayed.  The motion, as propounded, is a little vague.

3  But in the government's supplemental papers the government says

4  this, and this is at page 5 of the government's motions *in*

5  *limine* brief:  "Although it is permissible for the defendant to

6  cross-examine government witnesses with appropriate questions

7  regarding any potential motive, bias, or impeachment, including

8  the fact that the defendant is currently suing the law firm and

9  certain of its employees, the allegations themselves are not

10  evidence."

11          What that means, Mr. Dennis, is when you are

12  cross-examining a K&L witness, for example, you can say, isn't

13  it true that you were sued by me in a suit that's still ongoing

14  in federal court in which I accused you of X, Y, and Z.  What

15  you can't say is, and isn't that true?  Aren't those

16  allegations true?  That would be getting off into a side

17  litigation of your civil case.

18          Let me hear if there is anything you wanted to say

19  about this.

20          THE DEFENDANT:  Yeah.  I think, your Honor, the most

21  important -- there are two important facts that I kind of

22  directed before, which is, one, that the civil matter was

23  stayed because of what the judge said at the time, the

24  overlapping issues of business, business issues, facts, and

25  people.

1          Now, at this point what I'll add to that is that what

2     is absolutely crystal clear, according to the record, is that

3     the civil claim began months before this criminal action began.

4     So it wasn't like the civil action started after the criminal.

5     The civil started first and then seven months, eight months

6     later the criminal started.  So if I can demonstrate that K&L

7     Gates is retaliating against me, that's my way of showing

8     intent.

9          I feel it's not fair, given that the civil action

10    began first, the criminal action followed much, much later, and

11    there has been an agreement by all the parties that there is an

12    overlap of the issues, facts, and people.  I think the

13    government would have had a much stronger argument if the

14    criminal case hadn't started and then I filed a civil action,

15    but it didn't happen in that order.

16         THE COURT:  Mr. Dennis, we really discussed this at

17    great length at the last conference, so I won't take up more

18    time as to how the stay of the first filed civil case is the

19    norm when there is a later-filed criminal case.

20         Just so we are clear on the last motion, the motion is

21    granted in the limited respects that I've indicated, but it

22    doesn't preclude, and the government is not asking it to

23    preclude, Mr. Dennis from cross-examining witnesses as to the

24    fact that he has brought a lawsuit against them, making serious

25    charges, because that would affect the jury's assessment of

 1    their credibility.

 2         The next motion is, the government seeks admission of

 3    evidence of Mr. Dennis' other allegedly harassing behavior,

 4    such as physical harassment.

 5         I never decide those motions at this stage.  This is

 6    classic 404(b) material.  It will be affected by the position

 7    that Mr. Dennis takes in his opening statement, what position

 8    he says his defense is, and it will be affected by other

 9    considerations, including whether the relevance of any of this

10    would in any particular case be outweighed by the prejudice to

11    Mr. Dennis, and I can't assess that in advance, so that will be

12    taken up on a case-by-case basis.

13         And the way that works is, before the government wants

14    to put a question involving this, they will either, at that

15    very moment or in an earlier break just very shortly before, if

16    there happens to be a break very shortly before, raised that

17    they are proposing to ask this question, and I will rule then.

18    When you are about to ask that question, if we have not had a

19    break before then, just request a sidebar, and I'll rule at the

20    sidebar outside the presence of the jury.

21         The next is:  The government seeks admission of

22    limited background testimony concerning Mr. Dennis' firing from

23    K&L Gates, and specifically the government seeks to admit

24    testimony that Mr. Dennis was denied access to K&L Gates'

25    premises and email system and was terminated by K&L Gates

1    thereafter.  And the government says this is relevant to

2    showing Mr. Dennis' intent because he continued to violate that

3    or found ways around that, for example, by using his personal

4    email in place of K&L email and the like.

5            I don't disagree that that might be relevant, but I

6    think that does open the door to a great deal of what I've

7    excluded, so I'll leave it with this with the government.  If

8    you get into that kind of evidence, you are very likely opening

9    the door to Mr. Dennis' suggestion that he was fired for other

10   reasons that he was being retaliated against and so forth.  You

11   may not want to get into that, but I'll leave that to you.

12           Then the government seeks the ruling that

13   communications from K&L Gates instructing Mr. Dennis to cease

14   harassment are not hearsay.  They clearly are not hearsay

15   because they are not being offered for the truth.  I am not

16   totally sure about the relevance in any given situation, but we

17   can take that up at the time if there is an objection to it by

18   Mr. Dennis.

19           Next, I've already indicated the government has moved

20   to preclude any evidence or argument about the government's

21   charging decisions in this case, and I've already indicated

22   that motion is granted.

23           Next, the government seeks to preclude

24   cross-examination on topics regarding a witness' compensation

25   or wealth or a witness' alleged poor work performance.  That

1    motion is granted with the caveat, again, that if the door gets

2    opened -- I don't see how the door would ever be opened on the

3    question of compensation, but I think it's conceivable that the

4    door might be opened on the question of poor work performance

5    if the suggestion was, by Mr. Dennis, that the reason he was

6    sending certain emails was to comment on the poor work

7    performance, or something of that sort.  So we will deal with

8    that as it comes up at trial, but, otherwise, the motion is

9    granted.

10          THE DEFENDANT:  Your Honor, what would be -- as for

11   compensation, obviously, once again, if we look at the overlap

12   of those people -- what if the compensation of someone

13   testifying against me has gone up significantly from the time

14   when this matter began and now that they are testifying against

15   me?

16          THE COURT:  What's the relevance?  I think it's all

17   irrelevant.

18          THE DEFENDANT:  To testify against me, you don't think

19   that might be relevant?

20          THE COURT:  What's the relevance?  I assume that all

21   these folks made a lot of money, that being the prevailing norm

22   in the legal profession in large law firms.  But so what?

23          THE DEFENDANT:  I think you give my partners more the

24   benefit of the doubt than I do.  As I put in the record before,

25   documents from someone else's wife.  If you're sending police

1    to someone's home, I don't give you the same benefit of the

2    doubt in terms of ethics that the Court might, but that's just

3    me.

4    THE COURT:  Now I want to turn to the two matters that

5    the government wanted to submit something in camera.  Before we

6    get to that, let me just mention a couple of things about the

7    first day of trial.

8    I'm told it's a very busy day with many trials.  I'm

9    told that the jury pool will be available at 11:30, so you

10   should be here in the courtroom at 11:15 in case there is

11   anything we have to take up at the last minute.

12   Mr. Dennis, obviously, that's true for you, so you

13   need to be in courtroom 14B by 11:15 on Tuesday.

14   Secondly, how long does the government want for its

15   opening statement?

16   MS. KUSHNER:  Approximately nine to ten minutes.

17   THE COURT:  Mr. Dennis, how long do you want for your

18   opening statement?

19   You're on mute, Mr. Dennis.

20   THE DEFENDANT:  I'm sorry, your Honor.  I'm still

21   rethinking my strategy.  So because of what has occurred here

22   today, because of not having any witnesses from K&L Gates'

23   management team, actually all my witnesses have been denied.

24   So I'm only having the witnesses provided by the government at

25   this point.  So I have to -- I would say 30 minutes.

 1            THE COURT:  Here is my policy.  I allow opening

 2    statements up to 30 minutes, although I need to caution counsel

 3    that opening statements for a jury that has not yet heard any

 4    of the actual testimony can't get into a great deal of minute

 5    detail because that will be lost on the jury at that stage.

 6    You can save that for summation.

 7            But I will give each side a half hour, since

 8    Mr. Dennis has requested up to a half hour.  You don't need to

 9    use a half hour, but you have up to a half hour.

10            My practice is, when you get down to people who ask

11    for a full half hour, when you get down to 28 minutes, I will

12    interrupt and say, you have two minutes left, just so you know

13    you need to finish.  I will never allow anyone to go past a

14    half hour.  Half hour for opening statements.

15            THE DEFENDANT:  Your Honor, with respect to the jury

16    pool, can you walk me -- we are on at 11:30.  Do we begin the

17    selection of the jury at that point?

18            THE COURT:  Yes.  Here is how we pick a jury.  We will

19    seat 12 people in the jury box.  I will question them and it

20    may be that one or more will be excused for cause for legal

21    reasons.  We will then replace those one or two.  After I

22    finish the questioning, then counsel for each side get what are

23    called peremptory challenges, which means that each side can

24    excuse jurors in the numbers that I'm about to give you, for

25    virtually any reason except forbidden reasons of race, gender,

1    or other protected status.

2              The government gets six challenges.  The defendant

3    gets ten.  So the way we work this is, we have six rounds.  In

4    the first four rounds the government has one challenge and you,

5    Mr. Dennis, have two.  And then in the last two rounds it's one

6    and one.  So that works out to six for the government and ten

7    for you.

8              The way you exercise a challenge is, my courtroom

9    deputy will show you the board.  I think you can see, she is

10   holding up the board.  And the board will have the cards of the

11   jurors, and you will just turn over the card of the juror you

12   want excused on a particular round.  Then we will replace that

13   juror.  So typically in one of the first four rounds there will

14   be three challenges, one by government, two by you, and we will

15   call up three new people.  I will question them again for

16   cause.  Assuming there are no problems then, you will exercise

17   your next round of challenges.

18             In addition, we will select three alternate jurors,

19   just in case a juror gets sick or something like that.  Usually

20   it's -- we don't need three, but better to err on the side of

21   caution.  And with respect to those three, the government will

22   have one challenge and the defense will have two.  So it will

23   be just one round of challenges, but, again, you'll have twice

24   as many as the government.  That's the way it works.

25             Any questions, Mr. Dennis, about that?

1          THE DEFENDANT:  No.  How long will the process go?

2          THE COURT:  An hour.

3          THE DEFENDANT:  OK.

4          THE COURT:  Assuming we start promptly at 11:30, we

5    will finish picking the jury by 12:30.  We will then let them

6    go to lunch.  Then we will start opening statements and the

7    testimony of witnesses right after lunch.

8          We will normally sit from 9:30 to 4:30 Monday through

9    Friday.  Occasionally I may have something that requires us to

10   end at 4 rather than 4:30 or to start a little later, but I'll

11   let you know the day before if that eventuates, but, otherwise,

12   the norm will be 9:30 to 4:30.  We will take a midmorning break

13   for about 10 or 15 minutes, roughly around 11.  We will take

14   lunch for one hour sometime between 12:30 and 1.  And we will

15   take a midafternoon break sometime around 3, again, for about

16   10 or 15 minutes.

17         Any questions, Mr. Dennis, about any of that process?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  Is there anything else that the government

20   wishes to raise before we get to those two submissions?

21         MS. KUSHNER:  One thing, your Honor.  Just based on

22   the defendant's statements today, the government would also

23   move to preclude any evidence, argument, or testimony regarding

24   his lack of funds or financial situation, any suggestion that

25   he has less resources than the government, that the government

1    has put him in a place where he is not able to afford counsel,

2    that he was not afforded the right to have counsel, and that

3    the government somehow has prevented him from seeing his kids.

4              THE COURT:  Actually, that motion is granted.

5              But I must say, it would have been very foolish for

6    Mr. Dennis to raise that with the jury because then I would

7    have been required to give the history of how he fired all

8    these folks.  But that won't be necessary because the motion is

9    granted.

10             THE DEFENDANT:  Your Honor, I would like to add to the

11   record again.  Again, Mr. Kelly and the Federal Defenders

12   represented me from November of 2021 until June 28 of 2022.

13   They never issued a single subpoena.  They never filed a speedy

14   trial motion.

15             With respect to one, if they had issued a subpoena, we

16   would not be at this point still talking about the subpoena

17   days before trial.  If they had to file a speedy trial motion,

18   this trial would be over at this point.

19             And the reason why Judge Schofield allowed me to have

20   a court-appointed attorney was because she recognized all these

21   delays, which were unnecessary.  That was the reason why she

22   gave me the court-appointed attorney.  Not because -- because I

23   terminated them, and she wanted to see the trial move forward

24   as quickly as possible.  Her reasons for doing that, without

25   looking at this record, she reviewed all this information.  I

1      don't know what the Court has, the new Court has, but she

2      reviewed this information and realized that there was something

3      wrong.  That's why she appointed the --

4               THE COURT:  Of course, I don't discuss this case with

5      Judge Schofield, but I do look at the record.  I don't think

6      that comports with the record as I read it.

7               As I've mentioned to you several times now, if you

8      feel that you were inadequately represented by the Federal

9      Defenders, then you are still free to bring a separate motion

10     for inadequate representation of counsel.  And I will consider

11     that motion if and when it's raised, but it's not a question

12     for the jury.  It's a separate legal question and, therefore,

13     can't be the subject of presentation to the jury.

14               THE DEFENDANT:  You seem to hold it against me.  I

15     don't understand why.

16               THE COURT:  Mr. Dennis, I don't hold it against you at

17     all.  I indicated that was totally your right.  I think I don't

18     agree with, that it was an exercise of good judgment, but

19     that's a different question.  I don't hold it against you.

20               As I mentioned at the close of the last hearing,

21     you're clearly an intelligent man.  You are a lawyer.  And if

22     you reached a decision that you felt was the right one in your

23     interest, that's certainly your prerogative.  So I don't hold

24     it against you in any way, shape, or form.  I'm just pointing

25     out that it's not an issue to be presented to the jury.

1      THE DEFENDANT:  Does your Honor believe that they

2  should have filed any subpoenas after Judge Schofield set a

3  trial date on April 4?

4      THE COURT:  I'm sorry?

5      THE DEFENDANT:  Does your Honor believe that the

6  Federal Defenders of New York should have filed subpoenas after

7  Judge Schofield set a trial date on April 4, 2022?

8      THE COURT:  I don't have a view on that.  I would have

9  to go back and look.  But I don't comment on that.

10     We need to move on because of my time constraints.  So

11  at this point we will excuse the people in the audience.

12     THE DEFENDANT:  Before they go, your Honor, I have two

13  issues that I wanted to bring up.

14     THE COURT:  Go ahead.

15     THE DEFENDANT:  One is, I have been trying to assemble

16  my witnesses, one including Bradford Smith, the president of

17  Microsoft.  I employed Nationwide Court Services to serve them,

18  and they have tried repeatedly.  I put this in my filings to

19  the Court.  And because Microsoft has a campus, they have been

20  unable to provide any -- they have been unable to serve him.

21  I've asked the Court to please permit Nationwide to serve the

22  subpoena via email --

23     THE COURT:  I will consider that.  I don't have that

24  subpoena right in front of me.  What is it that you're seeking

25  from him?

 1           THE DEFENDANT:  I don't have that subpoena in front of

 2    me also.  You approved it.

 3           THE COURT:  I approved it for service, absolutely

 4    right.  I understand that you are saying your process server

 5    hasn't been able to serve it, through no fault of the process

 6    server, and, therefore, you want me to approve service by mail.

 7    And I may well grant that, but before I do, I wanted to find

 8    out exactly what it was that you were seeking from him.  And,

 9    yes, I had approved that subpoena for service.  But I think, in

10    light of the time constraints, we should at least take a quick

11    look and make sure that it relates to something that has

12    bearing on this case.

13           But I'll tell you what I will do, if this is agreeable

14    to you, Mr. Dennis.  I will take a look at it.  And when we

15    meet on Tuesday at 11:15, if you still convince me that we

16    should have service by mail, I will allow that and, of course,

17    we can just adjust the date by 24 hours, or something like

18    that.  The trial is not going to end on that first day.  So he

19    would still need to respond.

20           THE DEFENDANT:  OK.

21           Your Honor, one of the reasons, but it's not the only

22    reason, that I was trying to get Mr. Smith's testimony was

23    because, as the record will show, I sent Mr. Smith an email on

24    October 16 of 2020 discussing how K&L Gates' servers had most

25    likely been penetrated in Beijing and Shanghai and Taipei.

 1            Included in one of the filings is also the fact that

 2     it was subsequently showed that Microsoft had been penetrated

 3     by servers -- by agents in Beijing, Taipei and Shanghai.

 4            In any event, to make another coincidence, I was

 5     actually indicted in the Southern District of New York during

 6     the period after Mr. Berman had been -- he claimed there was

 7     political influence.  I was indicted 12 days after sending that

 8     email to Mr. Smith, without ever being interviewed or talked to

 9     by the Justice Department.  And so that was one -- there are

10     several other issues, but that was one issue and it became more

11     important, particularly after Mr. Berman came forward and

12     started talking about the influence that was going on, and,

13     once again, it triggered my mind as to why would the Justice

14     Department --

15            THE COURT:  Have you read Mr. Berman's --

16            THE DEFENDANT:  Using the resources that they have to

17     prosecute an email harassment case with only three witnesses.

18            THE COURT:  Excuse me.  We need to move this along.

19     I'm sorry.

20            Let me just ask you, since you keep raising it, have

21     you read Mr. Berman's book, which came out about two weeks ago?

22     Because in that book --

23            THE DEFENDANT:  I only read Senator Durbin's --

24            THE COURT:  You might want to read Mr. Berman's book

25     because he goes to great lengths to demonstrate how the

1    Southern District of New York retained its integrity and its

2    independence during a period when it was under pressure from

3    the Department of Justice to do otherwise.  I have no opinion

4    whether that's true or false, but that's what he is saying in

5    his book.

6              THE DEFENDANT:  I'm sure Senator Durbin read his book

7    and, despite reading it, still thought an investigation was

8    appropriate.  Investigations aren't started very easily.

9              THE COURT:  We really need to move along, so I am

10   going to excuse the two -- excuse me.

11             Mr. Dennis, do not interrupt me.

12             THE DEFENDANT:  Your Honor, there was one issue which

13   is really critical, which is, you were going to rule on the

14   no-contact list.  You were going to rule whether I could now

15   contact anyone off that list.

16             THE COURT:  Here is my ruling on that, which is, you

17   may contact anyone on that list who is represented by counsel,

18   but you may not contact them unless counsel then agrees to your

19   contacting them.  You know their counsel because they appeared

20   in quashing the subpoenas.  So you can contact counsel.

21             And I'll ask the government, since Ms. Waxman was just

22   excused from the courtroom before this came up, to let her know

23   the result.

24             You can contact counsel for any of those witnesses.

25   If they are willing to have you talk to their clients, that's

fine.  But, as a lawyer, I'm sure you know it's something that

we all learned in law school.  When someone is represented by a

lawyer, you can't contact them directly.  You have to go

through their lawyer.

That's my ruling.

THE DEFENDANT:  I think my question is, I'm not

talking about contacting anyone who has a lawyer.  The

no-contact list has been used to prevent me from contacting my

potential witnesses in the arbitration.  Other than Mr. Platt,

there are other people on there, and I did not subpoena them.

THE COURT:  Your own witnesses, if they are

represented by counsel, you still have to contact them through

their counsel.  That rule, which, again, goes back several

hundred years, is that if someone is represented by counsel and

you want to have them appear for either side, your side or the

other side, in a litigation, you cannot contact them

personally.  You have to go through their counsel.  That is

very well-established law.

THE DEFENDANT:  I'm talking about contacting people

who are not involved in this matter and who do not have

representation and are included on that list.

THE COURT:  Who are we talking about?

THE DEFENDANT:  The list has no value, has no meaning.

I don't have the names.  I'm operating within the ethical

standards.  I just want to contact these people who are not

```
 1   parties and have no lawyer.
 2            THE COURT:  I asked you a very specific question
 3   because --
 4            THE DEFENDANT:  Everyone on the list who is not a
 5   party to this matter and does not have an attorney.
 6            THE COURT:  That doesn't tell me who they are.
 7            As I pointed out when we were dealing with Mr. Platt,
 8   this has to be done on an individual basis because, for
 9   example, if you wanted to contact directly someone who had been
10   allegedly the subject of very severe harassment who was not
11   represented by counsel, that would present a different kind of
12   question than was presented by someone like Mr. Platt.  So --
13   I'm sorry, but the Court has ruled and here is my ruling, just
14   so we can move on.
15            With respect to anyone on the no-contact list who you
16   know is represented by counsel because of the subpoena practice
17   that we have just gone through, you are free to contact their
18   counsel, but not them.
19            With respect to anyone who is not represented by
20   counsel who you want to contact, you first have to identify who
21   they are, and then I will hear from both sides as to whether
22   contact with them is appropriate.
23            Now, we will move on and this portion --
24            THE DEFENDANT:  Your Honor, I have two other issues,
25   and I'm *pro se*.
```

1              THE COURT:  No.  Excuse me.  I will hear your issues,

2       if we have time, after we have dealt with the two remaining

3       issues that I knew in advance.  You said to me not five minutes

4       you had two issues.  You raised both of them.  I ruled on both

5       of them.  Now you have two more.  You are going to hold on

6       until the end of this hearing.

7              And right now we will go into a sealed proceeding with

8       this portion of the record -- excuse me.  This portion of the

9       hearing -- Mr. Dennis, be quiet -- with this portion of the

10      hearing available only -- the record available only to

11      Mr. Dennis, government counsel, and the Court, except upon

12      further order of the Court.

13              (Pages 47-50 SEALED)

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  We are back on the unsealed record.

2          We have ten minutes, but you had two other things you

3     wanted to raise.  Go ahead.

4          THE DEFENDANT:  One thing, your Honor, is, I have to

5     get approval from pretrial in order to come to New York for

6     trial and to be able to stay overnight, so I'm working on that.

7          In discussing that with pretrial, one of the issues I

8     raised with them is, I don't have -- I don't have any money to

9     pay for a hotel, so I'm in the process of trying to identify

10    someone who will allow me to stay with them through the course

11    of the trial, but I haven't identified anyone at this point.

12    So whereas I could provide pretrial with a flight number -- of

13    my travel plans to New York, I won't know until the last minute

14    where I'll be housed.

15         THE COURT:  By the last minute, we are talking Monday?

16    You have to be here on Tuesday at 11:15.  So I assume you are

17    going to come in on Monday, from what you just said.

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  The courthouse is closed on Monday, but I

20    will have my law clerk make arrangements with the pretrial

21    services officer so that they are available or will have

22    someone on their staff available to approve your flight plans

23    and housing plans up to noon on Monday.

24         What you need to do is, when you have those

25    arrangements in mind, contact Mr. Kern.  You have his email.

1    And he will then arrange to get it to pretrial services so they

2    can respond quickly.

3            THE DEFENDANT:  OK.

4            To be clear, I will have my hotel done today, my

5    travel.

6            THE COURT:  Great.  If you can get it done today,

7    that's even better because pretrial services is here today

8    until at least 5:00.

9            THE DEFENDANT:  OK.

10            THE COURT:  Was there anything else?

11            THE DEFENDANT:  No, at this point.

12            THE COURT:  Very good.

13            MS. KUSHNER:  Your Honor, just to clarify the judge's

14   ruling about the dates when the defendant was terminated from

15   the law firm, not that the government necessarily would, but

16   would it be proper to say that at some point the defendant

17   stopped working at the firm, without any regard for why?

18            THE COURT:  That you can say.

19            MS. KUSHNER:  Thank you.

20            THE DEFENDANT:  What exactly is she permitted to say?

21            THE COURT:  She is saying even if they can't bring

22   into evidence that you were terminated from the firm without

23   opening the door, that can she at least bring out that you are

24   no longer working at K&L Gates, and I said, yes, that would not

25   open the door.  That's a much more neutral statement.  People

1   change jobs all the time in the modern legal world.

2          Very good.  I appreciate everyone's help.

3          THE DEFENDANT:  My only concern, just for the record,

4   is that if -- it's clear that I'm no longer working at K&L

5   Gates.  If she somehow tries to inquire why I'm not working

6   there, I would be concerned.

7          THE COURT:  Of course.  As I indicated in your favor,

8   that might open the door.

9          Very good.  Thanks very much.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25