M9N1DENC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          20 Cr. 623 (JSR)

5    WILLIE DENNIS,

6              Defendant.                  Remote Conference
     ------------------------------x

7

8                                          September 23, 2022
                                           4:05 p.m.
9

10   Before:

11                      HON. JED S. RAKOFF,

12                                          District Judge

13                          APPEARANCES

14   DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  SARAH L. KUSHNER, ESQ.
          STEPHANIE SIMON, ESQ.
17        KIMBERLY J. RAVENER, ESQ.
          Assistant United States Attorneys
18
     WILLIE DENNIS
19        Pro Se Defendant

20   DEBEVOISE & PLIMPTON LLP
          Attorneys for Non-Party John W. Thompson
21   BY:  JIM PASTORE, ESQ.
          AASIYA F.M. GLOVER, ESQ.
22

23

24

25

M9N1DENC

| 1 | THE COURT:  This is Judge Rakoff.  Would the
| 2 | parties—counsel and the defendant pro se—please identify
| 3 | themselves for the record.
| 4 | MR. PASTORE:  Yes, your Honor.  For John W. Thompson,
| 5 | recipient of a Rule 17 subpoena issued by the defendant
| 6 | Mr. Dennis, this is Jim Pastore of Debevoise & Plimpton, and
| 7 | joining me is Aasiya Glover, one of my associates.  Good
| 8 | afternoon.
| 9 | THE COURT:  Good afternoon.
| 10 | Anyone here for the government?
| 11 | Hello?
| 12 | MS. SIMON:  Good afternoon, your Honor.  This is
| 13 | Stephanie Simon for the government.  I believe that my
| 14 | colleague Sarah Kushner is on as well.
| 15 | MS. KUSHNER:  Yes, I am.  Sorry.  I got disconnected.
| 16 | THE COURT:  And Mr. Dennis, are you there?
| 17 | DEFENDANT DENNIS:  Good afternoon, your Honor.  This
| 18 | is Willie Dennis, the defendant, and I'm also representing
| 19 | myself pro se.
| 20 | THE COURT:  All right.  So let me hear first from
| 21 | counsel representing Mr. Thompson, objecting to the subpoena.
| 22 | MR. PASTORE:  Thank you, your Honor.
| 23 | The subpoena was issued to Mr. Thompson on or about
| 24 | September 8th.  That's when it was served on him.  Pursuant to
| 25 | your Honor's individual rules, I have an email prepared, and

M9N1DENC

1    I'm happy to share that document with the Court, if it would be

2    helpful.  Having met and conferred with Mr. Dennis,

3    Mr. Thompson wishes to move to quash the subpoena, and I

4    understand that the government --

5             DEFENDANT DENNIS:  Your Honor, your Honor, I have

6    never met Mr. Pastore.  I object to that statement.

7             THE COURT:  No, no, no, no.  No.  The basic rules of

8    decorum apply even on a telephone conference, and of course

9    there is a court reporter.  So we'll hear first from counsel

10   for Mr. Thompson, without interruption; then we'll hear from

11   the government, if it wishes to say anything; and then we'll

12   hear from Mr. Dennis, also without interruption.  The only

13   interruptions that are permitted are by the Court to ask

14   questions.  So Mr. Dennis, when we get to you, you can state

15   whatever objections you have, but do not interrupt counsel for

16   Mr. Thompson.

17            So go ahead, Mr. Pastore, counsel for Mr. Thompson.

18            MR. PASTORE:  Thank you, your Honor.  And for the

19   court reporter's benefit, this is Jim Pastore again speaking.

20            Your Honor, we're seeking to quash this subpoena

21   pursuant to this Court's authority in *United States v. Weigand*,

22   520 F.Supp.3d 609.  Our motion is premised on the grounds that

23   the subpoena is unreasonable, oppressive, and, in any event,

24   lacks the requisite specificity.  It's unreasonable because it

25   seeks information that's irrelevant to Mr. Dennis's criminal

M9N1DENC

```
 1    case; it's oppressive because it seeks to compel the testimony
 2    of a man who lives across the country and who has no
 3    relationship to the facts at issue in this case, and who has no
 4    information to provide about this case that could not be better
 5    provided by the others who we understand have already been
 6    subpoenaed in this case; and finally, whatever limited
 7    relevance the subpoena might have—-and we're not conceding that
 8    it does—-it's far too broad.  It seeks, for example, all
 9    communication about a variety of topics, in some instances
10    dating back 13 years, and for that reason, it also needs to be
11    quashed.
12            I'm happy, your Honor, to lay out in more detail, if
13    it would be helpful for the Court, some of the background
14    regarding the conversations --
15            THE COURT:  Well, let's hold off on that.  Let me hear
16    next from the government, but we'll come back to you on
17    rebuttal.
18            MR. PASTORE:  Thank you, your Honor.
19            THE COURT:  Is there anything the government wanted to
20    say?
21            MS. KUSHNER:  Your Honor, this is Sarah Kushner.
22            The government wholeheartedly supports, for all the
23    reasons that Mr. Pastore just set forth, their motion to quash
24    the subpoena.
25            THE COURT:  Yes.  I think the government has standing
```

M9N1DENC

to object on grounds of relevance.  I'm not so sure the

government has standing to object on grounds of overbreadth or

oppressiveness.  These are things that the subpoenaed party can

properly raise, but the oppressiveness, for example, to the

extent it's based on the fact that the witness is across the

country or something like that, that's not something I think

the government can raise.  However, relevance is something the

government can raise, and to the extent that that was included

as it was in the argument for oppressiveness, to that extent,

the government will be taken to have joined in the motion to

quash.

          So let me hear now from Mr. Dennis.

          DEFENDANT DENNIS:  Your Honor, I essentially -- I have

several objections that I would like to have on the record

today.

          I am -- well, first, I am without standby counsel, as

I terminated my prior standby counsel, Karloff Commissiong, on

Monday, September 19th, because he advised me not to seek the

witness testimony of the District Attorney's Office of the City

of New York on the grounds that the office had nothing relevant

to say, despite his knowing that the New York City District

Attorney's Office had declined to indict me four months before

this federal indictment on the same facts, and that a state

prosecutor's threshold for indictment is lower than the federal

threshold for indictment.  And as of yesterday, the Court

M9N1DENC

1    denied me -- denied my request for appointment of a new standby

2    counsel, so I'm currently representing myself, without the

3    advice of standby counsel.

4              There are three members of the executive team of

5    Microsoft who have been issued subpoenas and are critical to

6    this issue today--including Satya Nadella, the chairman and

7    chief executive officer of Microsoft; and Bradford Smith, the

8    president and vice chairman of Microsoft--who are not present

9    and thus will be unable to respond to the fundamental question

10   at issue today:  Why are three members of the executive team of

11   the fifth largest publicly traded corporation in the world

12   included on the Department of Justice's no-contact list which

13   subjects me to arrest and incarceration, even as of today, in a

14   case which is related solely to the alleged email harassment of

15   partners of Microsoft's preferred legal provider, KL Gates?  I

16   object.  I object to the fact that subpoenas have been issued

17   and, understanding the corporate barriers the powerful and

18   wealthy are able to erect to prevent service, the Court has not

19   permitted service via email to Mr. Smith, to enable him to be

20   present today, thus providing him and each of the other

21   officers of Microsoft with the opportunity to say, separately,

22   "I do not know why I'm on the government's no-contact list."  I

23   object as the Southern District of New York, for one year, and

24   continuing as of today, have made me subject to arrest and

25   incarceration for contacting Mr. Thompson and other members of

M9N1DENC

the Microsoft executive team, yet, as of the date of this
conference, have not provided me with the reason.  Thus, if
Mr. Thompson's request to squash his subpoena is granted, I
will be denied my constitutional right to confront my accuser.
And I must assume Mr. Thompson and the other members of the
executive Microsoft team are accusers.  I object as your Honor
has strictly enforced the bail agreement which subjects me to
arrest and incarceration, even as of today, should I contact
Mr. Thompson or the other members of the Microsoft team, yet
has not inquired of the Southern District of New York why these
individuals are on the no-contact list prior to this conference
to allow me to prepare a proper response.

          I finally object because three days before my son's
birthday, I remain subject to these draconian bail terms which
prevent me from seeing him, and I may be prevented from having
my constitutional right to confront accusers such as
Mr. Thompson.

          THE COURT:  All right.  So -- I'm sorry.  Anything
else?

          DEFENDANT DENNIS:  And that's it, your Honor.

          THE COURT:  So I think we should make clear for the
record several things.

          First, bail in this case was set by Judge Schofield,
to whom this case was originally assigned, and Mr. Dennis,
since the case was reassigned to me, has made no application

M9N1DENC

```
1    for any changes in his bail conditions.  And if, on a separate
2    conference call with the government, Mr. Dennis wants to make
3    an application for changes in his bail, of course I will
4    consider that.  This is the first time, ever, with this Court,
5    this judge, that Mr. Dennis has raised the issue of his bail
6    conditions, and that can be the subject of an application.  I
7    make it very easy for parties to bring applications.  All they
8    have to do is put together, as we did today, a joint telephone
9    conference, and then I can hear counsel for both sides make
10   their arguments and then I can rule.  And that way we move
11   things along very rapidly.  So Mr. Dennis, if you want to make,
12   at any time beginning Monday, a separate application for
13   changes in your bail conditions, you should arrange with the
14   government to make a joint call, with, of course, a court
15   reporter.
16        Secondly, although this and several of the other
17   subpoenas that Mr. Dennis has propounded—-all of which I
18   allowed to be served—-make considerable reference to the
19   no-contact list, that, again, was something that was put
20   together when Judge Schofield was in charge of this case, and
21   no application was previously made to me at any time to change
22   that list or modify it in any respect.  So to the extent you
23   want to make that either as part of your change in bail
24   application or an independent application, again, I'd be happy
25   to hear that through a joint telephone call with the government
```

M9N1DENC

1   beginning any time Monday.

2            Third, let me ask the government:  Is Mr. Thompson a

3   trial witness?

4            MS. KUSHNER:  No, your Honor.  Mr. Thompson is not a

5   trial witness.  He is neither -- he is not a statutory victim,

6   or victim in this case either.  As the Court alluded to, his

7   name was included on a proposed no-contact list that the

8   government prepared fairly swiftly after a lengthy bail

9   hearing, and upon the judge's decision to order the defendant's

10  release, in an abundance of caution, the government asked that

11  the defendant not contact, in addition to his former

12  colleagues, other individuals that he had been reaching out to

13  around the same time as the charged conduct.  But there's no

14  evidence, nothing relevant about Mr. Thompson; the government

15  has never spoken to him, and has no plans to do so, or to call

16  him as a witness.

17           THE COURT:  And why was he on the no-contact list?

18           MS. KUSHNER:  He was a recipient of emails at that

19  time that also involved other individuals of K&L Gates, and at

20  that time it seemed like, in order to ensure the safety of the

21  community and others upon the defendant's release, that the

22  individuals mentioned in certain -- the individuals who

23  received certain communications around the time of the charged

24  conduct should be included on that list, which was proposed to

25  the defense, and no objections were raised at that time, but I

M9N1DENC

```
1    will note that the enforceability of that no-contact list is

2    somewhat unclear and that the court at the time ordered that

3    the defendant will not have any contact with former or current

4    employees of the defendant's former law firm but then asked the

5    government to propose a follow-up no-contact list that was

6    never actually and formally incorporated into the terms of the

7    defendant's bail conditions.

8            THE COURT:  All right.  Well, as I say, if Mr. Dennis

9    wants to seek changes in the bail conditions and/or changes in

10   the no-contact list, all of which were entered into before this

11   case was assigned to this judge, then he's free to do so

12   beginning any time Monday.  No one has previously raised with

13   this Court, since the reassignment, anything about the bail

14   conditions or the no-contact list, so that is for a separate

15   application.

16           So before I rule on the instant application, anything

17   further, Mr. Dennis, you wanted to say?

18           DEFENDANT DENNIS:  Yes, your Honor.

19           I mean, part of my defense at trial will be -- is my

20   belief that K&L Gates, with some of its clients, moved to

21   engineer this indictment against me.  And you go back to the --

22   to my reference point, which is, why is three members of the

23   executive team of the fifth largest publicly traded corporation

24   in the world included on the Department of Justice's no-contact

25   list?  Maybe one ends up there, by accident.  Then we're two,
```

M9N1DENC

1    and now we're saying three individuals, all in the executive

2    suite, and all related to the fact that K&L Gates is their

3    preferred legal provider?  I don't think that's a coincidence.

4    And I think that I deserve the opportunity to be able to talk

5    to each one of them and ask them:  Why were you on the list?

6    Why were you included?

7          And I disagree with the government because the Federal

8    Defenders of New York repeatedly, during the course of this

9    case, reminded me not to contact anyone on that list or I would

10   be immediately arrested.  The pretrial officer here in Florida

11   reminded me repeatedly:  Do not contact anyone on that list or

12   we will come to your home and arrest you.  So it was not an

13   innocuous list that was put together, and it was enforced by,

14   while I was in New York, pretrial in New York, pretrial here in

15   Florida, as well as my defense counsel for seven months

16   constantly reminding me, you are liable and you face serious

17   consequences if you talk to any of these individuals.  So I do

18   not believe that this is an innocuous, innocent sort of

19   mistake.  I believe there's something that needs to be explored

20   because of what I've been subjected to.

21          And I return to the fact that there are three members

22   of the executive team of Microsoft, and I think the point is

23   right—-I live over 2,000 miles away from them, I've never seen

24   them, why were they on that list, and -- given that KL Gates is

25   their preferred provider, and they have brought these charges.

M9N1DENC

```
1          THE COURT:  So I come back to what I said a few
2     moments ago.  I am perfectly happy to consider, any time
3     beginning Monday, an application from Mr. Dennis to modify,
4     change, remove, or alter in any respect the so-called
5     no-contact list and to explore, if appropriate, how people's
6     names got on the no-contact list, but that is not the matter
7     before the Court this afternoon.  The matter before the Court
8     this afternoon is the subpoena issued to Mr. Thompson.
9          The subpoena, on its face, is grossly overbroad, and
10    rather than reciting the several pages of the attachment to the
11    subpoena specifying what was to be produced, I will file the
12    subpoena, and I think it will be apparent how overbroad it is.
13         It also appears to the Court that even though it was a
14    trial subpoena and made returnable on the first day of trial,
15    the matter regarding the no-contact list has either nothing to
16    do with the trial or is at best tangential.  The question that
17    Mr. Dennis is raising is whether the no-contact list was in
18    some sense engineered by other people, and even assuming that
19    were so, that has nothing to do with the trial.  It would be a
20    basis for an application or perhaps even relief prior to trial,
21    and that's why I'm happy to take it up, beginning any time
22    Monday.
23         The subpoena, though, on its face is grossly
24    overbroad, has little or at best very little to do with any
25    issue that could arise at trial.  And I think that's
```

M9N1DENC

1    overstating it.  It has really nothing to do with any issue

2    that would arise at trial.  It may have to do with issues that

3    would be the subject of an objection to the no-contact list.

4    So I am going to quash the subpoena as a trial subpoena, quash

5    it totally in its current form, which is grossly overbroad, but

6    if Mr. Dennis wants to make an application with the government,

7    any time beginning Monday, with respect to the no-contact list,

8    and if, as a result of that application, I feel that there may

9    be documents relating to the no-contact list that might be

10   relevant, I will reconsider that limited portion of this ruling

11   at that time, with full notice, of course, to counsel for

12   Mr. Thompson.

13           So I will issue an order in a few minutes which will

14   quash the subpoena for the reasons stated on this transcript,

15   and I will attach the subpoena to that order so that any

16   reviewing court can see why this Court regarded it as

17   oppressive and overbroad.

18           So that concludes this proceeding.  Thank you very

19   much.  Good-bye.

20           DEFENDANT DENNIS:  Your Honor, may I add something to

21   the record, please?

22           THE COURT:  Go ahead.

23           DEFENDANT DENNIS:  I believe that by making this

24   decision, you have -- basically my defense is, to a great

25   extent, being gutted, because I do not have the ability to

1    prove, which I thoroughly believe, that this was a conspiracy,

2    that this was not an accident, that these three individuals

3    showed up on this list, and that they were involved in

4    engineering the Justice Department's filing of this complaint

5    against me.  By not having them as witnesses, by not having

6    Mr. Thompson as a witness -- and I assume that where this is

7    going is I will not have Brad Smith and that you will quash all

8    the other subpoenas related to this -- will not give me the

9    opportunity to talk to the executive members of Microsoft and

10   saw:  Why were you there?  Because I believe they were there

11   because they orchestrated these things.

12         THE COURT:  So the difficulty I have with your point,

13   Mr. Dennis, is: first, again, you have not made any application

14   to this Court regarding the contact list; secondly, what you're

15   alleging is at this point something that, if I understand what

16   you're saying, is a conspiracy that you have come to believe

17   but you have no independent evidence of, and so that is not a

18   sufficient basis for then filing this and, as you correctly

19   point out, numerous other trial subpoenas--all of which I

20   allowed to be served--asking for vast quantities of documents

21   relating to your conspiratorial theory.  That's why I said, in

22   ruling that I was quashing the subpoena, that it was without

23   prejudice to revisiting the narrow issue of whether there may

24   be some documents out there supportive of your theory if and

25   when you make an application with respect to the no-contact

M9N1DENC

| | |
|---|---|
| 1 | list and after I've heard from you and the government on that |
| 2 | basis.  So I have held out that possible exception, but at the |
| 3 | moment it is nothing but a belief on your part, and a belief is |
| 4 | not a basis for a subpoena of this -- perhaps for any subpoena, |
| 5 | but certainly not a subpoena of this huge breadth and length. |
| 6 | So the Court -- |
| 7 | DEFENDANT DENNIS:  Your Honor, your Honor, I have one |
| 8 | other comment to make, which is material. |
| 9 | In all my applications for my subpoenas, I said I |
| 10 | would be satisfied with just trial testimony, and the |
| 11 | documentation wasn't necessary. |
| 12 | THE COURT:  Well, it's not trial testimony. |
| 13 | DEFENDANT DENNIS:  I would -- I would -- |
| 14 | THE COURT:  You know, you have now fired three -- |
| 15 | first you fired Federal Defenders -- |
| 16 | DEFENDANT DENNIS:  They never filed a subpoena, in |
| 17 | seven months. |
| 18 | THE COURT:  Excuse me.  I'm not questioning your right |
| 19 | to fire them.  I'm just reciting -- |
| 20 | DEFENDANT DENNIS:  They -- |
| 21 | THE COURT:  Are you going to allow me to finish my |
| 22 | sentence like I allowed you to finish yours? |
| 23 | DEFENDANT DENNIS:  Okay, your Honor. |
| 24 | THE COURT:  Thank you. |
| 25 | And then you fired your first standby counsel which |

M9N1DENC

```
1    Judge Schofield had appointed, and I appointed second standby

2    counsel——frankly, one of the best counsel in New York, in my

3    view——Mr. Commissiong.  And you had your differences with him,

4    and you chose to fire him.  If you had kept counsel, counsel

5    might well have been advising you that the point you're

6    raising, even if it has a basis, is not directed at the trial,

7    it's directed at pretrial applications like the type I'm

8    inviting you to make on Monday.

9         So I can't serve as your lawyer, but I am trying to

10   make clear to you that this Court is perfectly open for you to

11   make an application of the sort I've described, and if you do

12   and if you convince the Court that you should have the right to

13   take statements from any of these people, I'll consider that

14   then.  That's not before the Court today.  So --

15        DEFENDANT DENNIS:  Well, your Honor, I'd like to add

16   something to the record.

17        THE COURT:  Yes, but then this is the last point,

18   Mr. Dennis.  This is --

19        DEFENDANT DENNIS:  Certainly.  Okay.  I am

20   representing myself, so I appreciate you giving me this

21   courtesy.  I had the Federal Defenders for over seven months.

22   They were aware of this issue in December of 2021 and they

23   never followed up on it, though I repeatedly raised it with

24   them.  I had the Federal Defenders from November until May of

25   2022.  They never issued a single subpoena to anyone, which I
```

M9N1DENC

1  did not become aware of until much later.  They never filed a

2  speedy trial motion, which would -- means this matter would be

3  over with by now.  And they never complied with the

4  government's request for discovery.  So that's why I terminated

5  them.  Otherwise, no subpoenas would be issued and we would not

6  be discussing this issue today if they hadn't issued subpoenas

7  over the seven-month period, so I consider that to be gross

8  negligence.

9          THE COURT:  All right.  Just to put this in terms that

10  would be more familiar—while you're a lawyer, you're not a

11  trial lawyer—the assertion you're making now is commonly

12  classified as so-called ineffective assistance of counsel, and

13  that is an application you can make, and I will consider it if

14  and when you make it, but it, again, has nothing to do with the

15  trial subpoena.

16          So these are niceties that you may not appreciate as

17  not being a litigator, but as a lawyer, I'm sure you

18  appreciate, from your extensive years of practice, that the

19  rule of law has clear boundaries and clear definitions.  And so

20  if you want to make an application related to ineffective

21  assistance of counsel, I'll consider that as well.  It has

22  nothing to do with the issue before the Court today.

23          So that does conclude this proceeding, and I will

24  issue my bottom-line order in short order.  Thanks a lot.

25  Bye-bye.      o0o