**NYC HEALTH+ HOSPITALS** | **Bellevue**

Dennis, Willie

9401-054

November 18, 2022

Nate Link, MD, MPH
Medical Director, Bellevue Hospital
462 First Ave, & 27th St, MN-30
New York, NY 10016
Nathan.link@nychhc.org
(212) 562-4743

To Whom It May Concern,

I am the attending physician for Willie Dennis who is currently in federal custody and currently an inpatient at Bellevue Hospital Center. Mr. Dennis has three important medical conditions under treatment and he requested that I write this letter to clarify his medical situation.

1. Severe coronary artery disease. One of his three coronary vessels is 100% occluded and the other two are each 80% occluded, which puts him at risk for a heart attack (myocardial infarction). Because he is not experiencing current symptoms from these conditions, our cardiologists have concluded that he can be medically managed without a surgical procedure, but this recommendation would change if he were to develop cardiac symptoms, such as chest pain.

2. Severe peripheral vascular disease. The right femoral artery, which is the main artery to the right leg, is completely occluded. This is not an emergent condition but the artery will need to be opened up with a vascular procedure that will likely be scheduled in the future to preserve function in his leg and foot. Because of the cardiac risk of doing a vascular procedure to open up this vessel, Mr. Dennis has elected to hold off on this procedure. In the meantime, his ability to walk is markedly limited to about 50 feet on level ground by leg pain.

3. A large inguinal hernia and an umbilical hernia. The inguinal hernia, which continues to grow in size and cause Mr. Dennis significant pain, will require likely elective surgery that may also be scheduled in the future. Again, because of his cardiac disease, there is a 10-15% risk of a major complication of doing any surgery, so Mr. Dennis has elected to wait for this. In the meantime, he is wearing a hernia belt to limit his discomfort. He should have a truss for comfort at all times.

Mr. Dennis will not need to stay in the hospital while waiting for these procedures but he will need access to the medications we prescribe while in federal custody. These include ASA 81 mg daily, Jardiance 25 mg daily, Spironolactone 25 mg daily, Entresto 24-26 mg daily, Metoprolol XL 50 mg daily, and Atorvastatin 80 md daily. Furthermore, he has requested an opportunity to access his health insurance, which is currently not available due to his legal status. If any of his officers would like further clarification, they can contact my office at 212 562-4743.

Sincerely,

Nate Link, MD
Attending Physician
Bellevue Hospital Center

Dr. B. Bialor
Clinical Director
MDC Brooklyn, NY

(11/22/22)

# Bureau of Prisons
# Health Services
# Medication Summary
# Historical

| | | | |
|---|---|---|---|
| Complex: BRO--BROOKLYN MDC | | Begin Date: 12/15/2021 | End Date: 12/15/2022 |
| Inmate: DENNIS, WILLIE | | Reg #: 91401-054 | Quarter: H05-502L |

**Medications listed reflect prescribed medications from the begin date to end date on this report.**

**Allergies:** Denied

## Active Prescriptions

Acetaminophen 325 MG Tab
Take two tablets (650 MG) by mouth every six hours AS NEEDED for pain
**Rx#:** 434219-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 10/18/22   **Exp:** 11/17/22   **Pharmacy Dispensings:** 56 TAB in 30 days

Aspirin 81 MG EC Tab
Take one tablet (81 MG) by mouth each day
**Rx#:** 434220-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 10/18/22   **Exp:** 11/17/22   **Pharmacy Dispensings:** 30 TAB in 30 days

Aspirin 81 MG EC Tab
Take one tablet (81 MG) by mouth each day
**Rx#:** 435890-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/21/22   **Exp:** 02/19/23   **Pharmacy Dispensings:** 30 TAB in 24 days

Atorvastatin 80 MG TAB
Take one tablet (80 MG) by mouth each day -- While taking Paxlovid for COVID, do not take this medication.
**Rx#:** 435891-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/21/22   **Exp:** 02/19/23   **Pharmacy Dispensings:** 30 TAB in 24 days

Clopidogrel Bisulfate 75 MG Tab
Take one tablet (75 MG) by mouth each day
**Rx#:** 434221-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 10/18/22   **Exp:** 11/17/22   **Pharmacy Dispensings:** 30 TAB in 30 days

Empagliflozin 25 MG Tablet
Take one tablet (25 MG) by mouth each day **non-formulary approved until: 11/21/24
**Rx#:** 435948-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/22/22   **Exp:** 02/20/23   **Pharmacy Dispensings:** 30 TAB in 23 days

Metoprolol Succ XL 24 Hour  50 MG Tab
Take one tablet (50 MG) by mouth each day
**Rx#:** 435892-BRO   **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/21/22   **Exp:** 02/19/23   **Pharmacy Dispensings:** 30 TAB in 24 days

| | | | |
|---|---|---|---|
| Complex: | BRO--BROOKLYN MDC | Begin Date: 12/15/2021 | End Date: 12/15/2022 |
| Inmate: | DENNIS, WILLIE | Reg #: 91401-054 | Quarter: H05-502L |

## Active Prescriptions

Metoprolol Tartrate  25 MG Tab
Take one tablet (25 MG) by mouth twice daily
**Rx#:** 434222-BRO     **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 10/18/22     **Exp:** 11/17/22         **Pharmacy Dispensings:** 60 TAB in 30 days

Nirmatrelvir/Ritonavir 300/100 mg Tab pack
Take 2 tablets of nirmatrelvir (300mg) and 1 tablet of ritonavir (100mg) by mouth twice daily for 5 days
**Rx#:** 435893-BRO     **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/21/22     **Exp:** 11/26/22         **Pharmacy Dispensings:** 30 TAB in 5 days

Sacubitril-Valsartan 24-26 MG Tablet
Take one tablet  by mouth twice daily
**Rx#:** 435894-BRO     **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/21/22     **Exp:** 02/19/23         **Pharmacy Dispensings:** 60 TAB in 24 days

Spironolactone  25 MG Tab
Take one tablet (25 MG) by mouth each day
**Rx#:** 435895-BRO     **Doctor:** Bialor, Bruce (MAT) MD, CD
**Start:** 11/21/22     **Exp:** 02/19/23         **Pharmacy Dispensings:** 30 TAB in 24 days



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 6, 2022

**BY EMAIL**
Willie Dennis (pro se)
6858 Hidden Glade Place
Sanford, Florida 32771
woc2020@gmail.com

Re:   *United States v. Willie Dennis*, 20 Cr. 623 (JSR)

Dear Mr. Dennis:

This document is not a plea agreement.  Rather, pursuant to the suggestion of the Court in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), this letter sets forth the current position of the United States Attorney's Office for the Southern District of New York (the "Office") regarding the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to defendant Willie Dennis (the "defendant") in this case.

The Indictment charges the defendant in four counts, only three of which are being pursued by the Government.[1]  Counts One, Two, and Four each charge the defendant with cyberstalking, in violation of Title 18, United States Code, Sections 2261A(2)(B) and 2.  Counts One, Two, and Four each carry a maximum term of imprisonment of five years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of $250,000; and a $100 mandatory special assessment.

The total maximum term of imprisonment on Counts One, Two, and Four is fifteen years' imprisonment, with a maximum term of supervised release of nine years (three years on each count).

The Government currently believes that the Guidelines apply to the crimes charged in Counts One, Two, and Four of the Indictment as follows:

A.  Offense Level

1.  The applicable Guidelines manual is November 1, 2021 Guidelines manual.

---

[1] The Government, however, is not pursuing Count Three, and therefore, has not included that count in its determination of the applicable Guidelines range in this case.

2019.10.22

2. The Guideline applicable to each of Counts One, Two, and Four of the Indictment is U.S.S.G. § 2A6.2. Pursuant to U.S.S.G. § 3D1.2's application notes, these counts are not grouped.

Count One

3. Pursuant to U.S.S.G. § 2A6.2(a), the base offense level for Count One is 18.

4. Accordingly, the offense level for Count One is 18.

Count Two

5. Pursuant to U.S.S.G. § 2A6.2(a), the base offense level for Count Two is 18.

6. Accordingly, the offense level for Count Two is 18.

Count Four

7. Pursuant to U.S.S.G. § 2A6.2(a), the base offense level for Count Four is 18.

8. Accordingly, the offense level for Count Four is 18.

Combined Offense Level

9. Pursuant to U.S.S.G. § 3D1.4, the combined offense level for all three counts is determined as follows: by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the number of Units, as determined by U.S.S.G. § 3D1.4(a). Here, the highest offense level is 18, and the offense level for the other two counts is equally serious. Accordingly, each count equals one Unit, for a total of three units. Pursuant to U.S.S.G. § 3D1.4, this means that the highest offense level is increased by three levels, which results in a total combined offense level of 21.

10. Accordingly, the total combined offense level is 21.

11. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

In accordance with the foregoing calculations, the applicable offense level is 19.

B. Criminal History Category

Based upon the information now available to this Office, the defendant has zero criminal history points. In accordance with the foregoing, the defendant's Criminal History Category is I.

2019.10.22

C. Sentencing Range

Based upon the calculations set forth above, the defendant's sentencing range is 30 to 37 months' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At offense level 19, the applicable fine range is $10,000 to $100,000.

The foregoing Guidelines calculation is based on facts and information currently known to the Office. Nothing in this letter limits the right of this Office (1) to change its position at any time as to the appropriate Guidelines calculation in this case, even if that change is based, in whole or in part, on information that was in the Government's possession as of the date of this letter; and/or (2) to present to the Court or the United States Probation Office, either orally or in writing, any and all facts and arguments relevant to sentencing that are available to the Office at the time of sentencing. Nor does anything in this letter limit the right of this Office to seek a departure under or variance from the Guidelines, or to take a position on any departure or variance that may be suggested by the Court, the United States Probation Office, or the defendant.

This letter does not and cannot bind either the Court or the United States Probation Office, either as to questions of fact or as to determinations of the correct application of the Guidelines in this case. Instead, the sentence to be imposed upon the defendant will be determined solely by the Court. This Office cannot and does not make any promise or representation as to what sentence the defendant will receive.

The defendant is hereby notified that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. The defendant is further notified that, if he is a _naturalized_ citizen of the United States, his guilty plea may have consequences with respect to his immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant is further notified that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. The defendant is entitled to and should seek advice from an attorney on this issue.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____
Sarah L. Kushner/Stephanie Simon
Assistant United States Attorneys
(212) 637-2676 / (914) 993-1920

2019.10.22