

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 25, 2024

**By ECF and E-MAIL**
Honorable Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **Re:**    ***United States v. Willie Dennis*, 20 Cr. 623 (JSR)**

Dear Judge Rakoff:

The Government writes in opposition to the defendant's motion for compassionate release (Dkt. Nos. 151, 156 (collectively, the "Motion")). The Motion should be denied for procedural reasons and on the merits. First, this Court does not currently have jurisdiction over this case to grant the defendant's motion because the defendant's appeal from the jury's guilty verdict against him is pending before the Second Circuit. *See* Fed. R. Crim. P. 37(a). Second, even if the Motion were properly before this Court, it should still be denied because the defendant has not demonstrated—and cannot demonstrate—an "extraordinary and compelling reason" for his release under 18 U.S.C. § 3582(c)(1)(A). Third, the factors set forth in 18 U.S.C. § 3553(a) do not support a reduction.

## I.    Background

### A.  Offense Conduct and Procedural History[1]

The defendant, who is 61 years old, was a successful attorney in New York City and worked at some of the country's most well-respected law firms for decades. He was a partner in the Manhattan office of the law firm K&L Gates LLP from 2005 until he was terminated in May 2019. Following his termination from the firm, the defendant sent threatening messages to his former partners that, among other things, threatened them with physical violence. Over nearly two years, the defendant sent thousands of threatening messages, often in rapid succession, at all hours of the day and night. The defendant sent these messages despite being warned repeatedly that the messages were perceived as threatening.

---

[1] Given the Court's familiarity with the background of this case, this section only discusses those facts, and the procedural posture of this case, that are directly relevant to the Motion.

On October 17, 2022, following a week-long trial, a jury convicted the defendant of cyberstalking three of his former law firm partners, and the defendant was remanded.  On February 10, 2023, after a lengthy sentencing proceeding during which the Court determined that the defendant's Guidelines range was 30 to 37 months' imprisonment, the Court imposed a below-Guidelines sentence of 24 months' imprisonment, to be followed by three years' supervised release.  In determining the appropriate sentence, the Court thoroughly considered all of the Section 3553(a) factors.  The Court explained that "one factor that is glaring beyond all else is the degree of fear and emotional distress that [the defendant] imposed day after day, message after message on the victims of his crime."  (Dkt. No. 149 at 45).  The Court recognized that the defendant's "crimes were of a very serious sort.  Their impact on the victims was terrible, and the sheer magnitude of those crimes that he committed again and again and again over many, many months would normally call for a substantial prison sentence."  (Dkt. No. 149 at 33-34).  The Court also acknowledged that the defendant "should receive some credit for a life well lived" up to the point of the offense conduct in this case," as well as, significantly here, the defendant's "health problems."  (Dkt. No. 149 at 34).

On February 28, 2023, the defendant filed a notice of appeal, which is pending in the Second Circuit.  *See United States v. Dennis*, No. 23-6194.

**B.  The Defendant's Term of Imprisonment**

The defendant is currently serving his sentence at the Metropolitan Detention Center ("MDC") in Brooklyn.  According to the Bureau of Prisons ("BOP"), the defendant is scheduled to be released on June 25, 2024.

Although the defendant is currently at the MDC, he has spent the majority of his term of imprisonment in hospitals and/or at a private nursing center, receiving medical treatment.  Specifically, based on a review of the defendant's medical records obtained from BOP and conversations with the BOP, the Government understands that the defendant received the following medical attention from October 19, 2022 until February 9, 2024:

- From on or about October 19, 2022 (less than two days after the defendant was remanded) to on or about November 21, 2022, the defendant was seen by different medical providers at different hospitals, and was not housed at the MDC.  *See* Ex. A (2022-2023 BOP Medical Records) at 4, 14, 36, 39, 42-56.[2]

- On or about October 18, 2022, it was determined that the defendant had an "occlusion of right femoral artery and aneurysm that need[ed] evaluation by a vascular surgeon," as well as a "right inguinal hernia that need[ed] evaluation by a general surgeon."  *Id.* at 53, 56.  Accordingly, at that time, the defendant was prescribed various medications, and was sent to various hospitals for further evaluation and treatment, including an appointment with a cardiologist at Bellevue.  *Id.* at 55-56, 27.

---

[2] The Government respectfully requests that Exhibits A and B be filed under seal, given the sensitive medical information contained therein.

- From on or about November 21, 2022, to on or about March 1, 2023, the defendant was at the MDC, where he received regular medical attention and care.  *See, e.g.*, *id.* at 71-72, 103-05.

- From on or about March 1, 2023, to on or about February 9, 2024, the defendant was at a nursing home in Queens, New York, where he received individualized attention and care; during that period of time, the defendant was also brought to various hospitals and seen by different medical specialists for his conditions, and received surgery and follow-up care for his hernia.  *See, e.g.*, Ex. B (2023-2024 BOP Medical Records) at 3, 8, 24, 25, 34, 47, 51.

- On or about February 9, 2024, it was determined that the defendant was healthy enough to return to the MDC.  *See id.* at 23.

- The defendant has been at the MDC since on or about February 9, 2024.  As of March 9, 2024, the defendant already had at least several medical appointments and has continued to receive prescriptions and treatment advice on a regular basis.  *See, e.g.*, Ex. B at 1-21.

## II.    **The Motion**

On February 15, 2024, Reverend James T. Golden, an attorney in Florida, filed a request to appear in this case *pro hac vice* for the purpose of representing the defendant in connection with the Motion.  (Dkt. No. 151).  Attached to that request was a *pro se* motion from the defendant seeking compassionate release on the ground that he "suffer[s] from several serious physical and medical conditions and serious functional impairments . . . which substantially diminish my ability to provide self-care within the environment of a correctional facility and from which I am not expected to recover."  (Dkt. No. 151-1 at 5).  In those papers, the defendant describes his relevant medical issues—namely, (1) "blockage in [his] right femoral artery," (2) "an inguinal hernia," and (3) an "umbilical hernia"—which he claims "ma[k]e it very difficult . . . to walk."  (*Id.* at 8).  The defendant further describes some of the medical attention and care he has received for those various conditions during his term of imprisonment, including surgeries involving the insertion of stents "to increase the blood flow to [his] heart," the insertion and subsequent removal of an artificial vein, rehabilitation following those surgeries, and medicine for the defendant's "depression as a result of [the] surgery."  (*Id.* at 9-10).  The Motion states that the defendant has not filed an appeal in his case and that, on or about December 7, 2023, he filed a request for compassionate release with the Warden of the MDC (the "December 7 Request").  (Dkt. No. 151-1 at 2-3).

As noted above, however, the defendant does have a pending appeal in this case.  *See United States v. Dennis*, No. 23-6194.  Moreover, on or about February 21, 2024, the MDC confirmed that it had not previously received a compassionate release request from the defendant.  Thus, on or about February 21, 2024, the Government provided the MDC with a copy of the December 7 Request.  On March 22, 2024, the MDC issued a decision denying that request on the following grounds:  (1) the defendant has not "identified any medical conditions to reflect a terminal or debilitating medical condition," and (2) per the BOP's written policy regarding compassionate release, "elderly inmates who were age 60 or older at the time they were sentenced

ordinarily should not be considered for [home confinement]" if they have certain convictions, including a conviction for criminal cyberstalking.  A copy of the BOP's decision is attached hereto as Exhibit C.

On March 8, 2024, attorney Golden filed a supplemental motion for the defendant's compassionate release, which reiterates that the defendant is seeking compassionate release based on his medical conditions.  (Dkt. No. 156).  Collectively, the papers filed on February 15 and on March 8 constitute the defendant's instant Motion.

### III.    Applicable Law

Pursuant to 18 U.S.C. § 3582, a court "may not modify a term of imprisonment once it has been imposed except" as provided in that section.  As relevant here:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).  A defendant seeking a reduction in sentence must first request such a reduction from the warden of the facility in which he is housed.

Where a defendant has exhausted his administrative remedies, a court may reduce the defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the Section 3553(a) factors weigh in favor of a reduction in sentence.  18 U.S.C. § 3582(c)(1)(A); *see United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (recognizing that both "extraordinary and compelling reasons" and support of Section 3553(a) factors are necessary to grant relief).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release . . . and whether compassionate release would undermine the goals of the original sentence."  *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  Accordingly, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the U.S. Sentencing Guidelines—concerning sentence reductions under Section 3582, which explains, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.  That policy statement is no longer advisory; it now sets forth binding requirements that must be met before a court can reduce a sentence.  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring reduction in sentence to be "consistent with

applicable policy statements issued by the Sentencing Commission").[3]    Section 1B1.13 defines
what circumstances, "singly or in combination," constitute extraordinary and compelling reasons
for release. *United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y.
Nov. 21, 2023); *see* U.S.S.G. § 1B1.13(b).  These circumstances include, as relevant here:

> (B) The defendant is—
> (i)        suffering from a serious physical or medical condition,
> (ii)       suffering from a serious functional or cognitive impairment, or
> (iii)      experiencing deteriorating physical or mental health because of the aging
>            process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the
> environment of a correctional facility and from which he or she is not expected to
> recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or
> specialized medical care that is not being provided and without which the defendant is
> at risk of serious deterioration in health or death.

Section 1B1.13 also requires that the defendant not be "a danger to the safety of any other
person or to the community" as determined under the Bail Reform Act.  U.S.S.G. § 1B1.13(a)(2).

As the proponent of the motion, the defendant bears the burden of proving each of the four
requirements for relief: exhaustion, extraordinary and compelling reasons, support of the Section
3553(a) factors, and lack of danger to the community.  *See United States v. Butler*, 970 F.2d 1017,
1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given
issue normally has the burden of proof as to that issue."); *accord, e.g., United States v. Ebbers*,
432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020).

## IV.    <u>Discussion</u>

This Court does not have jurisdiction to grant the Motion.  But even if it did, the defendant
is not entitled to the relief that he seeks because the defendant has failed to demonstrate that
"extraordinary and compelling reasons," that the Section 3553(a) factors warrant a sentence
reduction, and that he is no longer a danger to the community.  The Court should deny the Motion.

---

[3] A prior version of Section 1B1.13 was held to be outdated and therefore non-binding on district
courts after passage of the First Step Act of 2018.  *See United States v. Brooker*, 976 F.3d 228, 236
(2d Cir. 2020).  Section 1B1.13 was amended as of November 1, 2023, however, so as to fix the
issue identified in *Brooker*, among other changes.  Accordingly, *Brooker* has been abrogated, and
the policy statement is once again binding on district courts considering reduction in sentence
motions.

### A. The Motion is Barred by a Pending Appeal

As an initial matter, the Court "lacks authority to grant" the Motion because the defendant has an appeal "that has been docketed and is pending." Fed. R. Crim. P. 37(a). In this circumstance, the Court has the following options: the Court may (1) "defer considering the motion"; (2) "deny the motion"; or (3) "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id.*

Thus, at a minimum, the Court must deny or defer ruling on the Motion while the defendant's appeal is pending. *See, e.g.*, *United States v. Moseley*, No. 16 Cr. 79 (ER), 2020 WL 1911217, at *1 (S.D.N.Y. Apr. 20, 2020) (finding no jurisdiction over compassionate release motion based on COVID-19 pandemic because of pending appeal, and stating that "[a]bsent further factual development, the Court cannot say whether it would ultimately grant the motion if the case were remanded for such purposes, but neither is it willing to deny the motion outright. These are complex and time-sensitive issues, but they are ones that the Court can only take up if the Second Circuit agrees it would be useful to decide the instant motion before it decides the appeal."); *United States v. Vigna*, No. 16 Cr. 786 (NSR), 2020 WL 1900495, at *3 (S.D.N.Y. Apr. 17, 2020) (finding same regarding jurisdiction, and declining to issue indicative ruling because defendant had not exhausted administrative remedies); *United States v. Martin*, No. 18 Cr. 834 (PAE), 2020 WL 1819961, at *1-2 (S.D.N.Y. Apr. 10, 2020) (finding same regarding jurisdiction but denying motion on merits under Rule 37).

If the Court were to issue an indicative ruling granting the motion, the defendant could promptly notify the Court of Appeals, pursuant to Fed. R. App. P. 12.1(a) and Fed. R. Crim. P. 37(b), and the Court of Appeals could then remand for this Court to decide the motion, pursuant to Fed. R. App. P. 12.1(b) and Fed. R. Crim. P. 37(c). See, e.g., *United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (considering whether to "return jurisdiction to the District Court" so that it could "consider [defendant's] compassionate-release request in the first instance"); *United States v. Cardoza*, 790 F.3d 247, 248 (1st Cir. 2015) ("Because [defendant's] appeal was pending at the time the District Court ruled on his motion to modify the sentence under § 3582(c)(2), we hold that the District Court lacked jurisdiction to enter the order reducing the sentence." (quoting *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015))).

### B. The Defendant Has Failed to Demonstrate "Extraordinary and Compelling Reasons" for a Reduction in Sentence

Even if the Court had jurisdiction to grant the Motion, the Motion should still be denied because the defendant has failed to show "extraordinary and compelling" reasons for early release. The defendant's medical conditions do not qualify as such reasons.

The defendant claims that he suffers from (1) "blockage in [his] right femoral artery," (2) "an inguinal hernia," and (3) an "umbilical hernia"—which "ma[k]e it very difficult . . . to walk," (Dkt. No. 151-1 at 8), as well as "an abdominal anortic aneurysm, congestive heart failure, coronary artery disease, essential hypertension, hyperlipidia, . . . and insomnia," (Dkt. No. 156 at 5). The defendant argues that these medical conditions constitute an extraordinary and compelling

reason for his early release because they "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (Dkt. No. 151-1 at 5; *see also* Dkt. No. 156 at 2).[4]  The Government does not doubt that the defendant experiences serious discomfort as a result of these conditions.  The defendant, however, has not shown that these conditions rise to the level of an extraordinary and compelling reason for his early release, particularly because, as the defendant's medical records show, throughout his term of imprisonment, the defendant has been receiving timely, rigorous, and more than adequate medical care and attention.

Courts in this District have routinely denied requests for sentence reductions where, as here, despite a defendant suffering from serious medical conditions, the defendant received appropriate care while serving a term of imprisonment.  *See, e.g.*, *United States v. Olivieri*, No. 18 Cr. 316 (PAC), 2023 WL 2366859, at *2-3 (S.D.N.Y. Mar. 6, 2023) (no "extraordinary and compelling" reasons for release where 74-year-old defendant who suffered from "28 medical conditions (including dementia, incontinence, coronary artery disease, asthma, and congestive heart failure)" and had undergone an "aortic valve replacement surgery" because defendant "ha[d] not established that FMC Devens [was] unable to adequately care for his conditions or that his worsening health prevent[ed] him from caring for himself"; to the contrary, the defendant had "received adequate [] care, evidenced by his prompt hospitalization and pacemaker implementation"); *United States v. Delgado*, 582 F. Supp. 3d 136, 141 (S.D.N.Y. 2022) (no "extraordinary and compelling reasons for early release," despite the defendant's "serious" medical conditions where BOP correctional facility "will be able to treat [defendant's] medical conditions"); *United States v. Borelli*, No. 84 Cr. 63 (LAP), 2021 WL 2228075 (S.D.N.Y. June 2, 2021) (no "extraordinary and compelling" reasons for release where 72-year-old defendant suffered from Type 2 diabetes, hypertension, heart disease, and cataracts, but "offered no indication that his medical conditions cannot be managed—or, for that matter, are not already well-controlled—through BOP-provided medical care"); *United States v. Sabir*, 481 F. Supp. 3d 270, 275 (S.D.N.Y. 2020) (no "extraordinary and compelling" reasons for release where 66-year-old defendant suffered from prediabetes, hypertension, and asthma, and likely had prostate cancer).

Here, the defendant's medical records show that, from day one, the defendant has been receiving careful medical care and attention.  Indeed, of the approximately 17 months the defendant has served of his two-year term of imprisonment, the defendant has spent approximately 13 of those months in a specialized nursing home and/or at the hospital receiving the treatments, surgeries, and prescriptions that he needs for his non-terminal ailments.  Moreover, during the defendant's short periods of time at the MDC, the BOP has continued to monitor and treat his conditions, including by ordering lab tests, conducting regular check-ups, providing medication, a wheelchair, and compression socks, and scheduling follow-up appointments.  *See, e.g.*, Ex. B at 4, 7.  During one of his recent medical appointments at the MDC on or about February 22, 2024, according to BOP medical records, the defendant was "[a]ble to stand without too much pain or

---

[4] The defendant does not claim—nor could he based on his medical records—that he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," which is another circumstance that could constitute an "extraordinary and compelling reason" under Section 1B1.13.

discomfort from surgical site," but "has not walked around *as advised* after surgery"; rather, he is "using wheelchair," although he expressed "interest[] in getting a walker to start walking."  Ex. B at 3 (emphasis added).  Moreover, the defendant was "[a]wake, alert and oriented," was not experiencing any "acute distress," and appeared his "stated" age, "[w]ell developed, hydrated[,] and nourished."  *Id.* at 3.  It is clear that the defendant's medical treatment—both in and out of prison—during his term of imprisonment has been attentive to his needs, and adequate.  Indeed, the defendant in his *pro se* Motion acknowledges the treatment he has been receiving, and does not claim that his health care has been insufficient.  (*See, e.g.*, Dkt. No. 151-1 at 9-10).  By contrast, the supplemental Motion filed by Golden claims that the defendant's conditions "will never improve and will only hasten his demise because of insufficient professional care, inadequate preventative check-ups, irregular treatment follow-ups, and unacceptable, inhospitable, and terrible living conditions found in prison." (Dkt. No. 156 at 5).  The defendant's medical records and own admissions, however, belie any assertion that the defendant has not been receiving adequate and appropriate medical care and attention during his term of imprisonment.  The Motion is also completely silent on the fact that the majority of the defendant's term of imprisonment has been spent not at the MDC but rather in a nursing home and at hospitals, where the defendant has been receiving the exact same type of medical care he would presumably receive if he were not serving a term of imprisonment.

Accordingly, the defendant's medical conditions do not constitute "extraordinary and compelling reasons" that warrant a sentence reduction.[5]

## C. The Section 3553(a) Factors Weigh Against a Sentence Reduction, and the Defendant Has Not Demonstrated that He is No Longer a Danger to the Community

Even if the defendant could satisfy the "extraordinary and compelling reasons" inquiry for a reduction in sentence under Section 3582(c)(1)(A)(i), that is not the end of the analysis.  Here, the relevant factors under § 3553(a) weigh against a reduction in the defendant's sentence.

The sentence imposed reflects the nature, circumstances, and seriousness of the offenses that the defendant committed.  As the evidence at trial showed, for nearly two years, the defendant engaged in a cyberstalking campaign consisting of real and direct threats against his victims.  As the Court recognized at sentencing, "one factor that is glaring beyond all else is the degree of fear

---

[5] The Motion also suggests that the defendant's sentence should be reduced so that the defendant can be reunited with his elderly, ailing parents now, rather than upon the expiration of his current term of imprisonment in June.  (*See* Dkt. No. 156 at 3).  The defendant's parents' age and health, however, is not one of the circumstances under Section 1B1.13 that can constitute an extraordinary and compelling reason for early release.  While Section 1B1.13 provides that "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" is an extraordinary and compelling reason for release, that is not the situation here.  The defendant does not claim that he is the sole caretaker for his parents.  Accordingly, since Section 1B1.13 is no longer advisory and now sets forth binding requirements that must be met before a court can reduce a sentence, the Court does not have the authority here to reduce the defendant's sentence based simply on the health and age of his parents.

and emotional distress that [the defendant] imposed day after day, message after message on the victims of his crime." (Dkt. No. 149 at 45). Thus, this Section 3553(a) factor continues to support the defendant's original sentence.

Moreover, there are no new circumstances that should change the Court's analysis at sentencing of the remaining 3553(a) factors. At the time of sentencing, the defendant was suffering from the same medical conditions that he now claims warrant his early release. But the Court took those conditions into account at sentencing, and the record since then, as discussed above, shows that the defendant has been receiving the medical attention and care that he needs for his various conditions. In short, there is no reason to reconsider the defendant's below-Guidelines sentence.

Finally, the defendant has not established that he is no longer a danger to the community. Indeed, the victims in this case remain fearful of what may happen when the defendant completes his term of imprisonment, and the BOP recently determined that the defendant is not currently eligible for home confinement based on the nature and circumstances of his crimes. Specifically, the coordinator for the BOP's Resident Reentry Management RRM programs has determined that the defendant's "conviction [for] Cyber Stalking with threats to victims" is "consider[ed] . . . a risk to public/victim safety," rendering a direct transition to home confinement inappropriate. These considerations further weigh against any reduction of the defendant's original sentence.

## V.    Conclusion

For the reasons set forth above, the defendant's Motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    _____
Sarah L. Kushner
Kimberly J. Ravener
Stephanie Simon
Assistant United States Attorneys
Southern District of New York
(212) 637-2676

cc: James Golden, Esq. (by ECF and Electronic Mail)
    Willie Dennis, defendant (by Mail)